## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

JAN DOMANUS and ANDREW )
KOZLOWSKI, both individually and )
derivatively on behalf of KRAKOW )
BUSINESS PARK SP.Z.O.O, )
                               )
         Plaintiffs, )
                               )
v. )
                               )
DEREK LEWICKI, , RICHARD )
SWIECH, ADAM SWIECH, ALICJA )
GOSTEK SWIECH, SPECTRUM )
COMPANY, LTD., ORCHARD )
MEADOWS HOMES, INC., ORCHARD )
MEADOWS HOMES, LLC, ORCHARD )
MEADOWS, LLC, LAKE RIDGE )
TOWNHOMES CORP., and ADR )
ENTERPRISES, INC., )
                               )
         Defendants. )

No.       FILED: AUGUST 28, 2008
                 08CV4922
                 JUDGE BUCKLO
                 MAGISTRATE JUDGE NOLAN
                 NF

## COMPLAINT

      Plaintiffs Jan Domanus and Andrew Kozlowski, both individually and derivatively on behalf of Krakow Business Park Sp.z.o.o., allege and state as follows:

      1.     This is an action by plaintiffs brought against certain individuals and corporations who have managed and operated Krakow Business Park Sp. z.o.o. ("KBP") through a pattern of fraud and deceit, looting the company and lining their own pockets through a series of illicit activities. Simply put, these defendants have looted KBP, misappropriating tens, if not hundreds, of millions of dollars which they have in turn laundered through a worldwide series of dummy entities – the result being Swiss and U.S. bank accounts in the names of defendants holding more than twenty million euros. The authorities in Poland have imprisoned defendants Adam Swiech and Derek Lewicki without bail as a result of their illegal conduct, and are seeking to

arrest and incarcerate Richard Swiech as well.  Plaintiffs seek to recover funds that they invested in KBP, and seek to recover on behalf of KBP and its shareholders for the wrongful conduct described in the Complaint.  Damages easily total hundreds of millions of dollars.

## THE PARTIES

2.     Plaintiff Andrew Kozlowski ("Kozlowski") is a resident of Florida, temporarily residing in Poland.

3.     Plaintiff Jan Domanus is an individual residing in Libertyville, IL.

4.     Kozlowski and Domanus are minority shareholders in KBP, which is a company organized under the laws of Poland based in Krakow, Poland.

5.     On information and belief, Defendants Richard Swiech and Bozena Sanecka-Swiech are a husband and wife residing in Mundelein, IL.

6.     On information and belief, Defendants Derek Lewicki and Catherine Schubert-Lewicki are a husband and wife residing in Hawthorn Woods, IL.

7.     On information and belief, Adam Swiech is the brother of Richard Swiech and has a driver's license and other documents identifying him as a resident of Illinois. On information and belief, Alicja Gostek Swiech is the wife of Adam Swiech.  Also, on information and belief, Adam Swiech is the manager of two Nevada limited liability companies – Lake Ridge Townhomes, LLC and Orchard Meadows Homes, LLC.  The Orchard Meadows Homes entity is registered to do business in Illinois, with Adam Swiech listed as its agent at an address located in Mundelein, IL.

8.     On information and belief, Orchard Meadows Homes, Inc., Orchard Meadows Homes, LLC, Orchard Meadows, LLC, Lake Ridge Townhomes Corp. are  entities owned and/or

controlled by one or more of the individual defendants, and are entities whose activities are being funded through the fruits of the individual defendants' misconduct.

9.     Defendant Spectrum Company, Ltd. ("Spectrum") is a non-existent corporation that purports to have its principal place of business located at 1675 Mill Street, Apt. 306, Des Plaines, IL. The Des Plaines' address, however, according to the public records, is a condominium unit owned by Derek Lewicki and his wife.

10.     Defendant ADR Enterprises, Inc. purports to be a corporation established under the laws of the State of Nevada located in Las Vegas. On information and belief, Adam Swiech is the sole owner and officer of ADR Enterprises.

## JURISDICTION AND VENUE

11.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964.

12.     Venue is proper in this court pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965.

## BACKGROUND

13.     In 1997, KBP was formed to own and develop real estate near the airport in Krakow, Poland. The real estate includes several large office buildings (some of which have already been constructed by KBP with others in process) and a railway station. Management of KBP rests with Adam Swiech who is also KBP's only employee.

14.     Kozlowski was an initial minority shareholder in KBP. Domanus came to be a minority shareholder in approximately the year 2000. Today, Kozlowski and Domanus own thirty-four percent (34%) of KBP's outstanding shares.

15.     Adam Swiech claims to be the majority shareholder in KBP with sixty-six percent (66%) of the outstanding shares. On information and belief, these shares are owned by Adam

3

Swiech, Richard Swiech and Derek Lewicki.  Richard Swiech and Derek Lewicki have attended shareholder meetings indicating their share ownership in KBP, and have purportedly signed a shareholders' agreement, a copy of which is attached hereto, evidencing the same.

16.    To date, Adam Swiech has refused to allow the minority shareholders to access KBP's books and records in accord with applicable law.

17.    Moreover, Adam Swiech "brokered" Domanus' purchase of an ownership interest in KBP.  In doing so, Swiech misappropriated part of the purchase price for himself and claimed the voting rights to such shares for himself as well, never bothering to inform Domanus.  On information and belief, despite taking Domanus' money, Domanus was never listed as a shareholder of KBP.  This may be one reason Swiech refuses to provide access to basic shareholder information.

18.    A second probable reason Swiech refuses to provide basic information is that he wrongfully claims that Domanus took a loan from him of 2 million Polish Zloty.  Domanus never borrowed such funds.

19.    Messrs. Swiech and Lewicki have diverted funds from KBP through a variety of illicit means.  First, with respect to the construction of the buildings that KBP owns and operates, Swiech appropriated for himself and his cronies construction moneys through a series of dummy contracts for work that was never performed.  One example of this is the relationship with Creation Sp. z.o.o. ("Creation").

20.    Creation is a Polish company owned by Derek Lewicki.    Supposedly, Creation organizes and conducts construction-related activities for KBP. In conjunction with its "work," Creation has extorted bribes and other payments from legitimate contractors.

21.  In 2006, Creation purportedly entered into a Consulting Agreement with Spectrum for services related to KBP.  A copy of the agreement is attached hereto as Exhibit A.  Pursuant to this agreement, certain invoices were issued by Spectrum to Creation, copies of which are attached hereto as Exhibit B.

