# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAN DOMANUS and ANDREW KOZLOWSKI, both individually and derivatively on behalf of KRAKOW BUSINESS PARK SP.Z.O.O., <br><br>        Plaintiffs, <br><br>    v. <br><br> DEREK LEWICKI, RICHARD SWIECH, ADAM SWIECH, ALICJA GOSTEK SWIECH, SPECTRUM COMPANY, LTD., ORCHARD MEADOWS HOMES, INC., ORCHARD MEADOWS HOMES, LLC, ORCHARD MEADOWS, LLC, LAKE RIDGE TOWNHOMES CORP., and ADR ENTERPRISES, INC., <br><br>        Defendants. | No. 08 C 4922 |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jan Domanus ("Domanus") and Andrew Kozlowski ("Kozlowski") have filed an amended complaint both individually and on behalf of Krakow Business Park Sp. z.o.o. ("KBP") alleging: violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), against Adam Swiech ("Adam"), Richard Swiech ("Richard"), and Derek Lewicki ("Lewicki") (count I); conspiracy to violate RICO against all defendants (count II); fraud against Adam, Richard, and Lewicki (count III); breach of fiduciary duty against Adam, Richard, and Lewicki (count IV); aiding and abetting breach of fiduciary duty against all defendants (count V); constructive trust against all defendants (count VI); and civil conspiracy against all defendants (count VII).

Before me are the following motions: (1) a motion by defendants Lewicki, Richard, Orchard Meadows Homes, Inc., Lake Ridge Townhomes, Corp., and ADR Enterprises, Inc., to dismiss the amended complaint based on *forum non conveniens*; (2) a separate motion by the same defendants to dismiss plaintiffs' individual claims for lack of standing, and to dismiss plaintiffs' derivative claims both for failure to comply with the requirements of Fed. R. Civ. P. 23.1 ("Rule 23.1"), and for failure to name the corporation as defendant under Fed. R. Civ. P. 19(b) ("Rule 19(b)"); (3) a motion by defendants Lewicki and Richard to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"); a motion by defendants Lake Ridge Townhomes Corp., ADR Enterprises, Inc., and Orchard Meadows Homes, Inc., to dismiss the amended complaint based on Rule 12(b)(6); and (5) a motion by defendant Adam to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(2). These motions are resolved as follows.

I.

Plaintiffs Kozlowski and Domanus are individual minority shareholders in KBP, together owning thirty-four percent of the company's outstanding shares. Domanus is an Illinois resident. Kozlowski's residence is a bit murky, as plaintiffs allege that he is "a resident of Florida, temporarily residing in Poland."[1] The

---

[1] Whatever this means, whether Kozlowski resides in Florida or in Poland is not dispositive of any pending motion, so I need not linger on the ambiguity of plaintiffs' allegation.

amended complaint is silent about the citizenship or place of business of the corporate plaintiff, KBP, but plaintiffs do not appear to contest the assertion by some defendants that KBP is a Polish corporation that does no business in Illinois.

Plaintiffs' allegations about the identities of the corporate defendants are spotty and sometimes inconsistent, and many of these allegations are made on information and belief. For example, the case caption names only one Lake Ridge Townhomes entity (Lake Ridge Townhomes Corp.), but the allegations in the body of the amended complaint refer first to Lake Ridge Townhomes, LLC, (alleged to be a Nevada limited liability company "managed" by defendant Adam), and only later to Lake Ridge Townhomes Corp., (identified only as an entity "owned and/or controlled by one or more of the individual defendants"). The amended complaint contains no allegations at all regarding the citizenship or place of business of several corporate defendants, but it does assert that one of the Orchard Meadows Homes defendants (which one is unclear, as plaintiffs name both an "Inc." and an "LLC") is registered to do business in Illinois. Another corporate defendant, Spectrum, is alleged to be a non-existent corporation whose putative principal place of business is also in Illinois. Plaintiffs allege that all of the individual defendants are Illinois residents, although defendant Adam disputes this allegation as to himself.

