IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAN DOMANUS and ANDREW KOZLOWSKI, both individually and derivatively on behalf of KRAKOW BUSINESS PARK SP.Z O.O., KBP-1 SP. Z O. O., KBP-2 SP. Z O.O., KBP-3 SP. Z O. O., KBP-5 SP. Z O.O., KBP-6 SP. Z O.O., KBP-7 SP. Z O.O., KBP-8 SP. Z O.O., and KBP-11 SP. Z O. O., <br><br> Plaintiffs, <br> v. <br><br> DEREK LEWICKI, KATARZYNA SZUBERT-LEWICKI, RICHARD SWIECH, BOZENA SANECKA-SWIECH, ADAM SWIECH, SPECTRUM COMJPANY, LTD., ORCHARD MEADOWS HOMES, INC., ORCHARD MEADOWS HOMES, LLC, ORCHARD MEADOWS, LLC, LAKE RIDGE TOWNHOMES CORP., LAKE RIDGE, LLC, POLCON CONSTRUCTION CORP., PROTORIUS, LTD., SAXELBY ENTERPRISES, LTD., and ADR ENTERPRISES, INC., <br><br> Defendants. <br><br> and <br><br> KRAKOW BUSINESS PARK SP. Z O.O., KBP-1 SP. Z O. O., KBP-2 SP. Z O.O., KBP-3 SP. Z O. O., KBP-5 SP. Z O.O., KBP-6 SP. Z O.O., KBP-7 SP. Z O.O., KBP-8 SP. Z O.O., and KBP-11 SP. Z O. O. <br> Derivative Defendants. | No. 08 C 4922 |

MEMORANDUM OPINION AND ORDER

On August 28, 2008, plaintiffs, who are shareholders in

corporate defendant Krakow Business Park SP. Z O.O. ("KBP"),

1

brought an action alleging a pattern of fraud and deceit;
corporate looting and misappropriation of corporate funds;
and money laundering by various individual and corporate
defendants. Plaintiffs asserted direct and derivative claims
under 18 U.S.C. § 1962 ("RICO"), as well as liability under
several common law theories including fraud, breach of
fiduciary duty, civil conspiracy, and others. After the
original complaint was amended, various defendants moved to
dismiss the case on a variety of grounds. On August 19,
2009, I issued a memorandum opinion and order addressing a
number of issues raised in the then-pending motions.
*Domanus v. Lewicki*, 645 F. Supp. 2d 697 (N.D. Ill. 2009). I
declined to dismiss the case on the asserted theory of *forum
non conveniens*, but because I concluded that the amended
complaint did not properly assert any individual claims
distinct from the corporation's claims, and that the
derivative claims could not proceed for failure to comply
with Rule 23.1, I dismissed the complaint in its entirety.
Although not a basis for my decision, I also noted the
likely merit of arguments raised in defendants' motions for
dismissal under Fed. R. Civ. P. 12(b)(6), and I admonished
plaintiffs to bear these arguments in mind in any further
iteration of the complaint.

Plaintiffs then filed a second amended complaint, which I dismissed without a written opinion and with explicit leave to amend. This brings us to plaintiffs' third amended complaint, which is the target of the pending motions. This complaint (which, for ease of reference, I generally refer to simply as "the complaint") names several additional defendants, including direct defendants (i.e., parties whose interests are adverse to plaintiffs'), as well as nominal or derivative defendants, whose interests are allegedly aligned with plaintiffs'. The complaint also adds direct and derivative claims. The direct claims now asserted are for violations of RICO, 18 U.S.C. §§ 1962(a)-(d), fraud, conversion, breach of fiduciary duty, tortious interference with prospective business advantage, civil conspiracy, violation of the Uniform Fraudulent Transfer Act (740 ILCS §§ 160/1 et seq.), and for an accounting. The derivative claims, brought on behalf of nominal defendants KBP and those of KBP's wholly owned subsidiaries that appear in the caption as derivative defendants, are for violations of RICO, 18 U.S.C. §§ 1962(a)-(d), fraud, breach of fiduciary duty, civil conspiracy, violation of the Uniform Fraudulent Transfer Act (740 ILCS §§ 160/1 et seq.), and for an accounting.

