**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JAN DOMANUS and ANDREW KOZLOWSKI, both Individually and Derivatively on behalf of KRAKOW BUSINESS PARK SP. Z O.O., KBP-1 SP. Z O.O., KBP-2 SP. Z O.O., KBP-3 SP. Z O.O., KBP-5 SP. Z O.O., KBP-6 SP. Z O.O., KBP-7 SP. Z O.O., KBP-8 SP. Z O.O., KBP-11 SP. Z O.O.,** | ) ) ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No. 08 CV 4922** |
| **v.** | ) ) | **Judge Elaine Bucklo** |
| **DEREK LEWICKI; KATARZYNA SZUBERT-LEWICKI; RICHARD SWIECH; BOZENA SANECKA-SWIECH; ADAM SWIECH; SPECTRUM COMPANY, LTD.; ORCHARD MEADOWS HOMES, INC.; ORCHARD MEADOWS HOMES, LLC; ORCHARD MEADOWS, LLC; LAKE RIDGE TOWNHOMES CORP.; LAKE RIDGE, LLC; POLCON CONSTRUCTION CORP.; PROTORIUS, LTD.; SAXELBY ENTERPRISES, LTD.; and ADR ENTERPRISES, INC.,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **Magistrate Judge Nan R. Nolan** **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISQUALIFY LOCKE LORD, LLP AS COUNSEL FOR DERIVATIVE DEFENDANTS** |
| **Defendants,** | ) ) | |
| **and** | ) ) | |
| **KRAKOW BUSINESS PARK SP. Z O.O., KBP-1 SP. Z O.O, KBP-2 SP. Z O.O, KBP-3 SP. Z O.O, KBP-5 SP. Z O.O, KBP-6 SP. Z O.O, KBP-7 SP. Z O.O, KBP-8 SP. Z O.O, and KBP-11 SP. Z O.O,** | ) ) ) ) ) ) | |
| **Derivative Defendants.** | ) ) | |

Plaintiffs' Motion to Disqualify Locke Lord raises one core question: is Locke Lord violating the Neutrality Rule by taking sides with the Actual Defendants, who are adverse to its clients, the KBP Entities?  Locke Lord's response tries to avoid this question, instead speculating about Plaintiffs' motives in bringing their Motion, and arguing that the Neutrality Rule itself somehow "paralyzes" corporations on whose behalf derivative claims are brought.  As explained below, Plaintiffs' motives are irrelevant, and the Neutrality Rule protects corporations, it does not paralyze them.  Furthermore, Locke Lord's efforts to explain away its improper efforts on behalf of the Actual Defendants are not credible.  Locke Lord must be disqualified.

## I.     Plaintiffs' Motives Are Irrelevant.

Locke Lord spends five pages speculating about Plaintiffs' motives in bringing their motion, and otherwise arguing, based on its newly-proffered cross-claim, that Plaintiffs' efforts to remedy the Actual Defendants' ongoing looting of the KBP Entities are somehow acts of aggression *against* the KBP Entities.  *See* Dkt. 463 at 1-6.  Locke Lord's speculation is groundless[1] and illogical:  Plaintiffs are the rightful majority owners of KBP but presently do not control it; they have every incentive to keep the company healthy because they expect their legal efforts to succeed.  (The Actual Defendants, by contrast, have the opposite incentive:  they stand to lose control of KBP, so they have no reason to refrain from taking assets from the company

---

[1] The bulleted list on pages 4-5 of Locke Lord's brief, and the cross-claim, contain numerous falsehoods and mischaracterizations.  By way of example only: a) Actual Defendants Lewicki and Adam Swiech have indeed been formally charged with serious crimes in Poland, and the prosecutions against them are proceeding apace (*see* Dkt. 333-1 at 7); b) Plaintiffs have not engaged in "forum-shopping"; the instant case was the first civil suit filed anywhere after Plaintiffs learned of the Actual Defendants' misconduct (also, the Court has twice rejected the Actual Defendants' challenge to Plaintiffs' forum choice by denying their *forum non conveniens* motions (*see* Dkt. 368 at 25-29; Dkt. 118 at 4-8)); and c) Izabela Kozlowska's Polish case was not "adjudicated on the merits"; as Plaintiffs explained in opposing the Actual Defendants' second *forum non conveniens* motion, the Polish court dismissed her case on technical grounds without hearing any evidence (*see* Dkt. 309 ¶ 11).

