# Exhibit B

1

1    TRANSCRIBED FROM DIGITAL RECORDING

2              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS
3                      EASTERN DIVISION

4    JAN DOMANUS, et al.,                )
                                         )
5              Plaintiffs,               )
                                         )
6         vs.                            )   No. 08 C 4922
                                         )
7    DEREK LEWICKI, et al.,              )   Chicago, Illinois
                                         )   November 23, 2011
8              Defendants.               )   10:07 A.M.

9              TRANSCRIPT OF PROCEEDINGS - Status
        BEFORE THE HONORABLE NAN R. NOLAN, Magistrate Judge
10
     APPEARANCES:
11
     For the Plaintiffs:        ROBINSON, CURLEY & CLAYTON, P.C.
12                              300 South Wacker Drive, Suite 1700
                                Chicago, Illinois  60606
13                              BY:  MR. ROBERT SCOTT MICHAELS

14   For the Individual         FUKSA KHORSHID LLC
     Defendants:                70 West Erie, 3rd Floor
15                              Chicago, Illinois  60654
                                BY:  MR. LUCAS M. FUKSA
16
     For the KPB Defendants:    LOCKE LORD LLP
17                              111 South Wacker Drive
                                Chicago, Illinois  60606
18                              BY:  MR. DANIEL I. SCHLESSINGER

19
                     PAMELA S. WARREN, CSR, RPR
20                      Official Court Reporter
                 219 South Dearborn Street, Room 1928
21                     Chicago, Illinois   60604
                          (312) 294-8907
22
     NOTE:  Please notify of correct speaker identification.
23   FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS
     UNINTELLIGIBLE.
24

25

1   first ordered to produce them by August.  I mean, there again,

2   the only thing that I am concerned about here is moving forward

3   in a way that is reasonable but that does not necessarily

4   reward the defendants for the extraordinary delay that they

5   have already caused.  So --

6           MR. FUKSA:  I mean, one of the things I want to bring

7   up too, Judge, is my wife is giving birth to our first in

8   March.  So I definitely have to be around some time around that

9   time.  I am not saying, you know, for months.  But that's one

10  of my concerns.  I would like to do them after that time.

11          THE COURT:  Uh-huh.

12          MR. FUKSA:  And because I don't really want to take

13  any risk, you know, with a baby --

14          THE COURT:  Right.

15          MR. FUKSA:  -- that's born earlier.

16          And I think in that regard, you know, by the time we

17  get through our discovery process, I know I'm -- I'm also

18  positive I'll have additional written discovery to issue,

19  especially with respect to these gentlemen that are

20  (unintelligible) witnesses because I don't see much information

21  that I have received in that regard.

22          So by the time we get through that, and with the --

23  with all the written, including the document production and

24  review of them, maybe that would be a timely manner in which to

25  look at it from that point being after -- some time after

1  March.

2        MR. MICHAELS:  Judge, needless to say that that would

3  be -- we would strenuously object to pushing these into the

4  spring.  This case -- if the discovery cutoff that I know is

5  probably not going to be met now, but was set for April, and

6  this -- allowing the -- postponing any depositions in this case

7  till April would -- you know, would be just an incredible

8  reward to these defendants for grinding this case to a halt.

9        They have had ages to send written discovery.  They

10 sent detailed -- they sent, you know, 60-some interrogatories

11 to us, and I gave to the Court.  We submitted like over 100 of

12 extraordinarily detailed responses to those.  We obtained these

13 documents from the prosecutor's office that I mentioned last

14 time.  My clients have agreed to provide it free of charge to

15 both parties.  They are going to get in next week on a hard

16 drive.  And it is far fewer -- I think it is far fewer pages

17 than I had originally -- I had originally thought.  We have

18 done everything we possibly could to facilitate the progress in

19 this case.

