IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAN DOMANUS and ANDREW KOZLOWSKI, both individually and derivatively on behalf of KRAKOW BUSINESS PARK SP.Z O.O.,KRAKOW BUSINESS PARK SP. Z O.O., KBP-1 SP. Z O. O., KBP-2 SP. Z O.O., KBP-3 SP. Z O. O., KBP-5 SP. Z O.O., KBP-6 SP. Z O.O., KBP-7 SP. Z O.O., KBP-8 SP. Z O.O., and KBP-11 SP. Z O. O.<br><br>       Plaintiffs,<br><br>  v.<br><br>DEREK LEWICKI, KATARZYNA SZUBERT-LEWICKI, RICHARD SWIECH, BOZENA SANECKA-SWIECH, ADAM SWIECH, SPECTRUM COMPANY, LTD., ORCHARD MEADOWS HOMES, INC., ORCHARD MEADOWS HOMES, LLC, ORCHARD MEADOWS, LLC, LAKE RIDGE TOWNHOMES CORP., LAKE RIDGE, LLC, POLCON CONSTRUCTION CORP., PROTORIUS, LTD., SAXELBY ENTERPRISES, LTD., and ADR ENTERPRISES, INC.,<br><br>       Defendants,<br><br>and<br><br>KRAKOW BUSINESS PARK SP. Z O.O., KBP-1 SP. Z O. O., KBP-2 SP. Z O.O., KBP-3 SP. Z O. O., KBP-5 SP. Z O.O., KBP-6 SP. Z O.O., KBP-7 SP. Z O.O., KBP-8 SP. Z O.O., and KBP-11 SP. Z O. O.<br>       Derivative Defendants. | No. 08 C 4922 |

1

**MEMORANDUM OPINION AND INJUNCTION**

This action arises out of plaintiffs' allegations of a complex, bicontinental racketeering and fraud scheme spanning over ten years and featuring, at the helm of its operations, defendants Adam Swiech, Derek Lewicki, and Richard Swiech (to whom I refer collectively herein as the "direct defendants," although in reality they are only a subset of the direct defendants named in the case, which also include two of these defendants' wives, and a number of entities the direct defendants control). Plaintiffs claim that this is an ongoing scheme, and that it violates RICO, 18 U.S.C. §§ 1962(a)-(d), as well as Illinois statutory and common law.

Now before me is plaintiffs' motion for a temporary restraining order and preliminary injunction seeking to prevent Adam Swiech from "(i) voting his shares [in derivative defendant Krakow Business Park SP. Z O.O., hereinafter 'KBP'] to approve any issuance of KBP shares that would reduce Plaintiffs' shareholdings below 25%, or (ii) from alienating his current KBP shareholdings." The direct defendants have jointly filed a response opposing the motion, while the derivative defendants (the KBP entities, to which I refer collectively as "KBP" unless otherwise specified) have filed a separate opposition. For the reasons that follow, I grant plaintiffs' motion to the extent discussed below.[1]

---

[1] Plaintiffs state that an order from a Polish court prevents Adam Swiech from alienating his shares. The appropriateness of similar relief in this court was not fleshed out in the parties'

I.

This opinion, necessarily pithy in view of the extremely short window of opportunity to prevent an act plaintiffs characterize as the "culmination" of defendants' scheme, does not purport to set forth an exhaustive account of the factual landscape, nor does it address the totality, or even the bulk, of the evidence plaintiffs have submitted in conjunction with the instant motion. It does, however, acknowledge the significant evidence plaintiffs have proffered in partial support of their RICO and state claims, all of which I determined, for reasons explained in a memorandum opinion and order of March 13, 2011, withstood five separate motions for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). *Domanus v. Lewicki*, 779 F. Supp. 2d 739 (N.D. Ill. 2011). It also addresses the substantial arguments raised in the parties' briefs and at oral argument on April 11, 2012, at which the parties agreed that a full evidentiary hearing on plaintiffs' present motion was unnecessary.

I begin by summarizing, using admittedly broad brush strokes, the allegations in plaintiffs' complaint that are minimally necessary for understanding what is presently at stake.

Plaintiffs are minority shareholders in KBP ("minority" according to the books, that is, since they claim to have been fraudulently deprived of their rightful majority status). As I explained in my March 13, 2011, opinion, their complaint alleges

---

briefing, nor discussed in the arguments on this motion.