22.  Upon information and belief, Creation paid Spectrum (the non-existent U.S. company) at least $1,000,000.00 for "consulting" work allegedly performed directly or indirectly for KBP.  Spectrum also entered into other purported agreements with Creation for an additional $450,000.00.

23.  Spectrum never performed any actual consulting work for (either directly or indirectly) for KBP; to the contrary, Spectrum was a scheme to divert money from all shareholders of KBP for the benefit of certain defendants including Messrs. Swiech and Lewicki.

24.  Plaintiffs have been unable to locate records indicating that Spectrum is a corporation licensed to do business in Illinois notwithstanding the suggestion that Spectrum is a corporation with its principal place of business in Illinois.

25.  KBP also established a series of subsidiaries which own the office buildings located on KBP's real estate.  These subsidiaries borrowed funds for the construction of the facilities, although some of the loaned funds were not used for construction.  On information and belief, these funds were used to line the pockets of Messrs. Swiech and Lewicki.

26.  Also in conjunction with the construction of the buildings, subcontractors were instructed by Adam Swiech to overstate their costs, with such overage being split by Swiech and the subcontractors.

27.  Plaintiffs have also misappropriated funds through phony leases.  Office space was leased by KBP to BCS Sp. z.o.o. ("BCS"), an entity controlled by an associate of Adam Swiech

at below-market rates. In turn, BCS re-leased the same space to third parties at substantially higher rates.

28.    Each of these leases was negotiated by Adam or Richard Swiech.

29.    Additionally, in conjunction with the leased space, certain "costs" were passed through to tenants. Swiech and his "partners" overstated the costs of much of the construction work to be performed for tenants, diverting such excess for their own use.

30.    GPR Sp. z.o.o. ("GPR"), another related-entity, provides plants and other shrubbery to KBP. The amount of planting and "re-planting" far exceeds what is reasonable for the facilities. Of course, each time such "re-planting" occurs, GPR extracts more funds.

31.    On information and belief, GPR is owned by or for the benefit of Messrs. Swiech and Lewicki.

32.    On information and belief, Messrs. Swiech and Lewicki have also transferred funds through a variety of other international entities including without limitation: Connection Sp. z.o.o. (owned by Derek Lewicki); Buchalteria Sp. z.o.o. (owned by Derek Lewicki and Alicja Gostek Swiech); Illinois Sp. z.o.o. (owned by Alicja Gostek Swiech); Pretorius, a Cyprus company owned by Messrs. Swiech and Lewicki; and ADR Enterprises, Inc.

33.    Regardless of the exact method to divert funds, the *modus operandi* is the same in each instance: KBP bears the risk and obtains a loan, KBP makes an investment, any profits are derived by entities other than KBP and transferred to accounts held for the benefit of Messrs. Swiech and Lewicki.

34.    Defendants, in a further effort to conceal their misdeeds, caused a potential transaction with a third party to fail despite the obvious financial benefit to KBP and all of its shareholders. In 2007, Orco made a written offer to purchase KBP for 140 million euros, a

6

premium to its fair market value by approximately ten percent. Orco expended substantial resources in conjunction with this proposed transaction. Had the transaction been completed, Orco would have been able to uncover the breadth of defendants' misconduct. To prevent this from occurring, Swiech and his cronies scuttled the deal at the last minute, demanding an extra thirty million euros.

35.    On information and belief, defendants Swiech and Lewicki (or entities under their control) have bank accounts in Switzerland containing more than 20 million euros.

36.    Most recently, Adam Swiech and Lewicki have been arrested in Poland and charged criminally in connection with their KBP activities.


## COUNT I – RICO
### (Against Defendants Adam Swiech, Richard Swiech and Derek Lewicki)

37.    Plaintiffs incorporate by reference paragraphs 1- 36 as though fully stated herein.

38.    KBP is an "enterprise" as that term is defined in 18 U.S.C. § 1961(4). KBP was engaged in interstate commerce and its activities affected interstate commerce at all relevant times.

39.    Defendants are "persons" as that term is defined in 18 U.S.C. § 1961(3) and were associated with KBP at all relevant times.

40.    Over the course of several years, defendants did conduct and participate in the conduct of KBP's affairs through a continuous pattern of activity that included corruption and multiple uses of the United States mails, and wire transfers for executing a scheme to defraud plaintiffs and KBP in violation of 18 U.S.C. §§ 1341, 1343, 1344, 1951, 1952, 1956 and 1957, constituting a "pattern of racketeering activity" as that phrase is used in 18 U.S.C. § 1962 (c).

41.   In furtherance of their scheme, defendants used or caused the use of the United States mails and electronic mails on a number of occasions. Defendants also caused wire transfers of funds to be sent on numerous occasions including on information and belief a bank account in the name of Spectrum to a bank in Wisconsin.  Before discovery, knowledge of each of these transfers remains best known to the defendants and inaccessible to plaintiffs.

42.   By reason of defendants' conduct in violation of 18 U.S.C. § 1962, plaintiffs have been injured in their business.

### COUNT II– RICO CONSPIRACY
### (Against All Defendants)

43.   Plaintiffs incorporate by reference paragraphs 1- 36 as though fully stated herein.

44.   This claim is brought against all defendants.

45.   Defendants, along with certain co-conspirators not made defendants in this Complaint, agreed and conspired to violate 18 U.S.C. § 1962 (c).

46.   Each of the conspirators agreed to conduct and participate in, or to knowingly facilitate operation or management of KBP's affairs as part of a scheme to defraud both plaintiffs and KBP, under circumstances that they knew or where it was reasonably foreseeable that the united States mails and wires would be used in furtherance of their scheme.

47.   By reason of defendants' conduct in violation of 18 U.S.C. § 1962, plaintiffs have been injured in their business.

### COUNT III– FRAUD
### (Against All Defendants)

48.   Plaintiffs incorporate by reference paragraphs 1-36 as though fully stated herein.

49.   This claim is brought against all defendants

50.     As part of a scheme to defraud plaintiffs, as described herein, defendants knowingly or recklessly made, participated in the making of or ratified false and fraudulent statements of material fact and/or misleadingly failed to disclose material facts, knowing or recklessly ignoring that plaintiffs would rely upon that conduct.

51.     Plaintiffs reasonably relied to their detriment on defendants' statements and omissions, and were deceived.

52.     As a direct and proximate result of defendants' fraudulent conduct, plaintiffs suffered and continue to suffer actual damages.