The gravamen of plaintiffs' complaint is that defendants conspired to defraud the corporate plaintiff and its minority shareholders (i.e., Domanus and Kozlowski) through a scheme of misappropriation and misuse of funds invested in a real estate development and management project in Poland. The alleged wrongful conduct includes a wide range of unlawful activities, including, for example, money laundering, payments made for valueless or fictitious services, the extortion of unidentified third parties, misrepresentations about defendants' ownership of purportedly independent companies, forgery of plaintiffs' signatures, and the refusal to provide plaintiffs with access to KBP's books and records.

The pending motions to dismiss challenge various aspects of the amended complaint, and, in some cases, the action as a whole.

II.

A. *Forum Non Conveniens*

I begin with the broadest challenge to plaintiffs' action, the motion to dismiss based on *forum non conveniens*. "A federal court has discretion to dismiss a case on the ground of *forum non conveniens* 'when an alternative forum has jurisdiction to hear [the] case, and ... trial in the chosen forum would establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience, or ... the chosen forum [is] inappropriate because of considerations affecting the court's own

4

administrative and legal problems.'" *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 429 (2007)(quoting *American Dredging Co. v. Miller*, 510 U.S. 443, 447-448 (1994) (citations omitted)(alterations in *Sinochem*). The principle boils down to this: I may dismiss plaintiffs' complaint "if it best serves the convenience of the parties and the ends of justice." *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 802 (7th Cir. 1997)(citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947) and *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947)).

The analysis applied to effectuate this principle involves a two-step inquiry. *AAR Intern., Inc. v. Nimelias Enterprises S.A.*, 250 F.3d 510, 524 (7th Cir. 2001). First, a court must "determine that an adequate alternative forum is available to hear the case, meaning that all parties are within the jurisdiction of the alternative forum and amenable to process there, and that the parties would not be treated unfairly or deprived of all remedies if the case were litigated in the alternative forum." *Id*. Where a plaintiff has chosen to litigate in his or her home forum, "there is a presumption in favor of allowing [the] plaintiff his choice of courts." *Abad v. Bayer Corp.*, 563 F.3d 663, 666 (7th Cir. 2009). Accordingly, the defendant bears the threshold burden of demonstrating that an adequate alternative forum exists. *Abiola v. Abubakar*, 267 F.Supp.2d 907, 918 (N.D. Ill. 2003).

Next, if the court is satisfied that an adequate alternative forum exists, it must then proceed to weigh a host of private and public interest factors to determine the appropriateness of dismissal. *AAR*, 250 F.3d at 524. Examples of private interest factors include "the 'relative ease of access to sources of proof' in each forum, and 'the availability of compulsory process for the attendance of unwilling witnesses,'" *id.* (quoting *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 803 (7th Cir. 1997). Public interest factors include, for example, "'administrative difficulties stemming from court congestion,' and the interest of trying a diversity case in a forum that is 'at home with the law that must govern the action.'") *AAR*, 250 F.3d at 524 (quoting *Kamel*, 108 F.3d at 803).

In this case, plaintiffs allege that at least one plaintiff, Domanus, is an Illinois resident. As to him, this suit was filed in his home forum. Accordingly, although it is not entirely clear whether Poland or some other forum might appropriately be considered the home forum of one or both of the remaining plaintiffs, there is a reasonable basis for applying the presumption in favor of plaintiffs' chosen forum, and for placing the burden on the defendants asserting *forum non conveniens* to overcome this presumption. Yet the basis asserted by these defendants for dismissing the action is that "[p]laintiffs have not demonstrated that the Polish legal system does not offer them an

6

adequate remedy." This plainly reverses the parties' burdens of proof at this stage. Moreover, although plaintiffs need not disprove the adequacy of Polish courts to survive the motion (since movants made no effort to establish, in the first instance, that Poland offers an adequate alternative forum), plaintiffs included in their opposition the affidavit of a Polish attorney stating that plaintiffs have no meaningful remedies under Polish law.