Nine motions to dismiss are currently pending.[1]  Five of these are pursuant to Rule 12(b)(6).[2]  In addition, the direct defendants have brought a joint motion to dismiss pursuant to Rule 12(b)(7),[3] and another pursuant to the common law theory of *forum non conveniens.*[4]  Defendant Adam Swiech ("Adam") has moved to dismiss all claims against him for lack of personal jurisdiction.[5]  Finally, the nominal defendants (i.e., KBP and its subsidiaries) have moved to quash service, in conjunction with which they assert that I lack personal jurisdiction over them.[6]  I deny all of these motions for the reasons that follow.

---

[1] The docket reflects only seven pending motions.  This is because in two instances, defendants' substantive motions were filed as exhibits to motions for leave to file excess pages, and were not refiled as separate docket entries once leave was granted.  This is poor practice, which confuses an already unwieldy docket, and should be avoided in the future.  For the same reasons, defendants should file supporting memoranda as separate docket entries from their motions for relief.

[2] These are DN 233 (Derek Lewicki), DN 235 (Richard Swiech), DN 237 (ADR Enterprises, Inc., Lake Ridge Townhomes Corp., and Orchard Meadows Homes, Inc.), DN 239 (Bozena Sanecka-Swiech and Katarzyna Szubert-Lewicki), and DN 243-1 (all direct defendants).

[3] DN 241.  I note that defendants Polcon Construction Corp., Orchard Meadows Homes, LLC, Orchard Meadows, LLC, Lake Ridge, LLC, Protorius, Ltd., and Saxelby Enterprises, Ltd. have not appeared. References to motions brought by "all" direct defendants exclude these parties.

[4] DN 274-1

[5] DN 245

[6] DN 270

<u>Motions pursuant to Rule 12(b)(6)</u>

In a collective 12(b)(6) motion, defendants insist that the complaint is "incomprehensible," "contradictory," and that it "jumbles" the defendants together such that it is "impossible for defendants to discern whether plaintiffs have stated a claim." I disagree. The complaint sets forth lucid, detailed allegations that identify with substantial precision the specific wrongdoing attributed to each defendant, and it further explains how the various defendants' malfeasance fits into their overall unlawful scheme. While plaintiffs' allegations are indeed copious, they are far from "incomprehensible." The basic story that emerges from the complaint is that the individual defendants, working with each other and with and through a host of foreign and domestic corporations that they control, engaged in a pattern of misconduct designed to rob KBP of its assets, which defendants then misappropriated for themselves, and used, among other things, to wrest control and ownership of KBP from plaintiffs.

The substantive portion of the complaint is broken down into three sections. The first is the factual background, which alleges four distinct types of misconduct under the rubric "Misappropriation of Assets from KBP and its Subsidiaries." The categories of misconduct alleged are:

sham contracts and payments for inadequate consideration (¶¶ 36-49); self-dealing leases (¶¶ 50-51); land misappropriation (¶¶ 52-53); and construction kickbacks (¶¶ 54-57). The allegations in each category set forth details of specific transactions, which details generally include the identities of the defendants involved, the value of the assets, the means through which the transaction was carried out (e.g., wire transfer), and the basis for plaintiffs' assertion that the transaction was fraudulent or otherwise wrongful. This section of the complaint then describes how defendants used proceeds generated by their misconduct to dilute plaintiffs' ownership interest in KBP and otherwise to cause them individual injury. It also alleges that defendants invested misappropriated funds in United States businesses, including the corporate direct defendants. Finally, this section describes the steps defendants took to conceal and perpetuate their wrongdoing.

The second section of the complaint is captioned "RICO Predicate Acts" and alleges how the wrongdoing described in the factual section, and certain specific acts exemplifying or relating to that wrongdoing, amount to mail and wire fraud (18 U.S.C. §§ 1341, 1343), money-laundering (18 U.S.C. § 1956(a)), and Travel Act (18 U.S.C. § 1952) violations,

which are the "predicate acts" alleged to support plaintiffs' RICO claims.

In its third and final section, the complaint asserts twenty-five separate counts that identify plaintiffs' direct and derivative claims.