while they still can.)  Locke Lord confuses the interests of KBP's current management with those

of the KBP Entities themselves, the very danger the Neutrality Rule is designed to prevent.  *See,*

*e.g., Baytree Capital Assocs., LLC v. Quan*, No. CV 08-2822 CAS, 2008 U.S. Dist. LEXIS

87872, *27-28 (C.D. Cal. Aug. 18, 2008).

In any event, Locke Lord's speculation has no bearing on the merits of Plaintiffs' Motion

to Disqualify.  As courts have noted: "We do not believe that *a priori assumptions* concerning

the motivations underlying disqualification motions in general justify a more relaxed ethical rule.

Our prior cases disclose that a careful and exacting application of the rules in each case will

separate proper and improper disqualification motions."  *In re American Airlines, Inc.*, 972 F.2d

605, 611 (5th Cir. 1992).  *See also Rubio v. BNSF Railway Co.*, 548 F. Supp. 2d 1220, 1223 (D.

N.M. 2008).  As shown below (and in Plaintiffs' Motion), a "careful and exacting" application of

the Neutrality Rule and the ethical precepts from which it flows mandates Locke Lord's

disqualification here.[2]

## II.    Proper Application of the Neutrality Rule Will Protect the KBP Entities, Not "Paralyze" Them.

Plaintiffs' Motion established that in derivative cases like this – where plaintiff

shareholders allege that officers/directors are defrauding the corporation but do not seek relief

---

[2]In the two cases Locke Lord cites that discuss the motives of the party seeking disqualification, the court had first concluded that the movants failed to identify any actual conflict.  *See Original Appalachian Artworks, Inc. v. May Dep't Stores Co.*, 640 F. Supp. 751, 755 (N.D. Ill. 1986) ("Artworks has identified *no* points of intersection between the former 'representation' and the current dispute") (emphasis in original); *The Vegetable Kingdom, Inc. v. Katzen*, 653 F. Supp. 917, 923 (N.D.N.Y. 1987) ("In the present case, no such conflict is evident.").  Here, by contrast, the conflict between Locke Lord's clients and the Actual Defendants is "inherent" and undeniable.  *Wittenborn v. Pauly*. No. 87 C 5814, 1988 U.S. Dist. LEXIS 2816, *10 (N.D. Ill. Mar. 30, 1988).

against the corporation – "the overwhelming weight of authority supports th[e] rule of corporate neutrality." *Sobba v. Elman*, 462 F. Supp. 2d 944, 947 (E.D. Ark. 2006). Plaintiffs also explained how and why the Neutrality Rule applies:

- The Neutrality Rule rests on the irrefutable legal principle that a derivative defendant corporation is, as a matter of law, adverse to the actual defendants. *Wittenborn*, 1988 U.S. Dist. LEXIS 2816 at *10 ("conflict of interest is inherent").

- Because of this adversity, the corporation must "maintain strict neutrality in the struggle" between the shareholder plaintiffs and actual defendants. *Rowen v. Le Mars Mut. Ins. Co. of Iowa*, 282 N.W.2d 639, 645 (Iowa 1979).

- Because lawyers must exercise "the duty of undivided loyalty" to their clients, *Whiting Corp. v. White Machinery Corp.*, 567 F.2d 713, 716 (7th Cir. 1977), lawyers who violate the Neutrality Rule by siding with the actual defendants are routinely disqualified. *See e.g.*, *Wittenborn*, 1988 U.S. Dist. LEXIS 2816, at *14.

- The Neutrality Rule protects the corporation from being victimized a second time, by ensuring that persons accused of defrauding it cannot use corporate resources to defend themselves. *Sobba*, 462 F. Supp. 2d at 950.