20       And they want to bring it to a halt again while they

21 are pulling out all the stops (unintelligible) to further

22 injure us, further (unintelligible) of (unintelligible) and

23 further deplete the company's assets.  We just could not in any

24 way countenance this postponing the depositions till the

25 spring.

1      MR. FUKSA:  You know, this continued excuse of that

2    they are causing so much harm, if that's how they feel, they

3    could request injunctive relief.  Because, honestly, if what

4    they wanted to do would be to imposed, then their shareholders,

5    the plaintiffs would be in a much, much worse position with

6    respect to the future value of this company.

7      Now I -- furthermore, I only want to be able to get

8    through written discovery.  And I don't know why Mr. Michaels

9    would want to proceed with depositions for -- when I haven't

10   even delivered all the -- our discovery documents.  And I am --

11   and I will continue to get them from my clients.  These are

12   documents that whether they have gotten from Poland.  My

13   client, Mr. Lewicki, again is traveling there.  I believe he is

14   leaving on Monday.  And I only want to have fair disclosure of

15   these documents so that not only they can benefit from it, but

16   we can also.

17     I don't want to later sit -- have an issue stating

18   that, you know, well, these documents we're not going to be

19   able to use at trial because they weren't produced prior to the

20   depositions, therefore, I didn't get a chance to utilize them

21   at that time.

22     MR. MICHAELS:  Judge, a couple of thoughts in response

23   to that.

24     First, if we -- we indeed are going to have to seek

25   injunctive relief.  However, some of the witnesses -- if

1   Mr. Fuksa would stipulate that we could use declarations in the

2   -- instead of deposition testimony in seeking the injunction,

3   then that would be something that we could think about in terms

4   of postponing some of these depositions.

5          The other point here is that I'm not saying, let's

6   depose everybody before the baby is born.  Obviously there is

7   -- there are plenty of witnesses to depose here.  Some of them

8   like the parties, we're going to want to do later.

9          But to say no depositions should go forward

10  until -- until the spring and -- and, oh, by the way, good luck

11  with that injunction when you don't have any evidence because

12  we delayed the depositions.  I mean, we just can't -- can't

13  countenance that state of affairs.

14         MR. FUKSA:  With respect to depositions, if anything,

15  maybe we could have the ones that are here in the United States

16  prior to that time.  Therefore I don't have to worry about, you

17  know -- even if it takes us -- even if we need to do it during

18  March or so, I at least am comfortable that I am here, and we

19  could, for example, do those depositions then.  I really am

20  just concerned about leaving the country.  That's it.  I'm --

21         THE COURT:  Well, you know, I think -- all right.  In

22  a couple -- I'm just going to throw this out here, because you

23  guys are still not talking to each other enough before you

24  come, and then you're bringing up these topics, and I'm saying

25  things off the top of my head.  So let the transcript reflect

1  this is an idea off the top of my head.

2          All right.  In patent cases and copyright cases, what

3  we have been successful in doing, sometimes in lieu of a TRO or

4  an injunction, is to get an agreement between the parties.

5  Okay?  I mean, one of the things your folks -- nobody is going

6  to take their money, I would imagine -- I don't know what

7  Mr. Michaels's injunction would look like, okay, or TRO.

8          But it would probably -- I think what he's concerned

9  about are all the assets are going to be gone, all the money in

10  the bank accounts are going to be gone, and there is going to

11  be -- in the event they get a judgment, there is going to be no

12  way to pay the judgment.

13          If you are going to need an extensive period of time

14  to complete all this, you are not -- you, Mr. Fuksa, are not

15  to, quote unquote, blame at all.  Okay?  I think you have done

16  a really wonderful job since you have been in the case.  But

17  you can look at the docket, what your clients's former lawyers

18  did.  Okay?  And we are not our brother's keeper.  But in a

19  way, you know, between them and these lawyers, there is a mess

20  here.

21          Part of it is Mr. Michaels's personality and just

22  wanting to move along.  Okay.  That's true too.  But there is a

23  concern in a case that involves taking people's money and then

24  they are not getting a full return.  That's all I'm saying is

25  there is a concern that there will be no money at the end.