3

that the direct defendants engaged in four broad categories of misconduct, which in concert have allowed them effectively to loot KBP of its assets, to misappropriate KBP assets for themselves, and to wrest control and ownership of KBP from plaintiffs. The complaint describes sham contracts and payments for inadequate consideration (Compl. at ¶¶ 36-49); self-dealing leases (¶¶ 50-51); land misappropriation (¶¶ 52-53); and construction kickbacks (¶¶ 54-57), and it sets forth, with respect to each type of alleged wrongdoing, substantial detail. The details include allegations about specific transactions and the basis for plaintiffs' belief that the transactions were fraudulent.

The complaint goes on to explain how the direct defendants allegedly used their ill-gotten gains "to dilute plaintiffs' ownership interest in KBP and otherwise to cause them individual injury." *Domanus*, 779 F. Supp. 2d at 745. Plaintiffs specifically identify nine "supposed 'capital contributions'" Adam Swiech made to KBP between 1998 and 2003, in which Adam acquired 14,702 newly issued KBP shares. Compl. at ¶ 58. The effect of these "capital contributions" (which, plaintiffs explain in the complaint, and again in the instant motion, provided no net benefit to KBP because they were funded either with money siphoned off from KBP, or through Adam's "forgiveness" of non-existent loans to the company) was to increase Adam's stated ownership interest from roughly ten percent in 1997 to approximately seventy-four percent (where it remains

4

today), while proportionately decreasing plaintiffs' cumulative interest to their current twenty-six percent.

Thereafter, Adam caused KBP to execute certain transactions that produced dividends or other benefits of ownership that should have inured to each shareholder proportionally to his or her interest in KBP; but because of the dilution of plaintiffs' ownership interest, coupled with misrepresentations Adam made to the plaintiffs about the transactions (the details of which are set forth in the complaint, but need not be rehearsed here), plaintiffs received only a fraction of the benefits to which they were entitled, or in some cases, none at all. I concluded that the foregoing allegations, taken together, stated viable claims under RICO and Illinois law.

The event that triggered the present motion was plaintiffs' receipt, on April 2, 2012, of notice of a shareholders' meeting to be held on April 16, 2012, for the purpose of authorizing the issuance of 1,200 new shares of KBP for PLN 600,000 (Polish zloty) (roughly US $200,000). Plaintiffs strenuously oppose the issuance of these shares because the resulting further dilution of their ownership interest to less than twenty-five percent will render them unable, under Polish law, to block certain fundamental corporate changes, such as a merger with a third party. There appears to be no dispute that dilution of plaintiffs' interest below twenty-five percent is a certainty should the additional shares issue, unless

5

plaintiffs contribute the requisite capital to maintain their current interest, which they state they do not presently have the financial wherewithal to do. Moreover, if the new shares issue to Adam Swiech, or to an individual or entity he controls (which appears likely, as explained below), Adam will control more than seventy-five percent of KBP, giving him carte blanche to effect fundamental corporate changes, including a merger in which a third party could take over the company.

## II.

"A party seeking to obtain a preliminary injunction must demonstrate: (1) its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted." *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891 (7th Cir. 2001). If these requirements are met, I must "consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied." *Id.* I must also consider the public interest, if any, in granting or denying the motion, then weigh all of the factors together. *Id*. The Seventh Circuit has adopted what it terms a "sliding scale approach," which means that "the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position." *Id*. This analysis (which applies equally to motions for

a temporary restraining order), *Long v. Board of Educ., Dist. 128*, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001), is not "mathematical," but rather "subjective and intuitive." *Ty*, 237 F.3d at 895-96.

Before embarking upon this analysis, however, I turn briefly to a threshold issue raised by the direct defendants, who argue that I "lack the power" under RICO to grant the relief plaintiffs seek. This argument merits only brief attention. To begin with, neither of the RICO cases plaintiffs cite, *Amari v. Burgess*, 07 C 1425, 2008 U.S. Dist LEXIS 6754 at *11 (N.D. Ill. Jan 28, 2008)(Ashman, MJ), and *Jackson v. Rohm & Haas Co.*, No. 05-4988, 2008 U.S. Dist. LEXIS 117403 (E.D. Penn. Dec. 17, 2008), remotely suggests that district courts lack the authority under RICO to grant preliminary injunctive relief. The question in each case was whether the statute authorizes *private plaintiffs* to seek such relief. While it is true that Magistrate Judge Ashman suggested in *Amari* that it does not (and that the *Jackson* court cited this observation), Judge Ashman's citation was to the Seventh Circuit's opinion in *National Organization for Women v. Scheidler*, 267 F.3d 687 (7th Cir. 2001)("NOW"), *rev'd on other grounds*, 537 U.S. 393 (2003), the most salient holding of which was the affirmative conclusion that RICO empowers private plaintiffs to seek injunctive relief, rather than limiting them to suits for money damages. *Id.* at 699 (observing that "the plain text of the statute strongly suggests that private

plaintiffs can seek injunctions"). The *NOW* court was not concerned with the question of preliminary relief at all.