## COUNT IV– BREACH OF FIDUCIARY DUTY
### (Against Adam Swiech, Richard Swiech and Derek Lewicki)

53.     Plaintiffs incorporate by reference paragraphs 1-36 as though fully stated herein.

54.     Defendants owed plaintiffs fiduciary duties of care and loyalty.

55.     By engaging in the conduct described in this Complaint, defendants breached their fiduciary duties.

56.     As a direct and proximate result of defendants' conduct, plaintiffs suffered and continue to suffer actual damages.

## COUNT V– AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### (Against All Defendants)

57.     Plaintiffs incorporate by reference paragraphs 1- 36 as though fully stated herein.

58.     At various times relevant to the allegations in this Complaint, certain defendants owed plaintiffs fiduciary duties of care and loyalty.  Those duties were breached as described elsewhere in this Complaint.

59.     Defendants aided and abetted one another in breaching their fiduciary duties by engaging in the conduct described in this Complaint.

60.   As a direct and proximate result of defendants' conduct, plaintiffs' suffered and continue to suffer actual damages.

## COUNT VI– CONSTRUCTIVE TRUST
### (Against All Defendants)

61.   Plaintiffs incorporate by reference paragraphs 1- 36 as though fully stated herein.

62.   Defendants have appropriated for themselves funds to which they are not legitimately entitled, and under circumstances that in equity and good conscience they should not be allowed to keep them.

63.   A constructive trust should be entered to convey the fruit of defendants' wrongful conduct from defendants to plaintiffs because it justly belongs to plaintiffs and defendants have gained these proceeds through fraud, abuse of their fiduciary relationships, and other illegal conduct.

## COUNT VII– CIVIL CONSPIRACY
### (Against All Defendants)

64.   Plaintiffs incorporate by reference paragraphs 1- 36 as though fully stated herein.

65.   Each of the defendants agreed or reached an understanding to participate in a scheme to defraud KBP and plaintiffs.  Each of the defendants understood the general objectives of the conspiratorial scheme, accepted them, and agreed, explicitly or implicitly, to do his, her or its part to further those objectives.

66.   Each of the defendants knowingly agreed, explicitly or implicitly, with one or more of the other conspirators to do their part to further those objectives by accomplishing unlawful purposes by lawful means and/or lawful purposes by unlawful means.

67.   As a direct and proximate result of defendants' wrongful conduct, plaintiffs have suffered and continue to suffer damages.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court enter judgment in their favor and against defendants as follows:

(a)    Awarding actual damages, together with pre and post judgment interest;

(b)    Awarding treble damages pursuant to 18 U.S.C. § 1964(c);

(c)    Granting attorneys' fees and costs and expenses of this suit pursuant to 18 U.S.C. § 1964(c);

(d)    Imposing a constructive trust over the proceeds of defendants' wrongful conduct;

(e)    Awarding exemplary damages in an amount sufficient to deter such wrongful conduct in the future; and,

(f)    Granting such other and further relief as this Court deems just and proper.

ANDREW KOZLOWSKI AND JAN DOMANUS, both individually and derivatively on behalf of KBP

By: /s/ Steven P. Blonder
    One of their attorneys

Steven P. Blonder
Matthew S. Miller
Andrea E. Forsyth
MUCH SHELIST
191 N. Wacker Drive, Suite 1800
Chicago, IL 60606
(312) 521-2000

Donald Segel
SEGEL & SEGEL, P.C.
525 W. Monroe Street, Suite 2360
Chicago, IL 60661
(312) 628-8740

08CV4922
JUDGE BUCKLO
MAGISTRATE JUDGE NOLAN
NF

## CONSULTANCY AGREEMENT
dated 30th of September 2006

**BETWEEN:**

**CREATION LIMITED ("the Company")**

AND

**SPECTRUM LIMITED ("the Consultant")**

---

## Umowa Konsultacyjna
data 30.09.2006

Pomiędzy

**CREATION Spółka z ograniczoną odpowiedzialnością (Spółka)**

a

**SPECTRUM LIMITED (Konsultant)**

**EXHIBIT**

A

08/15/2008 14:27   3126288745    SEGELSEGELPC    PAGE 107/070

| | |
|---|---|
| This CONSULTANCY AGREEMENT made this the 30TH day of SEPTEMBER 2006 | UMOWA KONSULTACYJNA zawarta dnia 30.09.2006roku. |
| between | Pomiędzy: |
| CREATION LIMITED a company duly registered and existing under the laws of Poland with registration number 167033 and having its registered office at Cracow, os. Hutnicze 2/66 ("the Company"") | CREATION Spółka z ograniczoną odpowiedzialnością Zarejestrowaną prawnie pod nr KRS 00/00167033, posiadająca nr NIP 678-29-08-684 i REGON 356585170 mająca siedzibę w Krakowie, os. Hutnicze 2/66 |
| and | a |
| SPECTRUM LIMITED, a company duly registered and existing under the laws of the USA having its registered office at 1675 E.Mill Str. Suite 306 Des Plains Illinois 60016 (the "Consultant"). | SPECTRUM Spółka z ograniczoną odpowiedzialnością Zarejestrowaną prawnie w USA mająca swą 1675 E.Mill Str. Suite 306, Des Plains_Illinois 60016 zwana dalej Konsultantem |

| | |
|---|---|
| **WHEREAS** | **NA MOCY UMOWY:** |
| A. The Consultant is in the business of offering, inter alia, consultancy services to various companies and persons in the Territory of Europe and it is desirous of expanding its business. | A. Konsultant oferuje usługi doradcze dla firm i odbiorców w indywidualnych na obszarze Europy, mając w planie dalszą ekspansję. |
| B. The Consultant has both the capacity and the expertise to provide consultancy and advisory services in all fields of expertise, including but not limited the field of Poland and is willing and able to assist the Company. | B. Konsultant jest rzeczoznawcą w zakresie doradztwa we wszystkich obszarach ekspertyz, włączając ale nie ograniczając obszar Polski wspierając tym samym spółkę. |
| C. The Company wishes to retain the services of the Consultant and the Consultant wishes to provide such services to the Company in accordance with the terms and conditions provided herein. | C. Spółka potrzebuje zaangażować Konsultanta a Konsultant chce świadczyć usługi na rzecz Spółki zgodnie z warunkami niniejszej umowy. |
| **NOW IT IS HEREBY MUTUALLY AGREED AND DECLARED BY AND BETWEEN THE PARTIES HERETO AS FOLLOWS:** | **STRONY NINIEJSZYM POSTANAWIAJĄ CO NASTĘPUJĄCE:** |
| **1. DEFINITIONS:** | **1. DEFINICJE** |
| 1.1 The preamble forms an integral part of this Consultancy Agreement. | 1.1 Wstępna forma integralnej części Umowy Konsultacyjnej |
| 1.2 For the purposes of this Consultancy Agreement and any documents delivered pursuant hereto the following expressions have the meaning set forth (unless the context otherwise requires): | 1.2 Dla celów niniejszej Umowy Konsultacyjnej ustanawia się następujące nazwy, które powinny być używane w dostarczanych dokumentach ( w wymaganym kontekście) |