In reply, movants question the affiant's objectivity, but they conspicuously do not challenge any of the facts set forth in the affidavit. Instead, they assert the legal argument that the remedies available in Poland need not be the same as those available in the United States. A reasonable reading of the affidavit, however, is that plaintiffs are effectively without *any* remedy in Poland,[2] so this argument gets movants nowhere. Meanwhile, both sides are silent on the independent issues, also required for the first-step of the *forum non conveniens* analysis, of whether Polish courts have jurisdiction over all of the parties and whether the parties are amenable to service there.

Under these circumstances, I do not find that an adequate alternative remedy is available to hear this case. Accordingly, I

---

[2] The affidavit states, in essence, that Polish law does not recognize many of the causes of action asserted, including shareholder derivative claims, and that to the extent defendants may be convicted in criminal proceedings based on the conduct alleged here, restitution is unavailable to plaintiffs.

need not proceed to the second step of the *forum non conveniens* analysis. The motion to dismiss on this ground is denied.

B. Standing

In another motion, certain defendants argue that plaintiffs have only derivative claims in this action, and that all of the individual claims asserted must be dismissed for lack of standing. Plaintiffs respond that five of the counts in the complaint are direct, rather than derivative, causes of action, identifying count III for fraud, counts IV and V for breach of fiduciary duty and for aiding and abetting in the breach, count VI for constructive trust, and count VII for civil conspiracy. Plaintiffs appear to believe either that movants' standing objection is not directed at those counts (although that is not my interpretation of the motion), or that the arguments raised are adequately rebutted by plaintiffs' characterization of these counts as stating "direct" claims. In any event, plaintiffs articulate no further argument relating to these counts. As to their RICO and RICO conspiracy counts (counts I and II) plaintiffs argue that they appropriately assert both individual and derivative claims because the individual plaintiffs--as "the only minority shareholders" (plaintiffs' emphasis)--suffered injuries separate and distinct from those of "other shareholders."

In reply, movants refocus this issue on the nature of the injuries asserted. Indeed, the authorities cited by both sides

focus not on the type of claim asserted (i.e., the plaintiff's theory of liability), or on the distribution of the injured corporation's ownership (i.e., whether plaintiffs are the "only" minority shareholders), but instead on the nature of the *injuries* for which plaintiffs seek relief. Only where a plaintiff alleges *injuries* that are distinct from those of the corporation may an individual action proceed. *See Flynn v. Merrick*, 881 F.2d 446, 449 (7th Cir. 1989) ("As a general principle, a corporate shareholder does not have an individual right of action against third parties for damages to the shareholder resulting indirectly from injury to the corporation.... This court has recognized the exception to the general rule for injuries suffered by the shareholder that are separate and distinct from those suffered by other shareholders"); *Twohy v. First Nat. Bank of Chicago*, 758 F.2d 1185, 1194 (7th Cir. 1985) ("Under general principles of United States corporate law, as well as under Illinois law, a stockholder of a corporation has no personal or individual right of action against third persons for damages that result indirectly to the stockholder because of an injury to the corporation"); *Levine v. Prudential-Bache Properties*, 855 F.Supp.924, 939 (N.D. Ill. 1994) ("If the shareholder's injury resulted directly from an injury to the corporation, but only indirectly from the harm the wrongdoer wreaked upon the corporation," the claim is derivative); *see also Small v. Sussman*, 306 Ill.App.3d 639, 643-44, 713 N.E. 2d 1216 (Ill.App.Ct. 1999)

9

("The law controlling whether an action is derivative or direct, however, requires *a strict focus on the nature of the alleged injury*, i.e., whether it is to the corporation or to the individual shareholder that injury has been done." (Emphasis added))

It is clear in this case that all of the injuries reasonably supported by the amended complaint flow from the alleged "looting" of KBP (in fact, two variations on this expression appear in the very first paragraph), and that the individual injuries asserted are none other than the losses that the minority shareholders suffered as investors in the company. These are classic shareholder derivative injuries. *Small v. Sussman*, 306 Ill.App.3d 639, 643-44, 713 N.E. 2d 1216 (Ill.App.Ct. 1999).