In short, the complaint is as well-organized as it is detailed, and the story it presents is cogent and plausible. Accordingly, defendants are reduced to grasping at straws to try and win dismissal under Rule 12(b)(6), and their various motions on this ground read accordingly. These motions generally seek to create the appearance of confusion, contradiction, or omission in the complaint where none exists. Defendants make only a half-hearted attempt to show that the complaint, read as a whole, fails to allege any of the elements of plaintiffs' various claims, or to meet the applicable pleading standards.[7] Instead, they pluck particular allegations out of the context of the complaint as a whole, and, viewing them in isolation, insist that they are improper because they are confusing, irrelevant, or

---

[7] Many of defendants' arguments make little or no reference to pleading requirements or the elements of plaintiffs' claims at all. Where defendants do discuss specific pleading requirements, for example of § 1962(a) (an "investment injury") and (d) (RICO conspiracy), I am satisfied that the complaint satisfies them.

incomplete. The following example illustrates this approach.

In support of their argument that plaintiffs fail properly to plead the requisite "predicate acts" to support their RICO claims, defendants attack subsection 91(c) of the complaint. Paragraph 91 generally alleges the use, by defendants Lewicki, Adam, and Richard Swiech ("Richard"), of the wires in interstate or foreign commerce in violation of 18 U.S.C. § 1343, and it identifies specific transactions in subsections (a)-(n). Subsection (c) alleges "wire transfers related to the sale of the KBP-100 building to First Property Fund, including, but not limited to, First Property Fund's wire transfer of $18,500,000 for purchase of the building and KBP-1's wire transfer, on behalf of KBP, of $571,000 to Domanus's Illinois bank account as his partial dividend." Defendants insist that plaintiffs "fail to provide any information regarding how or why" this transaction advances the alleged RICO scheme, wryly arguing that it is "hard to see how paying money to the plaintiff advanced the scheme to defraud," Def.'s. Mot. at 10 (DN 243-1). But paragraph 60 of the complaint provides precisely the information defendants assert is lacking and makes perfectly clear both why plaintiffs consider this transaction fraudulent and how it relates to the overall

scheme.[8]    Read in context, there is nothing confusing or incomplete about paragraph 91(c), and its relevance to the case is plain.

The additional arguments defendants raise in their collective 12(b)(6) motion are generally variations on the foregoing, disingenuous approach.

The separate 12(b)(6) motions filed by individual defendants and small subsets of defendants fare no better. The corporate defendants argue in their motion that all of the claims against them must fail because "the exact role of Lake Ridge, Orchard, and ADR in the overall scheme is entirely unclear," and because plaintiffs "do not list a single fact demonstrating that any money was <u>actually</u> <u>transferred to or received by the corporate defendants</u>." (Original emphasis)  Defendants Lewicki and Richard insist in their separate motions that plaintiffs allege "very little actual wrongdoing" by them, and fail to allege that

---

[8]  In paragraph 60, plaintiffs allege that in a transaction Adam effected on behalf of KBP-1, KBP realized a gain of approximately $18,000,000, which Adam failed to distribute to KBP's shareholders commensurate with their respective ownership interests.    Paragraph 60 alleges that although plaintiff Domanus was entitled to a dividend of $1,428,000 based on his undiluted interest in KBP, and plaintiff Kozlowski was entitled to a dividend of $3,462,000 based on his undiluted interest, Adam caused KBP to pay only $571,000 to Domanus (the amount referenced in paragraph 91(c)) and nothing to Kozlowski, while Adam kept the remainder--which far exceeded his proportionate share--for himself.

either had "any fraudulent intent." And defendants Szubert-Lewicki and Sanecka-Swiech argue that the claims against them fail because a portion of the factual allegations relating to them are made on information and belief. None of these arguments has merit:

### The Corporate Entities

The role of the corporate entities is explicit and unambiguous in the complaint: Paragraph 63 alleges that the corporations used funds misappropriated from KBP to invest in businesses and properties in metropolitan Chicago. And because these companies were allegedly controlled by the individuals responsible for the misappropriation, it is reasonable to infer that the corporations knew (through their principals) that the funds were acquired unlawfully, and thus that their participation in the scheme was knowing. As to the corporations' second argument, plaintiffs need not plead evidence (i.e., proof that funds were actually transferred as alleged). Because the allegations that the corporate entities received and used misappropriated funds are plausible in the context of the complaint as a whole, they are sufficient to support plaintiffs' claims against them.

## Lewicki and Richard

The arguments raised by defendants Lewicki and Richard are even more difficult to reconcile with the complaint as a whole. The gravamen of plaintiffs' action is that the individual defendants, including Lewicki and Richard, participated in an elaborate web of fraudulent transactions designed to enrich themselves at plaintiffs' expense. Contrary to Lewicki's and Richard's arguments, the complaint is replete with allegations of specific wrongdoing by them, and their fraudulent intent emerges as a compelling inference from these allegations.