Plaintiffs established that the Neutrality Rule applies here because the KBP Entities are currently controlled by certain of the Actual Defendants – Adam, Richard and Bozena-Sanecka Swiech – as well as by Alicja-Gostek Swiech, Adam Swiech's wife. *See* Dkt. 455 at 2; Dkt. 457-1, Ex. A.

Locke Lord does not even attempt to refute these principles, or the facts regarding KBP's governance. Instead, it offers a policy argument: the Neutrality Rule cannot operate as Plaintiffs posit, because that would "paralyze" the corporation, "block[ing] [it] from taking any actions in the lawsuit and [precluding it] from seeking recourse" for any wrongs committed against it by plaintiff shareholders. Dkt. 463 at 7. Thus, Locke Lord argues, a corporation in a derivative suit, and its counsel, may freely collaborate with and take direction from the actual defendants, and their counsel, so long as that collaboration is aimed at redressing misconduct supposedly committed by the plaintiff shareholders. *Id*. at 6-7.

Locke Lord's fear-mongering about "corporate paralysis" is groundless. As the caselaw makes clear, so long as a corporation remains neutral on plaintiffs' claims against the actual defendants, it may otherwise participate in a derivative case – including by bringing cross-claims against plaintiff shareholders – *provided that the corporation's counsel is hired and directed by corporate representatives who are independent from the actual defendants*. That, of course, is the problem here.

In *Messing v. FDI, Inc.*, 439 F. Supp. 776, 782 (D. N.J. 1977), for example, the court disqualified a corporation's lawyers who were selected by (and represented) actual defendant directors, recognizing those lawyers "may already have been tainted by conflict." The court urged the company to choose new counsel in the same manner it would handle any "issue as to which the existence of interested directors renders the usual corporate decision-making process unavailable," such as by using an "ad hoc committee consisting of the two directors who are not parties to this litigation." *Id.* at 783.

> It is the duty of the directors, in this as in other matters, to act in the corporation's best interest. If they are disqualified from acting on this or on any other matter, then it is for them, in the first instance, to devise a method to accommodate the need to continue the corporate enterprise while refraining from participating in any corporate decision in which they might have a personal interest.

*Id.* at 783-84. The court recognized that new counsel, who are neither selected nor given direction by "interested directors," could then determine whether, and how, the corporation should approach the litigation. *Id.* at 782.

Similarly, in *Patrick v. Alacer Corp.*, 84 Cal. Rptr. 3d 642, 656-67 (Cal. App. 2008), the court found that the corporation could not participate in a derivative suit brought on its behalf if the actual defendants were directing the corporation's lawyers. Noting that a corporation may "appoint a special litigation committee of independent directors to investigate the challenged

4

transaction," the court was unpersuaded by the corporation's professed "worr[y] about a hypothetical situation in which the corporation must 'sit idly by' while a shareholder pursues patently meritless derivative claim." *Id.* at 652, 656. If such "disinterested directors" independently conclude the corporation should "oppose[] the [derivative] action for any legitimate business reason," they may direct independent counsel to act accordingly. *Id.* [3]

As these cases show, the Neutrality Rule does not threaten "corporate paralysis." Corporations must, however, delegate the power to hire and supervise counsel to representatives who are independent of the actual defendants. This ensures that the corporation is not roped into assisting any actual defendants who control it, while allowing the corporation to participate in the case if doing so is genuinely in its interest. The problem here is that the KBP Entities and Locke Lord have chosen not to follow this approach.

Locke Lord's approach – which would allow a corporation's lawyers to collaborate freely with and take direction from the actual defendants – would eviscerate the protections of the Neutrality Rule and undermine its conflict-of-interest prohibitions. Such prohibitions rest on the premise that some parties, such as the corporation and those accused of defrauding it, have irreconcilable interests that no lawyer can realistically balance. *See Baytree*, 2008 U.S. Dist. LEXIS 87872, at *27-28 (to ensure compliance with duty of loyalty, corporation's counsel must have "no prior connection with the [actual] defendants or the corporation"). As the court explained when disqualifying a corporation's counsel in *Cannon v. U.S. Acoustics Corp.*, 398 F. Supp. 209, 215 (N.D. Ill. 1975):

---

[3]In *Rowen*, 230 N.W.2d at 916, the court took an alternative approach that also protected the corporation: disqualifying counsel who was defending the derivative action on behalf of both the actual defendants and the corporation, and remanding to the trial court to appoint "independent counsel" for the corporation.