1  Okay?

2          So I don't know before our next status if you'd want

3  to talk to your clients and say are they willing to some kind

4  of -- you know, I'm not even -- I don't want to even go -- is

5  there some kind of transparency that could go on so the

6  plaintiffs could be assured, you know, withdrawals more than

7  $25,000 -- I don't know.  I -- I'm not the lawyer in the case.

8  Okay?

9          MR. FUKSA:  With respect to this whole -- from day one

10 the concern was, and what continues to be, is Mr. Adam Swiech,

11 for example, he's the one that's been contributing all this

12 capital and continues to contribute it in order for the company

13 to survive.  Their only concern is as a result of that, our

14 shareholders, our clients, are being deluded.

15          You know what, that's how it goes.

16          MR. MICHAELS:  Well --

17          MR. FUKSA:  And if this -- and I'm confident that what

18 will become clear soon enough is that there were -- the many

19 things that are complained of and alleged have not only been

20 agreed upon by Mr. Michaels's clients, but they have been

21 actually created and organized by Mr. Michaels's clients in

22 order to avoid having to contribute capital and therefore

23 bypass having to do that.  So I think there is absolutely zero,

24 zero legitimacy to this.

25          It is not the spending of money, it is more the

1  con- -- the capital contribution of money that would then

2  dilute any shareholder who is not going to contribute capital.

3          MR. MICHAELS:  Sorry.  I very much need to respond to

4  that.

5          The first point is, yes, we are concerned in part

6  about the further contributions of, quote unquote, by Adam

7  Swiech.  The problem is virtually penny of capital that the man

8  has contributed to the company over the years has been stolen

9  from the company.  That's what we allege.  That's what the

10  Polish authorities are prosecuting him for.  And that's what

11  the documents that we have attached, including to your pending

12  motion, clearly show.

13          So our concern is that Mr. Swiech has these loans that

14  he made with money that had been -- you can see it right in the

15  documents we filed.  Money comes out of KBP, and within three

16  days it goes to the, quote unquote, vendor who supposedly con-

17  (unintelligible) did the services.  It goes right back to Adam

18  Swiech's pocket, and he makes the loan to KBP.

19          That loan is outstanding.  We're concerned that it is

20  going to be converted to capital, and he would increase his

21  ownership to the point where he would trigger these squeeze out

22  provisions under Polish law and --

23          THE COURT:  I see.  So --

24          MR. MICHAELS:  -- we --

25          THE COURT:  -- it is different.  Okay.  It is

1   different than what I thought.

2           That's going to be -- that's going to be a very unique

3   kind of injunction then.  Okay.

4           MR. MICHAELS:  (Unintelligible).

5           THE COURT:  That would be a very unique -- to stop him

6   from, I mean, basically making loans.  I mean --

7           MR. MICHAELS:  It would be to restrict his use of the

8   outstanding loans and --

9           THE COURT:  Okay.  All right.

10          MR. MICHAELS:  -- (unintelligible) --

11          THE COURT:  All right.  So I -- so my thought, you

12  know -- I mean, parties have been, you know, a couple of times

13  willing to enter into some kind of injunctive relief in order

14  to avoid a hearing.  And, you know, you very different views.

15  I mean, you have obviously very different views of the case.

16          MR. FUKSA:  Judge --

17          THE COURT:  Mr. Michaels does have the fact that a

18  grand jury investigation in Poland is going on.  He's not just

19  standing here, as many civil plaintiffs's lawyers do, and say,

20  they are crooks, with nothing.  Okay?  I mean, I mean

21  truthfully there is a -- at least convened a grand jury --

22          MR. FUKSA:  And if I represented to your Honor

23  potentially that that was as a result of a conspiracy among an

24  attorney and a prosecutor, I think your Honor would have a

25  completely different view of this.  Okay?