Moreover, I agree with Judge Rakoff's observation in *Motorola Credit Corp. v. Uzan*, 202 F. Supp. 2d 239 (S.D.N.Y. 2002)(granting preliminary injunction under RICO), that "[i]t would be extraordinary indeed if Congress, in enacting a statute that Congress expressly specified was to be 'liberally construed to effectuate its remedial purposes,' Pub.L. NO.91-452, § 904(a), 84 Stat. 947 (1970), intended, without expressly so stating, to deprive the district courts of utilizing this classic remedial power in private civil actions brought under the act." *Id*. at 244. In short, I am satisfied that RICO both authorizes plaintiffs to seek preliminary injunctive relief and authorizes me to grant it.[2]

I now return to the preliminary injunction standard set forth above and apply it to plaintiffs' motion. As to the first element, plaintiffs can show a likelihood of success on the merits by demonstrating a "better than negligible chance" of prevailing on at least one of their claims. *Ty,* 237 F.3d at 897. Plaintiffs submit that "extensive evidence" uncovered to date supports the factual allegations in their complaint, easily surpassing this standard.

---

[2]Moreover, the direct defendants have raised no meaningful argument as to why plaintiffs would not be independently entitled to the interim relief they seek by virtue of their state law claims, on which it appears plaintiffs also have a likelihood of success based on the same evidence they assert in support of their RICO claims. *See Motorola*, 202 F. Supp. 2d at 249.

I agree, and, indeed, conspicuously absent from both the direct and the derivative defendants' opposition briefs is any suggestion to the contrary.[3]

Despite the apparent lack of dispute on this point, for the sake of completeness, I summarize below some of the evidence plaintiffs have identified to substantiate the allegations of misconduct in their complaint. This evidence includes:

- Bank records reflecting payments made between 1998 and 2002 to "TSP," an entity controlled, at least as of March of 2000, by Adam's cousin, Dariusz Swiech. These payments were purportedly for services that defendants have produced no evidence were actually performed by TSP (in fact, the evidence suggests that the services were actually performed by another company, CB Richard Ellis, which was also paid by KBP). Moreover, bank records show that within days of receiving the payments, TSP paid roughly the same amounts to "SARA," a gardening company Adam controlled;

- Land title records showing that Adam in fact paid only PLN 488,800 for three parcels of land he resold to KBP in August of 1998 for PLN 700,800, despite representing to plaintiffs that he sold the land to KBP for the same price he had paid;

- Evidence of payments from KBP to Adam and SARA between 1997 and 2003, for which defendants have produced no evidence that KBP received any consideration, and which are contrary to KBP's financial statements for those years affirmatively stating that no related-party transactions were conducted;

---

[3]To the extent this section of plaintiffs' brief is what the derivative defendants dismiss as "straw man arguments," their cavalier remark does not conceal the fact that they offer no response whatsoever to plaintiffs' well-substantiated position on an essential component of their claim for injunctive relief. The direct defendants' assertion that plaintiffs' likelihood of success on the merits is "irrelevant" is similarly futile.

- Evidence that in May of 2003, Adam received KBP stock in exchange for the forgiveness of a "loan" he allegedly made to KBP in the form of payments to Polcon Construction Corp. (an entity controlled by Lewicki and Richard Swiech) for services purportedly rendered to KBP. Defendants have produced no evidence either that Polcon provided any services to KBP, or that Adam made any payments to Polcon at all.

- Loan agreements, land appraisals, and land transfer agreements collectively showing that the direct defendants used SMAL (which was then majority-owned by Lewicki) to misappropriate land from KBP and four of its subsidiaries.