| | |
|---|---|
| "Agreement" means this Consultancy Agreement | Umowa: oznacza Umowa Konsultacyjna |
| "Business Day" means any day other than Saturday and Sunday or public holiday on which banks are generally open in the Territory. | Dzień roboczy to każdy inny dzień oprócz Soboty Niedzieli i świat państwowych, w których banki są zazwyczaj otwarte. |
| "Commencement Date" means the day upon which the parties shall sign and execute this Agreement. | Data rozpoczęcia: to dzień w którym strony nadadzą ważność Umowie podpisując ją. |
| "Confidential Information" means all information of confidential nature, (including trade secrets and information of commercial value), known to the Consultants and pertaining to the Company and the Company's business activities and which was communicated to the Consultants by the Company prior to or after the Commencement Day and all information of confidential nature, (including trade secrets and information of commercial value), known to the Company and pertaining to the Consultant and the Consultant's business activities and which was communication to the Company by the Consultant prior to or after the Commencement Day. | Poufne Informacje: to informacje tajne ( tajemnice handlowe oraz ekonomicznych wartości) znane Konsultantowi i typowe dla rodzaju działalności spółki przekazanego Konsultantowi przez Spółkę przed lub po dacie rozpoczęcia umowy a także informacje tajne ( tajniki handlu oraz ekonomicznych wartości) znane Spółce i typowe dla rodzaju działalności Konsultanta przekazane Spółce przez Konsultanta przed lub po dacie rozpoczęcia umowy. |
| "Territory" means Poland and the rest of World | Obszar to Polska i cały świat |
| 1.3.    In this Agreement: | 1.3 W! tej Umowie: |
| i.    Clause headings are inserted for convenience only and shall not affect the construction of this Agreement and unless otherwise specified, all references to Clauses are to Clauses of this Agreement; | I    Paragrafy podzielone są na części i stanowią udogodnienie ale nie dotyczą konstrukcji całej Umowy i chyba, że inaczej określono, oraz wszelkie odwołania do paragrafów dotyczą paragrafów tej Umowy; |

ii. unless the context otherwise requires, words denoting the singular number shall include the plural and vice versa;

iii. reference to persons include bodies corporate, unincorporated and individuals;

iv. reference to an individual includes a reference to that individual's legal representatives and successors;

v. references to any document are to be construed as references to such document as amended or supplemented from time to time.

## 2. APPOINTMENT

2.1 The Company hereby appoints the Consultant to provide its services as its Consultant and the Consultant hereby agrees to provide its services as a consultant subject to and in accordance with the terms and conditions of this Agreement.

## 3. SERVICES TO BE RENDERED BY THE CONSULTANT

3.1 The Services to be rendered by the Consultant herein shall include but are not limited to the following:

---

II Jeśli kontekst nie stanowi inaczej, stwierdzenie odnoszące się do podmiotów w liczbie pojedynczej dotyczą również podmiotów w liczbie mnogiej i vice versa

III Odwołania do osób powiązanych obejmują również powiązanych

IV Odwołania indywidualne obejmują odwołanie do tych osób które są legalnymi reprezentantami lub spadkobiercami

V Odwołania do dokumentów są rozumiane jako odwołania do modyfikowanych lub uzupełnianych czasami dokumentów.

## 2. POSTANOWIENIA

2.1 Spółka powołuje Konsultanta do świadczenia jego usług jako Konsultanta a Konsultant zgadza się do świadczenia swych usług doradczych zaś strony zgadzają się z warunkami tej umowy.

## 3. USŁUGI JAKIE BĘDĄ WYKONYWANE PRZEZ KONSULTANTA

3.1 Usługi świadczone przez Konsultanta będą obejmować ale nie ograniczać się do następujących:

(a) the provision of accurate information as regards putative customers of office's center KBP willing to cooperate with BCS, as well as putative clients of KBP -2 Ltd – owner of the KBP -200 Building

b) the provision of marketing research and administrative support to the Company as regards the contacts with companies from USA and Western Europe;

(c) the provision of assistance to the Company in the preparation of any feasibility studies that the Company may undertake which may pertain to taking responsibility

(d) directing, channeling and expediting communications between the Company and persons who are desirous willing and able to;

(f) providing all any other assistance in their field of expertise which the Company might reasonably require and which is necessary or desirable.

4. OBLIGATIONS OF THE CONSULTANT

4.1 The Consultant shall at all times act as an independent contractor. This Agreement shall not be described by the parties or construed to establish any different relationship, including without limitation that of employer and employee, partnership,

---

a) dostarczanie ścisłych informacji w zakresie potencjalnych najemców w centrum biurowym KBP, chcących współpracować z BCS oraz pozyskanie bezpośrednich najemców dla KBP – 2 właściciela biurowca KBP -200

b) dostarczanie badań marketingowych i wsparcie administracyjne Spółki w zakresie kontaktów z dużymi korporacjami z USA i Zachodniej Europy

c) wspieranie Spółki w opracowywaniu studiów wykonalności w ten sposób że w ich zakresie Spółka przyjmuje na siebie odpowiedzialność.

d) Kierowanie procesem komunikacji pomiędzy Spółką oraz żądanymi podmiotami w zakresie ekspertyz które są niezbędne lub wskazane

f) Wspieranie Spółki w zakresie opracowywania innych uzasadnionych i niezbędnych ekspertyz.

4. ZOBOWIĄZANIA KONSULTANTA

4.1 Konsultant powinien za każdym razem uczestniczyć jako niezależny kontrahent. Ta Umowa nie ustala innych rodzajów relacji włączając bez ograniczeń takie jak zatrudniany i zatrudniający wspólne przedsięwzięcia pośrednictwo i inne.

joint venture or agency of any kind.