Plaintiffs identify three injuries they believe are distinct from those of other shareholders. The first is that, as a result of defendant Adam's swindling, plaintiff Domanus "has never been listed as a shareholder" of KBP and has been deprived of his full voting rights. In other words, Domanus claims he never received the shares and voting rights he paid for. This alleged injury might indeed survive the standing challenge were it 1) properly supported by, and consistent with, plaintiffs' allegations as a whole, and 2) pertinent to the movants here (who do not include Adam). But neither is the case. First, the allegations relating to Domanus's ownership of KBP are, at best, ambiguous (if not flatly contradictory). As best I can interpret the allegation that

10

Domanus is not "listed" as a shareholder, it seems to assert that he is entirely excluded from KBP's ownership. Yet, it is apparent from other allegations that Domanus has not been denied *any* ownership interest in KBP; indeed, plaintiffs allege that Domanus and Kozlowski together own thirty-four percent of the company's outstanding shares. In any event, it is unclear what injury Domanus claims to have suffered as a consequence of not being "listed," or even what exactly this allegation asserts as a factual matter. To the extent Domanus might have an individual claim based on this allegation, the amended complaint falls far short of stating one. Moreover, I agree with movants that there is no basis in the amended complaint for holding the moving defendants liable for this alleged individual injury.

The second injury plaintiffs identify is that Adam "wrongfully claims that Domanus took a loan from Adam Swiech in the amount of 2 million Zloty." It is true that the amended complaint makes reference to such a claim (let us call it the "wrongful loan claim") by Adam; but the relevance of the wrongful loan claim to any injury alleged in this action is a mystery. In fact, the wrongful loan claim is referenced only as a "probable reason" Adam allegedly refuses to provide plaintiffs access to KBP's corporate books. The implied relationship between the wrongful loan claim and Adam's refusal to provide access to corporate records is itself rather cryptic; but it is clear in any event that plaintiffs do not

11

state an individual claim in this action based on whatever unidentified injury they may believe Domanus suffered as a result of the wrongful loan claim.

Finally, plaintiffs contend that they assert an injury separate and distinct from the corporation's injuries with their allegations throughout the complaint that "the monies they (as individuals) invested in the corporation were misappropriated" by defendants for their own benefit. Of course, this states precisely a derivative claim: plaintiffs were injured *qua* KBP investors by defendants' alleged wrongful acts. *See Small v. Sussman*, 306 Ill.App.3d 639, 643-44, 713 N.E. 2d 1216 (Ill.App.Ct. 1999) ("The alleged diversion of [company] profits to other entities is a classic injury to the corporation.")

Because, as the preceding discussion illustrates, the amended complaint does not properly assert any individual injuries separate and distinct from the corporation's injuries, the individual plaintiffs lack standing to bring any of the asserted claims on their own behalf. All such putative claims are dismissed.[3]

### C. Rule 23.1 and Rule 19(b)

The motion challenging the individual plaintiffs' standing to sue also asserts that plaintiffs' derivative claims must be

---

[3] To be clear, this holding applies equally to the counts plaintiffs refer to as "direct" claims and to those they identify as "derivative actions."

dismissed for failure to comply with Rule 23.1 and Rule 19(b). The Rule 23.1 challenge has merit.

Movants argue that plaintiffs have failed to meet the requirement of Rule 23.1(b)(3)(A) to plead, with particularity, "any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholder or members." Plaintiffs respond that they have, indeed, met this requirement.[4] In support of their position, plaintiffs identify eight separate numbered paragraphs of the amended complaint. None of these can reasonably be read to assert any concrete effort at all by plaintiffs. While a few of the cited paragraphs make generic allegations about defendants' refusal to provide access to "basic shareholder information," or to plaintiffs' inability to locate one defendant's corporate records, these references clearly fall short of meeting the requirements of Rule 23.1.[5] Because this defect is fatal to plaintiffs' derivative

---

[4]Accordingly, I need not entertain the possibility that under the governing state law, plaintiffs were not required to demand, or were excused from demanding, action by the corporate directors. Neither party has addressed this issue, and, in any event, plaintiffs would still be bound by Rule 23.1(b)(2)(3)(B) to plead with particularity "any reasons for not obtaining the action or not making the effort," which they clearly did not do.