## Szubert-Lewicki and Sanecka-Swiech

It is true that certain allegations relating to the alleged roles of Szubert-Lewicki and Sanecka-Swiech are made on information and belief (for example, the allegation that a company of which Szubert-Lewicki was president had no qualifications to perform, and did not, in fact, perform, services for which it invoiced and was paid by KBP). Nevertheless, I agree with plaintiffs that facts supporting these allegations are within these defendants' knowledge and are inaccessible to plaintiffs, and that the complaint sufficiently sets forth the basis for plaintiffs' belief in the allegations made on information and belief.

To the extent any of these defendants raises additional arguments for dismissal under Rule 12(b)(6), none merits individual attention. All pending motions for dismissal under Rule 12(b)(6) are denied.

## Adam Swiech's 12(b)(2) motion

Adam moves for dismissal of all claims against him for want of personal jurisdiction. Although it is plaintiffs' burden to establish personal jurisdiction, where jurisdiction is contested in a motion to dismiss, plaintiffs need only make a *prima facie* showing of jurisdictional facts. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Accordingly, I accept as true all well-pleaded facts and resolve any factual disputes in plaintiffs' favor. *Id*. Under this standard, I easily conclude that plaintiffs have satisfied their burden.

In a federal question case such as this, jurisdiction is proper where 1) the defendant is amenable to service of process, and 2) jurisdiction comports with due process. *United States v. de Ortiz*, 910 F.2d 376, 381 (7th Cir. 1990). Where service of process is not specifically authorized by federal statute, as is the case for claims brought under RICO, service is governed by the law of the forum state. *Tamburo*, 601 F.3d at 700. Because the Illinois long-arm statute "permits the exercise of

jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process clause," the "constitutional and statutory inquiries merge." *Tamburo*, 601 F.3d at 700. Accordingly, the "key question is whether the defendants have sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 700-01 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

The scope of personal jurisdiction is determined by the relationship between the cause of action and the defendant's contacts with the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984). A defendant with "continuous and systematic" contacts with a particular forum is subject to general jurisdiction there, which means that any action may be brought against the defendant, regardless of whether the action is related to the defendant's contacts with the forum. *Tamburo*, 601 F.3d at 701 (citing *Helicopteros Nacionales,* 466 U.S. at 416). A defendant whose activities in a particular forum are not so extensive as to warrant the exercise of general jurisdiction may nevertheless be subject to specific jurisdiction there, when: (1) the defendant has purposefully directed his activities at the forum state or purposefully availed

himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo*, 601 F.3d at 702 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)).

Some, but not all, of the facts plaintiffs assert as a basis for personal jurisdiction over Adam are:

- Adam has an Illinois driver's license, which identifies an Illinois address as his residence, and which Adam had to swear under oath that he was a resident of Illinois to obtain;

- Adam (along with his brother, Richard) owned and registered a car at the address listed on his Illinois driver's license;

- Adam has a United States social security number, which he applied for in Illinois;

- Adam has at least one bank account in Illinois;

- Adam has a United States E2 Treaty Investor Visa, issued in May 2008. The website of United States Citizenship and Immigration Services informs applicants that this visa may be issued if "you are coming to the United States solely to direct and develop the operations of an enterprise in which you are invested"[9];

- Adam is a registered officer, director, or agent of several corporate defendants, which are listed as having offices in, and/or are admitted to transact business in, Illinois;

- For the purpose of effectuating plaintiff Domanus's investment in KBP, Adam sent a document to defendant Richard, in Illinois, for delivery to Domanus, also in Illinois, which contained instructions for purchasing

---

[9] Declaration of Thomas Miller (DN 293), Exh. L.

shares of the company.  Although Domanus followed these instructions, Adam did not cause any shares to be registered in Domanus's name;

- Adam personally delivered to Domanus, at Domanus's Illinois residence, a declaration stating that Adam was holding Domanus's shares of KBP stock--the ownership of which is at issue in the current action--in trust. Adam also mailed a similar document to Domanus's home in Illinois;

- Adam personally met with Domanus in Illinois on several occasions, and each time discussed matters relating to KBP that are at issue in this case; and

- Adam regularly communicated with Domanus about matters relating to KBP, its business, and its ownership by telephone and email.  Many of these communications were initiated by Adam and were directed to Domanus at his Illinois home.