> The pleadings charge the individual defendants with serious corporate misconduct, and although counsel has in good faith represented there is no present conflict between the two sets of defendants, the subtle influences emanating from the representation of the individual defendants that might lead counsel to reach this position on behalf of the corporations are troubling.

*See also Messing*, 439 F. Supp. at 782 (decision by lawyers with ties to defendants may be "tainted by conflict").[4]

In sum, applying the Neutrality Rule to disqualify Locke Lord will protect the KBP Entities from the Actual Defendants' depredations without creating any risk of corporate "paralysis." Locke Lord's approach, by contrast, would effectively give the Actual Defendants an extra set of lawyers on the KBP Entities' dime and all but eliminate the Neutrality Rule's protections for corporations.

## III. Locke Lord Fails to Escape the Consequences of its Admission That it Is Engaged in a Common Enterprise with the Actual Defendants.

As explained in Plaintiffs' Motion, Locke Lord has refused to provide any documents or information concerning its communications with the Actual Defendants in response to Plaintiffs' discovery requests; instead, it has invoked the "common interest privilege" with the Actual

---

[4]Locke Lord also tries to support its approach to the Neutrality Rule by selectively quoting *Sobba*: "'In some situations, the corporation in whose interest the derivative action is purportedly brought will have interests adverse to those of the nominal plaintiff's bringing the action derivatively, and will of necessity be more than a nominal defendant.'" Dkt. 463 at 6-7 (quoting *Sobba*, 462 F. Supp. 2d at 949). But the very next sentence from *Sobba*, which Locke Lord omits, highlights that this case does not present one of those "situations":

> Such situations would include an action to enjoin the performance of a contract by the corporation, to appoint a receiver, to interfere with a corporate reorganization or to interfere with internal management *where there is no allegation of fraud or bad faith*.

*Sobba*, 462 F. Supp. 2d at 949 (emphasis added). Here, Plaintiffs seek no relief against the KBP Entities and they do allege fraud and bad faith by the people who control those companies. *Sobba* supports Plaintiffs' position, not Locke Lord's.

6

Defendants.  *See* Dkt.457-1, Exs. C at 2; Ex. E at 5-6; Ex. F at 8.  By asserting this privilege, Locke Lord effectively admits it is pursuing "a joint defense effort or strategy," *United States v. Evans*, 113, F.3d 1457, 1467 (7th Cir. 1997), with persons whom the Neutrality Rule precludes Locke Lord from siding with.  *See* Dkt. 455 at 8-9.

Locke Lord now concedes that pursuing a general "common strategy" with the Actual Defendants regarding either Plaintiffs' claims or the Actual Defendants' defenses would violate the Neutrality Rule.  *See* Dkt. 463 at 9 (recognizing Locke Lord cannot be in "a general joint venture with defendants").  Instead, Locke Lord says, it asserted common interest privilege only with respect to the KBP Entities' as-of-yet unasserted cross-claims.  *Id*.  Locke Lord argues its assertion of the common interest privilege is therefore consistent with the Neutrality Rule.  *Id*.

Locke Lord's argument is belied by its discovery responses.  Plaintiffs sought "all documents that relate to any claim(s) or defense(s) asserted by any party in [this] lawsuit" shared between Locke Lord and the Actual Defendants or their lawyers, and Locke Lord responded with a blanket, across-the-board privilege objection, failing to produce any responsive documents or even a privilege log.  *See* Dkt. 457-1, Ex. E at 5-6.  Yet at the time Locke Lord served its responses – December 30, 2011 – the only "claims or defenses" that had been "asserted by any party in [this] lawsuit" were Plaintiffs' claims and Adam Swiech's counterclaim; no cross-claims had been filed.  Thus, Locke Lord could not have been invoking the common interest privilege regarding its cross-claims; they were not even proposed to be "asserted . . . in [this] lawsuit" until two and a half months after Locke Lord served its discovery responses, and were thus not covered by Plaintiffs' requests.