- Evidence suggesting that Adam misappropriated a portion of plaintiff Domanus's shares by failing to register the shares in the KBP shareholder registry, then later claiming that Domanus surrendered the shares by failing to pay a "loan" that never existed. This evidence includes: bank records reflecting Domanus's purchase; declarations signed by Adam in 2000 and 2001 stating that the shares had to be temporarily registered to Swiech for technical reasons, but were being held for Domanus as beneficial owner; Domanus's declaration that Adam repeatedly promised to sign the shares over on request, and that Domanus never took a loan secured by the shares; and the putative loan agreement, which bears indicia of forgery.

- Evidence that Richard Swiech and Bozena Sanecka-Swiech (Richard's wife), both of whom sit on the management boards of KBP or its subsidiaries, receive payment for work they do not perform.

The foregoing is more than sufficient to satisfy plaintiffs' burden to show a "better than negligible" chance of prevailing on their claims at trial.

Where the parties' dispute heats up is on the issue of whether plaintiffs lack an adequate remedy at law and thus will suffer

irreparable harm in the absence of the requested relief.[4] Plaintiffs open their argument on this point with the proposition that the dilution of a party's stake in a business itself may represent irreparable harm, citing *USCIC of N.C. v. Ramcell, Inc.*, 07 C 5746, 2007 U.S. Dist. LEXIS 82168, at *15 (N.D. Ill. Nov. 6, 2007)(Bucklo, J.). Indeed, I expressly recognized that principle in *Ramcell*, as have other courts. *See, e.g., International Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.*, 441 F. Supp. 2d 552, 563 (S.D.N.Y. 2006); *Suchodolski Associates, Inc. v. Cardell Financial Corp.*, 03 C 4148, 2003 U.S. Dist. LEXIS 24933, at *12-13 (S.D.N.Y. Dec. 10, 2003). Several courts have also noted that the deprivation of corporate rights that diminishes a shareholder's control over the corporation is likewise irreparable. *See, e.g., Ramcell*, 2007 U.S. Dist. LEXIS 82168, at *15; *International Equity Investments*, 441 F. Supp. 2d at 563-64; *Bancorpsouth Bank v. Hall*, No. 6:10-cv-03390-DGK, 2011 U.S. Dist. LEXIS 12012, at *16 (W.D. Mo. Feb. 7, 2011). These propositions and the foregoing citations

---

[4]The parties do not address the second element of the analysis--whether an adequate remedy at law exists--separately from the third element of irreparable harm. Indeed, the distinction between the two is not immediately obvious, although the Seventh Circuit summarized the difference in *Roland Mach. Co. v. Dresser Industries*, Inc., 749 F.2d 380, 386 (7th Cir. 1984)("The absence of an adequate remedy at law is a precondition to any form of equitable relief. The requirement of irreparable harm is needed to take care of the case where although the ultimate relief that the plaintiff is seeking is equitable, implying that he has no adequate remedy at law, he can easily wait till the end of trial to get that relief."). In any event, the two elements are often analyzed together, as I do here.

11

(among others) are at the fore of plaintiffs' argument on irreparable harm. Accordingly, defendants' attempt at oral argument to portray plaintiffs' reliance on these established principles as some sort of newly hatched idea, drummed up in response to defendants' opposition, is as disingenuous as it is ineffectual. For all of defendants' own emphasis on this element of the analysis (the first statement of several to appear in bold and underlined typeface in the derivative defendants' opposition brief is: "Plaintiffs can show no irreparable harm"), they fail to articulate any meaningful basis on which to distinguish plaintiffs' pertinent and persuasive authority.

Indeed, defendants ignore these cases entirely,[5] and instead premise their arguments on the demonstrably false assertion that the only irreparable harm plaintiffs identify is a potential merger between KBP and SMAL. To be sure, plaintiffs emphasize the separate and additional irreparable harm they would suffer in the event of a merger between KBP and SMAL, after which SMAL could become the majority shareholder of the merged entity. That scenario, plaintiffs explain, "would enable the culmination of Defendants' fraud: permanently depriving Plaintiffs of any opportunity to reclaim their rightful majority ownership of KBP." Pl.'s Mot. at 14. But this eventuality merely illustrates the

---

[5]The direct defendants half-heartedly attempt to distinguish *Ramcell* on its facts, but they do not explain why the factual distinctions they note compel a different result in this case.

significance of plaintiffs' ability to maintain sufficient control over KBP to block such a merger.