4.2 The Consultant shall have no right or authority to act or make any promise, warranty, guarantee or representation, incur any liability, commence legal proceedings, execute any contract, hold itself out to have the right to accept any official or formal notices from anyone, or otherwise assume any obligation or responsibility in the name of, or on behalf of the Company, unless specifically authorized in writing by an authorized officer of the Company.

4.3 The Company shall have no legal obligations towards the Consultant and the Consultant shall have no legal obligations towards the Company, other than as specifically stated in this Agreement.

4.4 The Consultant where it deems appropriate and is not objected to by the Company may engage sub- contractors to enable it to carry out its obligations under the terms of this Agreement, but at all times, the Consultant retains responsibility for the performance of its obligations under this Agreement.

5 OBLIGATIONS OF THE COMPANY

5.1 The Company undertakes and agrees with the Consultant during the term of this Agreement:

5.1.1 To act at all times in its relations with the Consultant dutifully and in good faith.

---

4.2 Konsultant nie ma prawa ani kompetencji uczestniczyć lub zapewniać o poręczeniach gwarancjach lub reprezentacjach rozpoczynania legalnych posiedzeń, przeprowadzania kontraktów i powinien pozostać przy prawie do akceptacji oficjalnych i formalnych ogłoszeń poza tym wziąć odpowiedzialność oraz dotrzymywać zobowiązań w imieniu Spółki oraz dla Spółki zatwierdzonych pisemnie przez uprawnionego przedstawiciela Spółki.

4.3 Spółka nie powinna mieć prawnych zobowiązań wobec Konsultanta oraz Konsultant nie powinien mieć prawnych zobowiązań wobec Spółki innych niż zawarte w tym porozumieniu.

4.4 Konsultant kiedy uzna za stosowne oraz kiedy nie będzie to przeczyć dobru Spółki może zaangażować dodatkowych kontrahentów i upoważnić ich do podjęcia zobowiązań zawartych w tej Umowie ale wówczas Konsultant ponosi odpowiedzialność za całokształt podjętych zobowiązań.

5. ZOBOWIĄZANIA SPÓŁKI

5.1 Spółka podejmuje się i zgadza na zawarcie następujących warunków Umowy:

5.1.1 Uczestniczyć każdorazowo w relacji z Konsultantem w dobrej wierze.

5.1.2  To supply the Consultant at the Company's expense with such technical and other support as the Consultant may from time to time reasonably require and to enable the Consultant to reasonably discharge his duties under this Agreement.

5.1.3  To make prompt payments to the Consultant of his remuneration and in any event such remuneration shall be paid not later than 28 (twenty eight) Working Days from the day upon which the Consultant's work will have been completed.

5.2  The Company shall have no right or authority to act or make any promise, warranty, guarantee or representation, incur any liability, commence legal proceedings, execute any contract, hold itself out to have the right to accept any official or formal notices from anyone, or otherwise assume any obligation or responsibility in the name of, or on behalf of the Consultant, unless specifically authorized in writing by an authorized officer of the Consultant.

## 6. REMUNERATION

6.1  The amount payable by the Company to the Consultant in consideration for the services that the Consultant has agreed to render to the Company, shall be 450,000 $

6.2  The Consultant's remuneration as provided in Clause 6.1

---

5.1.2  Wspierać Konsultanta w ponoszeniu wydatków związanych z doradzaniem Spółce oraz udzielić technicznego wsparcia o ile będzie racjonalnie uzasadnione do spełnienia obowiązków zgodnych z Umową.

5.1.3  Niezwłocznie regulować zobowiązania płatnicze wobec Konsultanta zgodne z jego wynagrodzeniem oraz w każdym przypadku wynagrodzenie powinno być zapłacone nie później niż do 28 dnia roboczego od daty zakończenia pracy Konsultanta.

5.2  Spółka nie ma prawa ani kompetencji uczestniczyć lub zapewniać o poręczeniach gwarancjach lub reprezentacjach ..... rozpoczynania legalnych posiedzeń, przeprowadzania kontraktów i powinna pozostać przy prawie do akceptacji oficjalnych i formalnych ogłoszeń poza tym wziąć odpowiedzialność oraz dotrzymywać zobowiązań w imieniu Spółki oraz dla Spółki zatwierdzonych pisemnie przez uprawnionego przedstawiciela Spółki

## 6. WYNAGRODZENIA

6.1 Kwota płacona przez Spółkę Konsultantowi jako wynagrodzenie za usługi na które Konsultant zgodził się świadczyć powinna wynosić 450,000 USD

6.2 Wynagrodzenie Konsultanta jak zastrzeżono w paragrafie 6.1 tej

hereinabove shall be exclusive of applicable VAT and any payable VAT shall be added to relevant invoices and shall be paid by the Company.

6.3   Any withholding taxes lawfully due shall be withheld by the Company from any amounts due to the Consultant.

## 7.   REPRESENTATIONS AND WARRANTIES

7.1 Both the Company and the Consultant represent and warrant that both are corporations duly organized and existing validly and in good standing under the laws of the jurisdiction of their incorporation.

7.2 The entering into, execution, delivery and performance of this Agreement by the Company or by the Consultant is within their respective corporate powers and has been duly authorized by all necessary corporate action and will not violate or conflict with the Company's or with the Consultant's memorandum, articles or by-laws, or any compatible constituent documents.

7.3 Neither the Company nor the Consultant are in any violation of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award, or in breach of any contract, loan agreement, indenture, mortgage or other instrument, the violation of which would have a material adverse affect on such party's financial condition or ability to perform its obligations hereunder.

---

6.3 Każdy polrącony prawnie należny podatek powinien być polrącony przez Spółkę z każdej kwoty dotyczącej Spółki.

umowy powinno wyłączać odpowiedni VAT oraz każdy płacony VAT powinien być dodany do stosownej faktury i zapłacony przez Spółkę.

## 7.   REPREZENTACJE  I  PORĘCZENIA

7.1 Zarówno Spółka jak i Konsultant reprezentowany poręczają, iż są korporacjami zorganizowanymi oraz prawnie istniejącymi i funkcjonującymi zgodnie z jurysdykcją prawa.

7.2 Zawarte wymagania, ustalenia i przedstawienie tej Umowy przez Spółkę i Konsultanta są, w zasięgu ich poszczególnych możliwości oraz są potwierdzone wszelkimi niezbędnymi wymaganiami oraz nie mogą być w sprzeczności wytycznymi Spółki oraz Konsultanta   prawem oraz zgodnymi ustawowo dokumentami.