[5]Although defendants raise only the cited portion of the Rule in their motion, the amended complaint appears to be deficient in other respects as well. For example, Rule 23.1(b) states that the complaint in a derivative action "must be verified." As far as I can tell, the amended complaint was signed only by plaintiffs' counsel and has not been verified.

claims, I need not reach whether the claims also fail under Rule 19(b).[6]

## D. Rule 12(b)(6)

A subset of the defendants who moved for dismissal on the foregoing grounds also filed separate motions under Rule 12(b)(6), arguing that the amended complaint fails to state any actionable claims as to them.[7] Because all of plaintiffs' claims fail for the reasons discussed above, the issues raised in the 12(b)(6) motions are not ultimately material to my disposition of the pending motions, nor do I rely on 12(b)(6) arguments in disposing of the amended complaint. Nevertheless, in anticipation that plaintiffs

---

[6] Having reviewed movants' arguments and authorities on this issue, however, I am not persuaded that Rule 19(b) is violated where the corporation is named as a plaintiff, rather than as a defendant. While the relevant authorities make clear that the corporation's presence in the suit is required, they also demonstrate that the corporation may be realigned to reflect its true interests as a party. Even assuming that KBP is more appropriately aligned with defendants, *see, e.g., Van Gelder v. Taylor* 621 F.Supp.613, 620 (N.D. Ill. 1985) (corporation properly named as defendant "whenever the corporate management is 'antagonistic' to the plaintiff shareholder" (citation omitted)), defendants have not persuaded me that dismissal, rather than realignment of the corporation, is the proper course.

[7] The individual defendants against whom RICO violations were alleged brought one motion, while the corporate defendants, against whom RICO conspiracy violations were, brought a separate 12(b)(6) motion. Because I presume the RICO claim must be adequately pled before the RICO conspiracy claim could be maintained, this discussion focuses on the individual defendants' motion, and "movants" in this section refers to them.

14

will seek to file a second amended complaint, I briefly address several Rule 12(b)(6) challenges that appear to have merit.[8]

Movants argue that the amended complaint inappropriately "lumps together" the various defendants, making it impossible to know which defendant is alleged to have committed which unlawful act. This is fatal to plaintiffs' RICO claims, movants insist, which are premised on allegations of mail and wire fraud, and are thus subject to the heightened pleading standards of Fed. R. Civ. P. 9(b). It is true that in some circumstances, where the relevant information is uniquely within defendants' control, plaintiffs are not required to identify which specific defendant is responsible for each fraudulent act. *See, e.g., Shapo v. O'Shaughnessy,* 246 F.Supp.2d 935 (N.D. Ill. 2002); *Banowitz v. State Exchange Bank,* 600 F.Supp. 1466 (N.D. Ill. 1985). But in many instances here, the amended complaint evidences not so much a lack of information as sloppy drafting. For example, plaintiffs frequently attribute conduct to "Swiech," although this obviously could refer to any of three named defendants.[9] In other instances, the complaint makes elusive references to defendants' unnamed "cronies," or asserts

---

[8] I limit my discussion to the RICO counts, on which my jurisdiction over the remaining counts is premised.

[9] Plaintiffs seem to think that any ambiguity is resolved by the attribution "Messrs. Swiech" – but this phrase is often followed by "and Lewicki," making it impossible to tell whether the plural refers to Richard, Adam, and Lewicki, or one of the other Swiech brothers and Lewicki.

15

wrongful acts, described in highly general terms, committed by non-parties allgedly related in some fashion to one or more defendants, against wholly unidentified third parties. For example, ¶ 20 asserts that, "Creation [a company allegedly owned by Lewicki] has extorted bribes and other payments from legitimate contractors. On at least one such occasion, Creation demanded that a contractor enter into an agreement under which Creation was compensated for services that were fictitious and never performed."[10]) At a minimum, where their allegations appear to be based on discrete transactions involving particular entities, plaintiffs are not entitled to leave defendants guessing about the known particulars of the parties or the conduct involved.