The list of Adam's activities in, or purposefully directed to, Illinois goes on.

The essence of Adam's response is "yes, but...."  That is, Adam does not dispute the foregoing facts (though he addresses only a portion of them in his motion and reply), but he tries to explain them away, apparently in the hope that they won't "count" for jurisdictional purposes.  For example, Adam states that his Illinois driver's license, his social security card, and his Illinois bank account "were obtained in preparation for a possible attempt at citizenship," which Adam ultimately declined to pursue. Even setting aside the questionable logic of this reasoning (Adam's argument is undeveloped, but on its face it would

seem to undermine, rather than support, his position, since citizenship might reasonably be considered the zenith of enduring contacts with a forum), Adam cites no authority for excluding any of these facts from my jurisdictional analysis.

Adam's remaining arguments that he lacks "minimum contacts" are flimsier still. His bald assertion that "[t]here are simply no facts alleged which demonstrate that plaintiffs' claims arose from [Adam's] contacts with Illinois or the United States" simply ignores significant portions of the complaint. And his reliance on his purported scant physical presence in the forum (which plaintiffs dispute as a factual matter) finds no support in the law: "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). In short, I conclude that Adam's contacts with this forum, both relating to, and apart from, his KBP business, far surpass the "minimum contacts" necessary to support jurisdiction.

Adam's next argument, that even assuming the "minimum contacts" test is met, jurisdiction would be fundamentally

unfair, is similarly unpersuasive.  The key factors in this portion of the jurisdiction analysis are "(1) the interests of the states involved and (2) the relative convenience of litigating in [this] forum." *Kohler Co. v. Kohler Intern., Ltd.*, 196 F. Supp. 2d 690, 700 (N.D. Ill. 2002) (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 113 (1987); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980)).  Adam addresses the first factor in only the most cursory manner, arguing that because "the central underpinning of this litigation is a Polish corporation transacting no business from inside the United States, this forum has little, if any, interest in resolving the parties' disputes."  Not only does Adam's gloss ignore plaintiffs' significant allegations of wrongdoing by Adam in, and directed to, Illinois, it relies on the faulty legal premise that Illinois has an interest in the dispute only if the "alleged wrongs" occurred here.  Indeed, "[a] State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473 (citations omitted).  This is all the more true where, as here, a forum resident seeks to recover from a defendant who "purposefully direct[ed]" his activities toward the forum. *Id*.

Adam's argument as to "relative convenience" similarly merits little weight. Adam decries the "fundamental unfairness" of allowing plaintiffs to proceed here after having "instigated" criminal proceedings against him in Poland, which proceedings resulted in travel restrictions preventing Adam from travelling to the United States. But even assuming plaintiffs were somehow involved in the Polish prosecutor's decision to pursue criminal proceedings against Adam (plaintiffs deny that they initiated the proceedings, and the evidence to which Adam points is ambiguous, at best), it is far from clear in any event that Adam would be unable to attend a trial in this case.[10] Moreover, there is no merit to Adam's argument that he is unable, in the meantime, to prepare his defense in this case. Adam's statement that he "cannot freely interact or communicate with KBP and its employees" lacks either explanation or evidence.[11] He is presumably free to contact his attorneys,

---

[10] Plaintiffs have introduced evidence that the Polish prosecutor would lift Adam's travel ban so that he could attend the trial. Although Adam disputes this evidence, plaintiffs are entitled to an inference in their favor at this stage.

[11] Adam cites paragraphs 14 and 15 of his Declaration, but these paragraphs simply do not support his statement. They read: "14. As the result of charges pursued by Jan Domanus and Andrew Kozlowski and relating to this litigation, I was previously incarcerated in Poland. I am currently free on bond and living in Poland but am not permitted to travel to (sic) outside Poland and have surrendered my passport to

to participate in discovery, to contact witnesses, and otherwise to prepare his case for trial.

Perhaps above all, Adam cannot be heard to complain about the purported inequity of requiring him to litigate in this forum when undisputed facts show that he has maintained extensive and pervasive contacts with the forum, a number of which have given rise to the claims in this case. Under such circumstances, Adam "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. Because he has not done so, and because, if plaintiffs' allegations are true, "the ultimate unfairness would occur...if after spending more than ten years projecting himself into Illinois to knowingly harm Domanus here, [Adam] could avoid answering for his misconduct in an Illinois forum," I deny his motion.[12]

_____

Polish authorities. 15. I have no information regarding when I will be able to travel outside Poland." July 2010 Declaration of Adam Swiech, DN 246.