Nor could Locke Lord credibly contend that its communications with the Actual Defendants were limited to the allegations of the incipient cross-claim.  In fact, Locke Lord states

that it conducted an "investigation . . . to learn and understand the underlying facts and fairly and independently represent the interests of the corporation." Dkt. 463 at 8-9. Such an "investigation" necessarily would have included communications with the Actual Defendants about Plaintiffs' claims and the Actual Defendants' defenses, subjects as to which the Actual Defendants and Locke Lord's clients are adverse as a matter of law.

In sum, what matters is the scope of the common interest privilege that Locke Lord actually asserted, not its after-the-fact attempt to re-characterize that assertion.[5] That privilege assertion (along with Locke Lord's other conduct, discussed below and in Plaintiffs' Motion) makes clear that Locke Lord has been in a full-scale "common enterprise" with the Actual Defendants, in violation of the Neutrality Rule.

## IV.   Locke Lord Fails to Excuse Its Advocacy for the Actual Defendants.

As Plaintiffs' Motion explains, Locke Lord has repeatedly advocated for the Actual Defendants. To the extent Locke Lord even tries to explain away its conduct, it fails.

Supporting Lewicki's Concealment of Relevant Bank Records. Plaintiffs' Motion described how at a discovery hearing before Judge Nolan, Locke Lord partner Martin Jaszczuk argued in favor of Actual Defendant Lewicki's refusal to produce relevant bank records, even

---

[5] Locke Lord's newly-articulated common interest privilege is also illogical on its own terms. Locke Lord says the KBP Entities and Actual Defendants "share an interest in Plaintiffs being held accountable for their actions that [supposedly] harmed KBP," (Dkt. 463 at 8), but two Actual Defendants – Derek and Katarzyna Szubert-Lewicki – have no formal relationship with the KBP Entities at all and are thus indifferent to Locke Lord's stated objective. The other Actual Defendants have, at most, only indirect, business interests in this asserted objective, as either KBP shareholders (Adam Swiech) or officers (Richard and Bozena Sanecka-Swiech). *See Grochocinski v. Mayer Brown Rowe & Maw*, 251 F.R.D. 316, 327 (N.D. Ill. 2008) (common interest privilege requires "actual legal interest in [one or more] claims," not "hope [that another party] wins" based on business or financial interests). The real "common interest" Locke Lord has invoked is far more general, and is at direct odds with the Neutrality Rule, namely, defeating Plaintiffs' claims against the Actual Defendants.

though Lewicki had previously concealed bank records that showed him laundering money stolen

from Mr. Jaszczuk's clients, the KBP Entities. *See* Dkt. 455 at 9-11. Essentially admitting that

advocating for Lewicki would run afoul of the Neutrality Rule, Locke Lord now argues that Mr.

Jaszczuk was merely opposing an extension of "the relevant cutoff date for document

production," supposedly for the benefit of the KBP Entities. *See* Dkt. 463 at 10-11.

The October 28, 2011, hearing transcript – a complete copy of which is attached as

Exhibit A – belies that argument. Mr. Jaszczuk never even mentioned the "relevant cutoff date

for document production"; he did nothing but reinforce the argument by Lewicki's lawyer that

bank records of transactions post-dating the Complaint are somehow categorically irrelevant (Ex.

A. at 46-47), an argument Judge Nolan rejected in ordering Lewicki to produce the disputed

records. *See* Dkt. 449 at 9-10. Discovery due dates did arise earlier in the hearing, but only

because *the Actual Defendants wanted to extend them*. *See* Ex. At at 2-7. While Plaintiffs'

counsel objected to this extension, Mr. Jaszczuk was silent. *Id*.