As for the specific merger between KBP and SMAL, defendants' insistence that it is nothing but a "dreamt-up notion" that is "not even on the horizon," Dir. Def.'s Opp. at 7; Deriv. Def.'s Opp. at 12, is belied by plaintiffs' evidence that less than six months ago, at a shareholders' meeting on October 28, 2011, Adam voted to approve a capital increase that would have issued 1,200 shares to SMAL 03 sp. z.o.o. ("SMAL"), a non-party Polish corporation that is majority-owned by Adam's daughter.[6] While it is true that making SMAL a minority shareholder of KBP does not affirmatively establish Adam's intent to effectuate an immediate merger of the two companies, it certainly removes the scenario from the realm of the wholly speculative.[7]

Having denied that plaintiffs stand to suffer any harm at all in the absence of an injunction, defendants essentially skip over the balance-of-the-harms portion of the preliminary injunction

---

[6]Plaintiffs successfully challenged the share issuance on technical grounds in the Krakow Court; but the parties do not appear to dispute that the technical defect has been resolved, and neither side has suggested that the share issuance now under scrutiny would violate Polish law.

[7]Plaintiffs also point out the ease with which SMAL could become a majority shareholder in an entity resulting from a merger between SMAL and KBP, citing evidence that SMAL owns $12 million worth of land rightfully belonging to KBP, "which could readily be converted to stock in such a merged entity." Pl.'s Mot. at 14.

13

analysis, except to claim, without any factual support, that KBP's day-to-day operations will be critically impaired (even, the derivative defendants suggest, to the extent the company's very existence may be threatened) without the proposed capital injection. But even assuming there is a factual basis for defendants' claim of KBP's need for immediate capital to conduct its ongoing business, the injunction plaintiffs seek would not, contrary to defendants' suggestion, prohibit KBP generally from raising the funds it needs. The plaintiffs' proposed injunction simply forecloses one discrete avenue for doing so: through a capital call that will inevitably result in a critical dilution of plaintiffs' interest in the company, and that appears, based on all of the available evidence, specifically designed to effectuate just this result in accordance with defendants' ongoing scheme. Accordingly, defendants' concerns about the purported overbreadth of the injunction are unwarranted.

For the same reason, defendants' invocation of the business judgment rule is unavailing. Contrary to defendants' suggestion, plaintiffs do not ask me to substitute my judgment for that of the KBP management board to decide "whether, when and how to raise capital to fund operations." Deriv. Def.'s Opp. at 7. There is no question that such questions generally must be left to corporate management. But plaintiffs do not ask me to pronounce upon "whether" or "when" KBP can or should raise capital, and, to the extent they seek to restrict "how" KBP may do so, the evidence they

14

present provides an ample basis, under the governing legal standard, for doing so. In any event, "the presumption that normally shields defendants for their business decisions does not apply if the plaintiff presents evidence of fraud, bad faith, or self-dealing." *Georgeson v. DuPage Surgical Consultants, LTD.*, No. 05 C 1653, 2007 WL 914219, at *5 (N.D. Ill. Mar. 22, 2007) (Manning, J.) (citing cases). As set forth above, plaintiffs have presented substantial evidence of all three.

Because I conclude that plaintiffs have met the first three requirements for a preliminary injunction, and that the balance of harms weighs in their favor, the remainder of the analysis falls quickly into place. As plaintiffs note, the public has both an interest in preventing fraud and an interest in enforcing RICO. *See Hollinger Int'l, Inc. v. Hollinger*, No. 04 C 698, 2008 WL 161683, at *4 (N.D. Ill. Jan. 16, 2008) (Valdez, MJ); *Allstate Ins. Co. v. St. Anthony's Spine & Joint Inst.*, P.C., 691 F. Supp. 2d 772, 788 (N.D. Ill. 2010)(one of the aims of RICO is to "protect the public from those who would run organizations in a manner detrimental to the public interest") (quoting *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 165 (2001)). Meanwhile, defendants do not assert any public interest in denying relief, and none is apparent.

Having weighed all of the foregoing factors together, I conclude that plaintiffs are entitled to the TRO and preliminary injunction they seek.

III.

For the foregoing reasons, plaintiffs' motion for a temporary restraining order and preliminary injunction is granted. Defendant Adam Swiech is enjoined from voting his shares to approve any issuance of KBP shares that would reduce plaintiffs' shareholdings below twenty-five percent. Within seven days, plaintiffs shall post a bond in the amount of $400,000.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: April 13, 2012