7.3 Ani Spółka ani Konsultant nie złamali żadnego prawa, ustawy, przepisu, regulacji, nie podlegają nakazowi sądowemu, wyrokowi ani innej karze. Nie posiadają w naruszeniu żadnych umów, pożyczek, hipotek ani żadnych innych, które mogłyby niekorzystnie wpływać na finanse Spółki lub też na zdolność do wywiązania się ze swoich zobowiązań.

08/15/2008  14:27    3128288745    SEGELSEGELPC    PAGE  18/20

14 05 08 13:55    Karol Rutkowski    0292837
Case 1:08-cv-04922  Document 1-2  Filed 08/28/2008  Page 10 of 22

7.4 To the best knowledge of each party, there is no pending or threatened action or proceedings affecting such party before any court, governmental agency or arbitrator, which purports to affect the legality, validity or enforceability of this Agreement or the transactions contemplated thereby.

7.5 This Agreement constitutes the parties legal valid and binding obligations enforceable against each other in accordance with their provisions (except enforcement may be restricted or limited by bankruptcy, reorganization, insolvency, moratorium or other laws affecting the enforcement of creditors' rights generally).

7.6 The Company represents and warrants that it is are not a party to any agreement, contract or understanding, whether by employment or otherwise, which would in any way restric, limit, impair, prevent or prohibit it from undertaking and performing any of its duties and obligations as these are enunciated in this Agreement.

## 8

## INDEMNITY

8.1 The Company hereby undertakes to indemnify and hold the Consultant, its directors and officers, harmless against all liabilities, penalties, costs, damages, and expenses, (including reasonable attorney's fees and expenses) arising out of or

---

7.4 Żadna ze stron nie może podlegać żadnym rozpoczętym lub przewidywalnym/ ewentualnym czynnościom/postępowaniom podejmowanym do odpowiedzialności przed sądem, rządem lub arbitrem, które mogłyby wpłynąć na legalność i prawomocność niniejszej umowy.

7.5 Poniższa umowa stanowi wiążące, wykonalne, zobowiązując wzajemnie strony, legalne, prawomocnie pismo zgodne z postanowieniami ( egzekwatywalnoc wykonalna może być ograniczona w przypadku bankructwa, restrukturyzacji spółki, niewypłacalności, moratorium lub innych regulacji określających wykonalność praw wierzycieli.

7.6 Spółka potwierdza i gwarantuje że nie podpisała żadnej umowy, kontraktu ani porozumienia które w jakikolwiek sposób ograniczałoby, podważało lub zakazywało podjętych zobowiązań oraz wykonalności obowiązków wymienionych w umowie.

## 8. ODSZKODOWANIE

8.1 Spółka przyjmuje wszelkie obciążenia i ponosi wszelkie dodatkowe koszty ponoszone przez Konsultanta, jego dyrektorów i współpracowników oraz ponosi wszelkie koszty związane z nie wywiązaniem się z warunków umowy

resulting from any inaccuracy in or breach of any representation or warranty contained in this Agreement.

## 9.

## 9.1 CONFIDENTIALITY

Both the Company and the Consultant hereby agree that it shall at all times, (both during the term of this Agreement and after its termination), keep confidential, and shall not use, (other than strictly), for the purposes of this Agreement and they shall not without the prior consent of the other party divulge to any third party any Confidential Information, unless the information:

(a)  was public knowledge; or

(b)  subsequently becomes public knowledge, other than by breach of this Agreement.

## 9.2

All documents and other records, (in whatever form), containing Confidential Information supplied to the Consultant by the Company or supplied to the Company by Consultant shall be returned promptly to the respective parties on termination of this Agreement.

## 10. URATION AND TERMINATION

## 10.1

This Agreement shall come into effect on the Commencement after sighing up and, shall remain in force until completing the main subject of contract.

---

## 9. POUFNOŚĆ

9.1 Zarówno Spółka jak i Konsultant, w czasie ważności umowy oraz po jej zakończeniu, wyrażają zgodę że każda poufna informacja powinna taką pozostać. Nie może być wykorzystana za wyjątkiem pozyskania uprzedniej zgody drugiej strony na jej ujawnienie. Informacje taka można ujawnić również w przypadku gdy:

(a) była to informacja podana do publicznej wiadomości
(b) stała się z czasem informacją podaną do publicznej wiadomości (ale w sposób zgodny z warunkami umowy)

9.2 Wszystkie dokumenty oraz inne materiały (niezależnie od formy), zawierające informacje poufne dostarczone doradcy przez spółkę lub Spółce przez Konsultanta, powinny być po wygaśnięciu umowy niezwłocznie zwrócone odpowiedniej stronie.

## 10. WAŻNOŚĆ ORAZ WYGAŚNIĘCIE UMOWY

10.1 Umowa powinna wejść w życie z dniem podpisania i obowiązywać aż do realizacji głównego tematu umowy

10.2 Notwithstanding the provisions of Clause 10.1 above, any party may give notice, in writing, to the other thereby terminating this Agreement with immediate effect if:

10.2.1 any representation or warranty made by either party in accordance with the provisions of Clause 7 hereinabove, proves to have been at any time incorrect or misleading in any respect; or

10.3 Termination of this Agreement, however caused, shall be without prejudice to any rights or liabilities of the parties accrued at the date of termination.

11. NOTICES

11.1 Any notice shall be in the English language and sent by courier, registered letter or facsimile to the address of the parties stated in Clause 11.2 of this Agreement. Proof of postage or dispatch shall be deemed proof of reception. The notice shall be deemed to have reached the recipient:

i. if delivered by courier, on delivery;

ii. if sent by registered letter, five (5) days after the date of

---

10.2 Pomimo określonych warunków, każda ze stron może poprzez pisemną adnotację rozwiązać umowę gdy:

10.2.1 jakakolwiek poręczenie lub gwarancja określone przez warunki w klauzuli 7 są nieprawidłowe lub nieprawdziwe

10.3 termin wygaśnięcia umowy nie powinien wpływać na naruszenie praw oraz obowiązków żadnych ze stron.

11. UWAGI

11.1 Każde zawiadomienie powinno być napisane w języku angielskim i wysłane kurierem, listem poleconym lub faxem na adres stron określony w paragrafie nr 11.2. Dowód opłaty pocztowej i nadania wysyłki może być uznane jako potwierdzenie odbioru. Potwierdzenie odbiorcy wymagane gdy:

I   Wysłane kurierem, płatne przy odbiorze

II  wysłane listem poleconym, 5 dni po nadaniu

mailing, and

iii. if sent by facsimile, on dispatch, if the dispatching party also dispatched the message by electronic mail the same day.