Moreover, quite apart from the Rule 9(b) obligation to plead fraudulent conduct with specificity, plaintiffs must provide sufficient factual material from which to infer the existence of a "pattern of racketeering activity" in order to state a RICO violation. "Congress passed RICO in an effort to combat organized, long-term criminal activity.... Although § 1964(c) provides a private civil action to recover treble damages for or violations of

---

[10]These allegations, which omit the identity of the victimized contractor, the manner in which the "extortion" was achieved, the nature of the agreement or the fictitious services, or any relevant dates-in short, any information that would allow defendants to identify the allegedly unlawful transaction-appear unrelated to the more detailed allegations that follow. As far as I can tell, the complaint offers no additional details about the conduct alleged in this paragraph.

16

RICO's substantive provisions...the statute was never intended to allow plaintiffs to turn garden-variety state law fraud claims into federal RICO actions." *Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466 (7th Cir. 2007)(internal citations omitted). Indeed, the requirement that a RICO plaintiff demonstrate a "pattern of racketeering activity" implies that he or she must do more than allege "a multiplicity of racketeering predicates." *H.J. Inc. V. Northwestern Bell Telephone Co.*, 492 U.S. 229, 238 (1989). The "pattern" requirement means plaintiffs must allege at least two predicate acts that are both related to one another (the "relationship" prong) and pose a threat of continued criminal activity (the "continuity" prong). *Jennings*, 496 F.3d at 473.

The relationship prong is satisfied where the alleged acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240. The continuity prong requires allegations sufficient to infer either 1) a series of related predicates over a substantial period of time (closed-ended continuity), or conduct that "by its nature projects into the future with a threat of repetition" (open-ended continuity). *Id.* The factual holes in the broad allegations of amended complaint make it difficult to ascertain whether either prong of the "pattern" requirement is met.

In response to movants' argument that plaintiffs have not pled a "pattern of racketeering activity" with sufficient particularity, plaintiffs argue that the amended complaint "discloses a great deal of the 'who, what, when and where' facts about each activity." Plaintiffs then parse the various paragraphs of the amended complaint, sometimes in groups, in attempt to demonstrate that they have adequately pled a RICO claim under Rule 9(b). But plaintiffs' laundry list merely brings into focus the shortcomings of their RICO allegations. First, most of the acts identified lack any discernable link to the mail or wire fraud predicates on which they appear to base their RICO claim.[11] In addition, the relationship between some of the acts alleged and any injury attributable to the alleged scheme at all is entirely opaque (e.g., "Adam Swiech forged plaintiffs' signatures on a March 2008 shareholder resolution that was subsequently filed with a Polish governmental authority"). Many allegations leave out references even to approximate dates, despite the fact that "[c]ontinuity is centrally a temporal concept." *H.J. Inc.*, 492 U.S. at 230. Finally, although plaintiffs state, in a conclusory fashion, that KBP "was engaged in interstate commerce and its activities affected interstate commerce

---

[11]Although ¶ 53 the RICO count also asserts violations of 18 U.S.C. §§ 1344 (bank fraud), 1951 (relating to interference with commerce, robbery, or extortion), 1952 (relating to racketeering), and 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), the remaining paragraphs of the count focus on mail and wire fraud, and, indeed, these are the only violations the parties address in their briefing.

18

at all relevant times," it is far from clear that the substantive allegations in the amended complaint suffice to support this conclusion.

As I noted at the outset of this section, the complex issues raised by the Rule 12(b)(6) challenges to plaintiffs' RICO claims--many of which the parties address only superficially, if at all, in their briefing--are not material to my conclusion that the amended complaint must be dismissed. Accordingly, I deny both of the pending motions brought pursuant to Rule 12(b)(6) as moot and decline to examine the issues further at this stage in attempt to ascertain whether plaintiffs' allegations are minimally sufficient, despite their flaws, to support their RICO claims. Should plaintiffs seek to replead their complaint, however, they are admonished to bear in mind the present discussion.

III.

For the reasons discussed above, the amended complaint is dismissed in its entirety.[12]

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Dated: August 19, 2009

---

[12] Defendant Adam Swiech's motion to dismiss is denied as moot in light of the present ruling.