[12] I am mindful, as well, that Adam has submitted multiple affidavits in support of 12(b)(2) motions in this case that purport to set forth his contacts with the forum, and that with each new submission, he has acknowledged material contacts that he omitted from previous affidavits. *See* Aff. of May 31, 2009, DN 178-2 (omitting reference, *inter alia*, to Adam's Illinois driver's license, bank account, social security number, and visa); Aff. of July 17, 2009, DN 178-3 (acknowledging driver's license, bank account, and visa, but omitting reference to social security number); Aff. of July (undated), 2010, DN 246 (acknowledging driver's license,

In these related motions, defendants seek a ruling that the nominal defendants have not been properly served and are not subject to personal jurisdiction in this forum, and dismissal of plaintiffs' derivative claims for failure to join the nominal defendants as necessary parties. These motions are without merit.

I resolve the issue of personal jurisdiction in plaintiffs' favor for substantially the reasons set forth in plaintiffs' opposition. To begin with, the KBP entities have at least "minimum contacts" in this forum, including contracts with various forum residents (which, moreover, relate to the scheme alleged in the complaint); the existence of a KBP office in Illinois (identified on the company's website); the fact that Richard and Sanecka-Swiech--both forum residents--are Management Board members and/or officers of the KBP entities, (with Richard allegedly having plenary power to bind the entities); evidence that KBP has solicited investors in the United States, including at least one Illinois-based investor; and evidence that Richard negotiated transactions and signed documents at

bank account, visa, and social security number). Having repeatedly withheld information clearly material to my jurisdictional analysis, Adam is ill-positioned to rely on equitable arguments for relief from an otherwise proper exercise of jurisdiction.

issue in this litigation on behalf of the KBP entities from Illinois. While defendants dispute some of these facts, plaintiffs have made at least a prima facie showing that KBP and its wholly-owned subsidiaries have been "doing business" in Illinois. This is sufficient for personal jurisdiction. *Kohler Co. v. Kohler Intern., Ltd*., 196 F. Supp. 2d 690, 693 (N.D. Ill. 2002) (personal jurisdiction proper under "doing business" test if defendant "has some reasonable subset of, e.g., an office, mailing address, telephone number, agents, or employees in Illinois.")

The authorities on which the KBP entities rely are not to the contrary. In *Riemer v. KSL Recreation Corp.*, 807 N.E. 2d 1004 (Ill. App. Ct. 2004), the issue was whether a foreign corporate parent (actually, a corporate *grand*parent) could be deemed to be "doing business" in Illinois based on "sales activities of a subsidiary to a subsidiary." *Id*. at 1006-1007. The *Riemer* court noted that not only was the corporate sub-subsidiary alleged to have caused the plaintiff's injury not "owned, operated, or managed by the defendant corporation," but the defendant had "no offices, mailing address, telephone number, or employees in Illinois." *Id*. at 1007. Because this factual scenario is vastly different from the one here, and because, as *Reimer* itself held, "each case turns on its unique facts," *id*. at

1012, the KBP entities' reliance on *Reimer* is misplaced. *Kadala v. Cunard Lines, Ltd.,* 589 N.E. 2d 802 (Ill. App. Ct. 1992) (no jurisdiction over defendant with no offices, telephone number, agents, employees, officers or directors in Illinois); and *Mellon First United Leasing v. Hansen*, 705 N.E. 2d 121 (Ill. App. Ct. 1998) (no jurisdiction over defendant whose only connection with Illinois was forwarding documents through a non-resident vendor for approval in Illinois, and making payments to an Illinois office), are likewise factually distinguishable and inapposite for at least that reason.[13]

Jurisdiction over these entities also comports with fair play and substantial justice. As nominal defendants,