Letter to CMS. As explained in Plaintiffs' Motion, Locke Lord sent a letter to the

Managing Partner of Plaintiff Kozlowski's law firm, CMS Cameron McKenna, stating that

Locke Lord intended to take formal discovery and "adduce evidence at trial" regarding a

transaction to which the KBP Entities were not even parties (the proposed ORCO share sale).

*See* Dkt. 455 at 11-12; Dkt. 457-1, Ex. H. The letter thus shows that Locke Lord is gathering

evidence to benefit the Actual Defendants and intends to defend them at trial.

Locke Lord tries to justify the letter, arguing it was merely a "litigation hold" request,

which an examination of the letter shows that it was not. *See id*. at 3-4 (asking CMS to produce

documents and submit to interviews). Insofar the letter sought evidence from Mr. Kozlowski's

employer, that evidence largely concerned the proposed ORCO transaction, which is relevant

9

only to Plaintiffs' direct claims against the Actual Defendants, not to any issues involving the KBP Entities. Indeed, the letter concedes that Locke Lord was seeking documents about the ORCO transaction in order to contest Plaintiffs' claims: "Given that the [ORCO] Transaction is central to Plaintiffs' allegations, I wish to adduce evidence at the trial of this matter" about the transaction. *Id.* at 2 (emphasis added). The Neutrality Rule, of course, bars Locke Lord from "adducing evidence at trial" regarding "Plaintiffs' allegations." Moreover, Locke Lord never even tries to explain why it sent the letter surreptitiously, without copying Plaintiffs' counsel. Again, Locke Lord's attempt to defend its Neutrality Rule violation is not credible.

<u>Lexis/Nexis Report</u>. Locke Lord admits that it gave its work product – a Lexis/Nexis report concerning Plaintiff Domanus's finances – to "its client's representative." Dkt. 463 at 12. Locke Lord does not deny that Adam Swiech then used this work product – which the KBP Entities paid for – to defend criminal charges against him for defrauding the KBP Entities. Locke Lord's only explanation of these events is an unsupported assertion that "there was nothing improper in the sharing" of the report. *Id*.

This position illustrates the central flaw in Locke Lord's approach to the Neutrality Rule. Evidence submitted with Plaintiffs' Motion establishes, and Locke Lord does not dispute, that Locke Lord's only "client representatives" are the Actual Defendants or their family members, two of whom (Adam and Richard Swiech) are also criminally charged with defrauding Locke Lord's clients. *See* Dkt. 455 at 2; Dkt. 457-1, Ex. A. It as all but inevitable that such "client representatives" would use Locke Lord's work product for their own purposes and adversely to the interests of the KBP Entities in defending the criminal charges that they defrauded KBP. Locke Lord could have avoided this problem had it followed the caselaw cited above and insisted

10

on taking direction from, and reporting to, no one but independent corporate representatives. Because it did not do so, it must be disqualified.

<u>Objections to Plaintiffs' Discovery Requests</u>. Plaintiffs' Motion explained how Locke Lord's sweeping, unsupported objections to Plaintiffs' discovery requests have hindered the search for truth about the Actual Defendants' ongoing conduct with respect to the KBP Entities and thereby evidence violation of the Neutrality Rule. *See* Dkt. 455 at 12-13.[6] Locke Lord ignores this argument "and therefore concede[s] the issue." *Boudreau v. Gentile*, 646 F. Supp. 2d 1016, 1025 (N.D. Ill. 2009) (Bucklo, J.).

## V. Locke Lord Misconstrues the Significance of the Actual Defendants' and KBP Entities' Substitutions of Counsel.

As noted above and in Plaintiffs' Motion, the Neutrality Rule guards against actual defendants shifting the cost of their defense to the corporation. Against that background, Plaintiffs' Motion explained that the Actual Defendants apparently stopped paying their five former lawyers from Gordon & Karr, including members of this court's trial bar, and replaced them with one lawyer who is not a member of the trial bar and, therefore, cannot try this case alone. *See* Dkt. 455 at 3-4. At the same time, the Actual Defendants and/or their family members who control the KBP Entities retained five lawyers from Locke Lord, including trial bar members, who have since actively litigated on their behalf.