11.2  As at the Company
CREATION sp.z o.o.
PL31917-KRAKOW
Os. Hutnicze 2/66
POLAND

As at the Consultant
SPETRUM LIMITED
1675 E.Mill Str. Suite 306_ Des Plains_Illinois 60016
USA

12.

**ENTIRE AGREEMENT**

This Agreement constitutes the entire agreement between the parties on all issues to which the Agreement relates. The content of this Agreement cancels and supersedes all previous written or oral commitments and undertakings.

III  wysłane faksem jako depesza, jeśli wysyłający wysyłał wiadomość również drogą mailową tego samego dnia.

11.2  Adres Spółki:

CREATION sp.z o.o.
Os. Hutnicze 2/66
31-917 KRAKÓW
POLSKA

Adres Konsultanta
SPETRUM LIMITED
1675 E.Mill Str. Suite 306_ Des Plains_Illinois 60016
USA

**12. KOMPLETNA UMOWA**

Umowa ta stanowi pełne porozumienie między stronami co do ewentualnych problemów mogących wyniknąć z ustalonych warunków. Zawartość umowy kasuje oraz zastępuje wszystkie wcześniej pisemne lub ustne postanowienia.

**13.** **MISCELLANEOUS**

13.1 A variation or amendment of this Agreement shall only be valid if it is in writing and is signed by or on behalf of the parties hereto.

13.2 In case one or more of the provisions contained in this Agreement should be invalid, illegal or unenforceable in any respect under any law, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

13.3 This Agreement may be executed in any number of counterparts each of which when executed and delivered is an original, but all the counterparts together constitute the same document.

13.4 The parties hereto will bear their own costs in relation to the preparation and execution of this Agreement and in performing the undertakings set forth herein.

**14.** **GOVERNING LAW**

The terms and provisions of this Agreement shall be governed by and construed in accordance with the laws of the USA and the Courts of the USA shall have non-exclusive jurisdiction to hear or determine any suit or proceedings which may arise out of or in connection with this Agreement.

**13. RÓŻNE**

13.1 Wyłącznie pisemne oraz podpisane przez strony zainteresowane zmiany, uzupełnienia, poprawki mają moc prawna

13.2 Każde inny warunek lub warunki niż te ustalone są nieprawomocne i nielegalne jak również niewymagalne przez żadne prawa, ważność, legalność i wymagalność pozostałych prowizji zawartych w kontrakcie nie powinna być konfliktów.

13.3 Umowa może być wykonana w kilku kopiach zgodnie z oryginałem, bez prawa żadnych zmian.

13.4 strony zainteresowane pokrywają koszty przygotowania i wcielenia umowy

**14 WŁAŚCIWOŚĆ SĄDÓW**

Terminy i postanowienia niniejszej umowy są zgodne z prawem usa i Sąd USA nie zastrzega jurysdykcji praw określonych do odpowiednio, które mogą się pojawić w związku z tą umową.

IN WITNESS whereof the parties hereto or their duly authorized
representatives have signed This Agreement the date and year first
above mentioned.

Na dowód tego strony zainteresowane lub upoważnieni
przedstawiciele podpisali powyższą umowę dnia....

| | |
|---|---|
| The Company | Spółka |
| Signed for and on behalf of | Poświadczone |
| ............. | Podpis |

Name: ............................................. Nazwisko

CREATION
Sp. z o.o.
31-417 Kraków, os. Hurtnicza 2/66
NIP 678-29-08-684

By: _____ Podpis
Address: _____
Director

Nazwisko

CREATION
Sp. z o.o.
31-417 Kraków, os. Hurtnicza 2/66
NIP 678-29-08-684

Adres
Dyrektor

The Consultant                          Konsultant
Signed for and on behalf of             Potwierdzone
SPECTRUM COMPANY LIMITED                 Podpisane w imieniu SPECTRUM COMPANY LIMITED
                    (Sgd).

Address: 1675 E.Mill Str. Suite 306 _Des Plains _Illinois 60016 USA

Adres 1675 E.Mill Str. Suite 306 _Des Plains _Illinois 60016 USA

By: Kevin Blumberg

Director Dyrektor Kevin Blumberg



# SPECTRUM LTD.
### Consulting  Advising  Analyzing  Monitoring
### 1675  E. Mill Str. Suite 306 _ Des Plains _ Illinois _ 60016

## INVOICE  # 001_2006/12
Date 15th of DECEMBER 2006

**CUSTOMER**

**CREATION SP.Z O.O.**

Os. Hutnicze 2/66

**PL 31-917 KRAKOW**

**POLAND**

| DESCRIPION OF SERVICE | |
|---|---|
| Cost of accommodation in Cracow | |
| **Total amount  in USD** | 24UIAINBPI 2006 |
| $ 10.000,- ten  thousand dollars | ≠ 2.89 ≤5 |
| **Method of payment** | |

Payment via SWIFT:

Receiver:  SWIFT: IRVTUS3N
BANK OF NEW YORK, NEW YORK

BENEFICIARY BANK.
LINE 57A    Account No. 8900457384
SWIFT: ABGBUS44
Associated Bank  N.A,
Green Bay, WI

Beneficiary:
LINE 59    Name:  Spectrum Ltd.
Adress:  1675  E. Mill Str.
City State:  Des Plains  IL  60016
Account. Number:  2153056235

LINE 72    /FED//075900575

Sign by:          X

Kevin Blumberg   vice pres.

**EXHIBIT**

B

DP5



# SPECTRUM LTD.
### Consulting Advising Analyzing Monitoring
1675 E. Mill Str. Suite 306 _ Des Plains _ Illinois _ 60016

## INVOICE   # 003_2006/10
Date 30th of OCTOBER 2006

**CUSTOMER**

**CREATION SP.Z O.O.**

Os. Hutnicze 2/66

PL 31-917 KRAKOW

**POLAND**

| DESCRIPION OF SERVICE |
|---|
| Cost of accommodation in Cracow |
| **Total amount in USD** |
| $ 10.000,- ten thousand dollars |
| **Method of payment** |

Payment via SWIFT:

Receiver: SWIFT: IRVTUS3N
BANK OF NEW YORK, NEW YORK

BENEFICIARY BANK:
LINE 57A   Account No. 8900457384
SWIFT: ABGBUS44
Associated Bank N.A.
Green Bay, WI

Beneficiary:
LINE 59   Name: Spectrum Ltd.
Adress: 1675 E. Mill Str.
City State: Des Plains IL 60016
Account Number: 2153056235

LINE 72   /FED/075900575

2MIAINBPI2006

3,0593

Sign by: _____

Kevin Blumberg vice pres.