---

[13] The KBP entities' citation to *Palen v. Daewoo Motor Company*, 358 Ill. App. 3d 649, 659, 832 N.E. 2d 173 (Ill. App. Ct. 2005), for the proposition that "the contacts under review must be directed *into* the forum state (rather than out of it)" (movants' emphasis), is unpersuasive. First, the cited portion of the case does not support the proposition for which it is invoked, and second, the case is generally distinguishable on its facts. The KBP entities also cite *United Phosphorus, Ltd. v. Angus Chemical*, 43 F. Supp. 2d 904 (N.D. Ill. 1999), for the proposition that defendants must be doing business in the forum at the time the complaint is filed. This proposition is unobjectionable on its face. But defendants' argument that some of the events at issue occurred too early (KBP's contracts with Polcon Construction; KBP-1's contract with K. Schubert & Associates; and Domanus's loans to KBP) while others occurred too late (Richard's and Sanecka-Swiech's appointment as officers) suggests that these entities' contacts with Illinois have been ongoing over a span of many years, reinforcing that jurisdiction is appropriate.

they will not face either the expense or the inconvenience of active litigants, and, as plaintiffs underscore, any judgment in plaintiffs' favor stands only to put money into their coffers. Even assuming I consider the KBP entities' asserted "good reasons" to oppose jurisdiction,[14] these defendants do not cite a single case in which jurisdiction over a derivative defendant that has minimum contacts in a forum, and that would benefit from a judgment for plaintiffs, was denied based on any of these reasons. In fact, they cite no cases in which such a defendant has challenged personal jurisdiction.[15]

Finally, I am persuaded that the KBP entities have been properly served. Plaintiffs have made a prima facie showing of facts to support their argument that Richard is a "managing or general agent" of KBP and its subsidiaries. For example, they point to the KBP entities' interrogatory responses, which name Richard as KBP's "Second Vice

---

[14] These "good reasons" are raised in the affidavit of Dariusz Bureck, filed in conjunction with the KBP entities' reply in support of their motion. Plaintiffs raise colorable arguments for striking this affidavit, but I need not resolve the issue of its admissibility, since I conclude that jurisdiction over the entities is appropriate in any event.

[15] To be fair, plaintiffs also have not cited any cases involving jurisdictional challenges by derivative defendants. The apparent absence of authority on this issue, however, tends to support plaintiffs' position that such defendants typically have little interest in opposing jurisdiction.

President," and to evidence of Richard's *de facto* control over the KBP subsidiaries. Although the KBP entities purport to dispute that Richard exercises any actual control over these entities, I must resolve this factual dispute in plaintiffs' favor at this stage. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (where personal jurisdiction challenged in motion to dismiss, plaintiff must make only a prima facie showing of jurisdictional facts, and factual disputes are resolved in plaintiffs favor). Assuming, then, that Richard controls the KBP entities, service on him is effective as to all of the entities under Fed. R. Civ. P. 4(h), unless they can establish by "conclusive evidence" that service was improper. *Bober v. Kovitz*, 03 C 9393, 2005 WL 2271861 at *4 (N.D. Ill. Sept. 14, 2005) (Guzman, J.) (where agency of person named on return of service is disputed, defendant bears burden to establish that person served was not a proper person) (citing *Millard v. Castle Baking Co.*, 23 Ill.App.2d 51, 161 N.E.2d 483, 484 (Ill. 1959)). Defendants' reliance on the affidavits of KBP's nominal president, Dariusz Burek, is insufficient to meet this burden. At this stage, it appears that the KBP subsidiaries are essentially shell corporations[16] whose

---

[16] The KBP entities dispute the characterization of the KBP subsidiaries as "shell" corporations, arguing that while

24

management is integrated with the management of their corporate parent. Accordingly, I conclude that all of the KBP entities have been properly served and are parties to this action.[17] The motion to quash and the motion to dismiss for failure to join necessary parties are both denied.

<em>Forum non conveniens</em>

As noted above, I previously denied a motion to dismiss this case based on *forum non conveniens.* Having subsequently allowed the parties to conduct discovery, however, I now revisit the issue. I again conclude that dismissal on this ground is unwarranted.

"The common law doctrine of *forum non conveniens* allows a federal district court to dismiss a suit over which it would normally have jurisdiction in order to best serve the convenience of the parties and the ends of justice." *Stroitelstvo Bulgaria Ltd. v. Bulgarian-American Enterprise Fund*, 589 F.3d 417, 421 (7th Cir. 2009). To prevail on

---

shell companies have no assets, plaintiffs themselves claim that the KBP subsidiaries own certain assets. The salient point, however, is the lack of any meaningful separation between the management of the parent and the management of the subsidiaries. Regardless of which entity owns which assets, plaintiffs have made a prima facie showing that the subsidiary companies are entities through which KBP conducts its own business.