---

[6]In contrast, Plaintiffs gave Locke Lord copies of extensive evidence, including nearly 60 gigabytes of information Plaintiffs copied, at great expense to themselves, from the Polish Prosecutor. *See* Dkt. 457-1, Ex. D. Plaintiffs' counsel also met with Locke Lord's lawyers and answered all questions they asked about the case (which were very few). *Id*. Locke Lord's statement that Plaintiffs' counsel "did not provide [Locke Lord] with any underlying factual information" (Dkt. 463 at 9, n. 1) is false.

In response, Locke Lord notes that "having several attorneys on a litigation team does not violate any rule." Dkt. 463 at 10. But the quantity of Locke Lord lawyers, standing alone, is not the problem. Rather, the problem is that all circumstances surrounding the substitutions – particularly the fact that the Actual Defendants' lone, current counsel cannot even try this case – raised suspicions that the substitutions were an effort to shift the cost of the Actual Defendants' defense to the KBP Entities in violation of the Neutrality Rule. Locke Lord's failure to address that point, like its repeated advocacy for the Actual Defendants, validates Plaintiffs' suspicions.

## VI. There is No Plot to Leave the KBP Entities "Defenseless."

Again trying to divert the Court from Locke Lord's ethical violations, Locke Lord argues that the instant motion is part of Plaintiffs' supposed plot to render the KBP Entities "defenseless" so Plaintiffs can then seek a TRO to "prevent KBP from continuing to use its bank accounts to fund its profitable operations." *See* Dkt. 463 at 13.

The only basis Locke Lord offers for that outlandish proposition is a letter from Plaintiffs' counsel to Judge Nolan and her preceding order, both of which mention, in entirely generic terms, the possibility that Plaintiffs might, at some point in this case, need to seek an injunction. *See* Dkt. 464-12 at 4; 464-11. The transcript from a discovery hearing on November 23, 2011 – which Locke Lord tellingly fails to attach – reveals the truth: the only injunction Plaintiffs' counsel has discussed with any specificity was to prevent the Actual Defendants from further diluting Plaintiffs' ownership of KBP, not to stop KBP from paying its bills or otherwise operating. *See* Ex. B at 12-18. And the only reason the injunction issue arose at all was because, as noted above, the Actual Defendants were demanding a lengthy extension of the discovery schedule; in fact, it was *the Actual Defendants' lawyer who first suggested that Plaintiffs seek an*

*injunction* after Plaintiffs' counsel objected that such an extension would prejudice his clients. *Id*. at 13.

By taking direction from, and doing the bidding of, the Actual Defendants and their family members instead of an independent person with only the KBP Entities' interests in mind, it is Locke Lord who has left the KBP Entities without the independent representation to which they are entitled. That is why it must be disqualified.

**VII.    Conclusion**.

For the foregoing reasons, and those stated in Plaintiffs' Motion, Plaintiffs respectfully ask the Court to disqualify Locke Lord as counsel for the KBP Entities.

Respectfully submitted,

**JAN DOMANUS and ANDREW KOZLOWSKI, both Individually and Derivatively on behalf of KRAKOW BUSINESS PARK SP. Z O.O., *et al*.**

Dated:  March 22, 2012

 /s/ Fay Clayton
One of Their Attorneys

Fay Clayton (3122905)
Susan Valentine (6196269)
Robert S. Michaels (6203462)
Robert L. Margolis (6226941)
Laura Kleinman (4892790)
ROBINSON CURLEY & CLAYTON, P.C.
300 South Wacker Drive, Suite 1700
Chicago, Illinois 60606
(312) 663-3100 – Telephone
(312) 663-0303 – Facsimile
fclayton@robinsoncurley.com
svalentine@robinsoncurley.com
rmichaels@robinsoncurley.com
rmargolis@robinsoncurley.com
lkleinman@robinsoncurley.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 22, 2012, I caused copies of the foregoing  **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISQUALIFY LOCKE LORD LLP AS COUNSEL FOR DERIVATIVE DEFENDANTS** to be served by filing the document electronically with the Clerk of the District Court using the CM/ECF system.


   /s/ Fay Clayton_____