SPECTRUM LTD.
Consulting Advising Analyzing Monitoring
1675 E. Mill Str. Suite 306 _ Des Plains _Illinois _ 60016

DP 4

### INVOICE   # 002_2006/10
Date 30th of OCTOBER 2006

CUSTOMER

CREATION SP.Z O.O.

Os. Hutnicze 2/66

PL 31-917 KRAKOW

POLAND

| DESCRIPION OF SERVICE |
|---|
| Financial and law report |
| **Total amount  in USD** |
| $ 75,000,- seventy five  thousand dollars |
| **Method of payment** |

Payment via SWIFT:

Receiver:  SWIFT: IRVTUS3N
          BANK OF NEW YORK, NEW YORK

BENEFICIARY BANK:
     LINE 57A    Account No. 8900457384
                 SWIFT: ABGBUS44
                 Associated Bank  N.A.
                 Green Bay, WI

Beneficiary:
     LINE 59     Name:  Spectrum Ltd.
                 Adress:  1675  E. Mill Str.
                 City State:  Des Plains  IL  60016
                 Account Number:  2153056235

     LINE 72    /FED/075900575

2 M|A|N BP| 2006 3,0593

Sign by:  _____

Kevin Blumberg  vice pres.



**SPECTRUM LTD.**
Consulting Advising Analyzing Monitoring
*1675 E. Mill Str. Suite 306 _ Des Plains _ Illinois _ 60016*

**INVOICE** # 001_2006/10

Date 30th of OCTOBER 2006

**CUSTOMER**

**CREATION SP.Z O.O.**

Os. Hutnicze 2/66

PL 31-917 KRAKOW

POLAND

| DESCRIPION OF SERVICE |
|---|
| Supporting in final contract with UMP |
| **Total amount in USD** |
| $ 100,000,- one hundred thousand dollars |
| **Method of payment** |

Payment via SWIFT:

Receiver: SWIFT: IRVTUS3N
BANK OF NEW YORK, NEW YORK

BENEFICIARY BANK:
LINE 57A    Account No. 8900457384
SWIFT: ABGBUS44
Associated Bank N.A.
Green Bay, WI

Beneficiary:
LINE 59    Name: Spectrum Ltd.
Adress: 1675 E. Mill Str.
City State: Des Plains IL 60016
Account Number: 2153036235

LINE 72    /FED/075900575

2MIAINBPI 2006   3,0593

Sign by:  _____

Kevin Blumberg vice pres.



**SPECTRUM LTD.**
Consulting Advising Analyzing Monitoring
*1675 E. Mill Str. Suite 306 _ Des Plains _ Illinois _ 60016*

# INVOICE

# 001_2006/06
Date 30th of June 2006

**CUSTOMER**
**CREATION SP.Z O.O.**

Os. Hutnicze 2/66

PL 31-917 KRAKOW

POLAND

---

**DESCRIPION OF SERVICE**

Consulting – lawyer advising
**Total amount in USD**

$ 550.000,- five hundred fifty thousand dollars

**Method of payment**    126/A/NBP/2006    3,18 16  = 1 749 880 zT

---

Payment via SWIFT:

Receiver: SWIFT: IRVTUS3N
BANK OF NEW YORK, NEW YORK

BENEFICIARY BANK:
LINE 57A    Account No. 8900457384
SWIFT: ABGBUS44
Associated Bank N.A.
Green Bay, WI

Beneficiary:
LINE 59    Name: Spectrum Ltd.
Adress: 1675 E. Mill Str.
City State: Des Plains IL 60016
Account Number: 215305G235

LINE 72    /FED/075900575

Sign by: _____
Kevin Blumberg  vice pres.



DP2

## PECTRUM LTD.

Consulting Advising Analyzing Monitoring

1675 E. Mill Str. Suite 306 _ Des Plains _ Illinois _ 60016

### INVOICE    # 002_2006/06

Date 30th of June 2006

**CUSTOMER**

**CREATION SP.Z O.O.**

**Os. Hutnicze 2/66**

**PL 31-917 KRAKOW**

**POLAND**

| DESCRIPTION OF SERVICE |
| --- |

Financial report

Total amount in USD

$ 80,000,- eighty thousand dollars

Method of payment    _1261 A I N B P I 2006_    _3,1816 = 254 528 zł_

Payment via SWIFT:

Receiver: SWIFT: IRVTUS3N
BANK OF NEW YORK, NEW YORK

BENEFICIARY BANK:
LINE 57A    Account No. 8900457384
SWIFT: ABGBUS44
Associated Bank N.A.
Green Bay, WI

Beneficiary:
LINE 59    Name: Spectrum Ltd.
Adress: 1675 E. Mill Str.
City State: Des Plains IL 60016
Account Number: 2153056235

LINE 72    /FED/075900575

Sign by:

Kevin Blumberg vice pres.



# PECTRUM LTD.

### Consulting Advising Analyzing Monitoring

## 1675 E. Mill Str. Suite 306 _ Des Plains _ Illinois _ 60016

## INVOICE # 002_2006/12

Date 20th of DECEMBER 2006

**CUSTOMER**

**CREATION SP.Z O.O.**

**Os. Hutnicze 2/66**

**PL 31-917 KRAKOW**

**POLAND**

---

**DESCRIPION OF SERVICE**

Supporting in final contract with BCS

**Total amount in USD**

*2471 A/NBP1 2006*

---

| $ 250.000,- two hundred and fifty thousand dollars | x 2.8849 |
|---|---|

---

**Method of payment**

Payment via SWIFT:

Receiver: SWIFT: IRVTUS3N
BANK OF NEW YORK, NEW YORK

BENEFICIARY BANK:
LINE 57A    Account No. 8900457384
SWIFT: ABOBUS44
Associated Bank N.A.
Green Bay, WI

Beneficiary:
LINE 59    Name: Spectrum Ltd.
Adress: 1675 E. Mill Str.
City State: Des Plains IL 60016
Account Number: 2153056235

LINE 72    /FED/075900575

Sign by:

Kevin Blumberg  vice pres.