[17] Although unnecessary in light of my conclusion that service on Richard was effective, completed service under the Hague Convention on four of the entities (KBP-5, KBP-7, KBP-8, and KBP-11), moots the issue entirely as to these defendants.

their motion, defendants must show that an available alternative forum exists for plaintiffs' claims, and that "trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Co.*, 549 U.S. 422, 429 (2007) (alterations omitted) (quotation omitted). Defendants' burden is particularly weighty where, as here, the plaintiffs' home forum has been chosen.[18] *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.,* 549 U.S. 422, 430 (2007).

My inquiry proceeds in two steps. First, I must determine whether an "adequate alternative" forum exists. If I conclude that one does, I then proceed to weigh private

---

[18] As a court in this district has recently noted, "'home' is generally taken to mean home country." *Wendt v. Offshore Trust Service, Inc.*, No 08 C 3612, 2010 WL 1849426 at *6 (N.D. Ill. May 7, 2010) (Cole, MJ) (citing *Abad v. Bayer Corp.*, 563 F.3d 663, 666-667 (7th Cir.2009) ("One can find strong language about the plaintiff's right to his chosen forum in many judicial opinions ... but they usually are referring to an American plaintiff wanting to litigate in an American rather than foreign court ....")). Because both plaintiffs are United States citizens, and because there is no question that at least plaintiff Domanus is also a United States resident, I conclude that this forum is properly considered their "home" forum, and the presumption in their favor applies.

and public interest factors to determine whether the action should be dismissed. *Id.* at 802-03.

An alternative forum is "available" if all parties are amenable to process and are within the forum's jurisdiction. *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 803 (7th Cir. 1997). Defendants meet a critical stumbling block on this issue. Defendants concede that Richard, Sanecka-Swiech, and Szubert-Lewicki are United States citizens and residents over whom Polish courts lack jurisdiction. Although they attempt to solve this problem having these defendants "consent" to the jurisdiction of Polish courts through declarations filed in this case, these purported consents are insufficient to carry defendants' burden of proving that Polish courts are "available" to hear this dispute.

First, plaintiffs have filed uncontroverted evidence that Polish courts do not consider such voluntary consents effective unless they are filed with a Polish court. Pl. Opp., Exh. A, Decl. of Tomasz Kaplinski at ¶ 6.[19] *See also Wendt v. Offshore Trust Service, Inc.*, No. 08 C 3612, 2010 WL 1849426 at *8 (N.D. Ill. May 7, 2010) (Cole, MJ) (disregarding defendant's purported consent to jurisdiction of foreign court, noting that "[n]ormally, expert testimony about the laws in the foreign jurisdiction is required" to

---

[19] DN 314

establish that consent would be binding). Moreover, Richard's expression of consent merits a fair dose of skepticism, since it is undisputed that he is currently the subject of an arrest warrant in Poland, and he would presumably be taken into custody were he to appear in that jurisdiction.

Second, plaintiffs have also submitted uncontroverted evidence that Polish law precludes jurisdiction over the corporate defendants who are domiciled in the United States and are alleged to have committed wrongful acts here. Pl.'s Opp., Exh. A at ¶ 5. None of these defendants even purports to consent to the jurisdiction of Polish courts, and defendants are conspicuously silent on this issue.

Under these circumstances, I conclude that defendants have failed to demonstrate that Polish courts are an "available" alternative forum. *See Kamel*, 108 F.3d at 803 (forum is available if "all parties" are amenable to process and are within the forum's jurisdiction); *Concesionaria DHM, S.A. v. International Finance*, 307 F. Supp. 2d 553, 563 (S.D.N.Y. 2004) (*forum non conveniens* motion cannot be granted "unless *all* defendants are subject to the alternative jurisdiction") (original emphasis). Accordingly, I need not proceed to the remainder of the inquiry. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 265

n. 22 (1981).[20]  Defendants' motion to dismiss based on *forum non conveniens* is denied.

Conclusion

For the foregoing reasons, defendants' various motions to dismiss the complaint and to quash service on the KBP entities are denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: March 14, 2011

---

[20] Nevertheless, I note for the sake of completeness that I have considered the remaining factors and conclude that the weight of them also favors plaintiffs.