```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION


JAN DOMANUS and ANDREW KOZLOWSKI,      )
both individually and derivatively     )
on behalf of KRAKOW BUSINESS PARK      )
SP.Z O.O.,KRAKOW BUSINESS PARK SP.     )
Z O.O., KBP-1 SP. Z O. O., KBP-2 SP.   )   No. 08 C 4922
Z O.O., KBP-3 SP. Z O. O., KBP-5 SP.   )
Z O.O., KBP-6 SP. Z O.O., KBP-7 SP.    )
Z O.O., KBP-8 SP. Z O.O., and KBP-11   )
SP. Z O. O.                            )
                                       )
            Plaintiffs,                )
                                       )
     v.                                )
                                       )
DEREK LEWICKI, KATARZYNA SZUBERT-      )
LEWICKI, RICHARD SWIECH, BOZENA        )
SANECKA-SWIECH, ADAM SWIECH,           )
SPECTRUM COMPANY, LTD., ORCHARD        )
MEADOWS HOMES, INC., ORCHARD MEADOWS   )
HOMES, LLC, ORCHARD MEADOWS, LLC,      )
LAKE RIDGE TOWNHOMES CORP., LAKE       )
RIDGE, LLC, POLCON CONSTRUCTION        )
CORP., PROTORIUS, LTD., SAXELBY        )
ENTERPRISES, LTD., and ADR             )
ENTERPRISES, INC.,                     )
                                       )
            Defendants,                )
                                       )
and                                    )
                                       )
KRAKOW BUSINESS PARK SP. Z O.O.,       )
KBP-1 SP. Z O. O., KBP-2 SP. Z O.O.,   )
KBP-3 SP. Z O. O., KBP-5 SP. Z O.O.,   )
KBP-6 SP. Z O.O., KBP-7 SP. Z O.O.,    )
KBP-8 SP. Z O.O., and KBP-11 SP.       )
Z O. O.                                )
            Derivative Defendants.     )
                                       )
```

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Jan Domanus and Andrew Kozlowski are shareholders of a Polish corporation, Krakow Business Park SP. Z O.O. ("KBP"), who allege that certain Defendants looted the company and improperly wrested it from Plaintiffs' control. Plaintiffs have named the corporation and its wholly owned subsidiaries (the "KBP entities") as derivative defendants in this action. As explained in my previous rulings in this case, Plaintiffs allege a complex and on-going racketeering and fraud scheme that has spanned more than 10 years.

Plaintiffs seek to disqualify counsel for the KBP entities, arguing that they have violated the rule of corporate neutrality by siding with the direct defendants in this litigation. Counsel for the KBP entities assert that they are appropriately trying to protect the interests of the corporations, and seek leave to file a cross-claim against Plaintiffs. For the reasons stated, I grant the motion to disqualify counsel and deny the KBP entities' motion to file a cross-claim.

I.

The facts underlying Plaintiffs' complaint have been laid out in an opinion denying Defendants' motion to dismiss. *See Domanus v. Lewicki*, 779 F. Supp. 2d 739 (N.D. Ill. 2011). However, an overview of the complaint and the procedural posture of this case

2

is necessary to place the present motions in context. In their Third Amended Complaint("Complaint"), Plaintiffs contend that the direct defendants, led by Derek Lewicki, Richard Swiech and his brother, Adam Swiech, have worked together and with corporations under their control to loot the KBP entities of their assets. They allege the direct defendants used the funds to finance real estate developments in suburban Chicago. Defendants, according to the Complaint, also put stolen funds back into the companies as "capital contributions" by Adam Swiech, who then claimed to be the majority shareholder of KBP. These sham contributions diluted the shareholdings of Domanus and Kozlowski, who contend that they are the rightful majority shareholders of KBP, although they appear on the books as minority shareholders. The complaint outlines four types of misconduct: (1) sham contracts and payments for inadequate consideration; (2) self-dealing leases; (3) land misappropriation; and (4) construction kickbacks.

As part of their suit, Plaintiffs have brought derivative claims on behalf of the KBP entities, but seek no relief from these entities. The KBP entities sought to dismiss the Third Amended Complaint on grounds of improper service and a lack of personal jurisdiction, but I denied that motion. *See Domanus*, 779 F. Supp. 2d at 750-52. Following the denial of that motion, counsel for the KBP entities was given leave to withdraw from the case, and

3

attorneys from Locke Lord LLP were given leave to substitute as counsel.[1]

On Feb. 8, 2012, Plaintiffs filed a motion to disqualify Locke Lord in which it argued that the KBP entities had violated the corporate neutrality rule by siding with the direct defendants on the merits of the claims. On March 8, 2012, while briefing on that motion was pending, the KBP entities filed a motion for leave to file a cross-claim against Plaintiffs, arguing in essence that the actions taken by Plaintiffs in this litigation threatened to harm the derivative defendants.

In April, I granted Plaintiffs' motion for a preliminary injunction preventing Defendant Adam Swiech from voting his shares to approve any issuance of shares that would reduce Plaintiffs' shareholdings below 25 percent. *See Domanus v. Lewicki*, --- F. Supp. 2d ---, 2012 WL 1247102 (N.D. Ill. April 13, 2012). In so ruling, I noted that Plaintiffs had identified extensive evidence supporting their claims of misconduct by the direct defendants. *Id.* at *3–*4. The KBP entities opposed the preliminary injunction, arguing it would block the KBP entities from raising funds for their operations. As I explained in my ruling, however, the

---

[1] Locke Lord apparently represents Krakow Business Park ZO.O ("KBP"), KBP-2 SP ZO.O., KBP-3 SP. ZO.O., KBP-5 SP. ZO.O., KBP-6 SP. ZO.O., KBP-7 SP. ZO.O., KBP-8 SP. ZO.O., and KBP-11 SP. ZO.O. This list includes some, but not all, of the KBP entities named in the complaint. The present motion does not address the status of the remaining named KBP entity, KBP-1 SP. Z O.O.

4

injunction simply blocked the KBP entities from raising funds through "one discrete avenue," a capital call that would so dilute Plaintiffs' interest in the entities that they would be unable to block a future merger. *Id.* at *5.

## II.

Although the corporation is nominally a defendant, a shareholder suit such as the one brought by Domanus and Kozlowski is effectively brought by the corporation, with the shareholders as its representatives.[2] *Sobba v. Elmen*, 462 F. Supp. 2d 944, 946–47 (E.D. Ark. 2006). Any recovery Plaintiffs obtain would go to the KBP entities. *Id.* at 947 (citing *Bell Atl. Corp. V. Bolger*, 2 F.3d 1304, 1307 n.4 (3d Cir. 1993)). Because the corporation is the real party in interest, the general rule is that a corporation may not participate in a derivative action on the merits unless it threatens rather than advances the corporate interest. *Id.*, *see Patrick v. Alacer Corp.*, 84 Cal. Rptr. 3d 642, 652 (Cal. Ct. App. 2009). This is known as the rule of corporate neutrality, *see Sobba*, 462 F. Supp. at 946, and neither side contests its applicability here.

Both sides agree that Locke Lord has a duty to protect the interests of the KBP entities. *See Cannon v. U.S. Acoustics Corp.*, 398 F. Supp. 209, 216 (N.D. Ill. 1975), *rev. in part on other*

---

[2] I note that Plaintiffs bring both individual and derivative claims, but only their derivative claims are at issue here.

5

*grounds*, 532 F.2d 1118 (7th Cir. 1976). ("The interest of the corporate client is paramount and should not be influenced by any interest of the individual corporate officials."). The question here is whether Locke Lord's efforts in this litigation have been unduly influenced by the direct defendants. For the reasons that follow, I find that they have.

### III.

Locke Lord contends that after an independent investigation, it has determined that Plaintiffs' actions "threaten the profitability, business and the very existence of the companies." Mot. by KBP Entities for Leave to File Crossclaim Against Plaintiffs Instanter, at 3 (Dkt. No. 465). To apply the rule of corporate neutrality, at least as interpreted by Plaintiffs, would render the corporations unable to protect their own interests, the KBP entities contend. Plaintiffs, however, argue convincingly that although the "actual" (i.e., the direct) defendants are nominally represented in this case by Lucas Fuksa alone, the Locke Lord attorneys are actively pursuing those defendants' interests in violation of the rule of corporate neutrality.

Plaintiffs cite the following circumstances and events in support of their argument:

- the management board of KBP includes no disinterested directors, as it is composed only of Defendant Richard

Swiech, Defendant Bozena Sanecka-Swiech (Richard Swiech's wife), and Alicja Gostek-Swiech (the wife of Defendant Adam Swiech);

- Locke Lord attorneys asserted a "common interest privilege" in objections to discovery requests Plaintiffs propounded in pursuit of their claims against the actual defendants;

- Locke Lord attorney Mr. Jaszczuk advocated, during a discovery hearing before Judge Nolan, for the position that direct defendant Lewicki should not be required to produce evidence of a bank account he had previously concealed, arguing the account was not relevant;

- Locke Lord attorney Mr. Schlessinger sent an informal document request to the managing director of Kozlowski's employer, the law firm CMS Cameron McKenna, without copying Plaintiffs' counsel, indicating that he intended to "adduce evidence at trial" relating to a transaction between the KBP shareholders and a company called ORCO, despite the fact that no KBP entity was a party to that transaction;

- Locke Lord attorneys provided work product to "their client's representative" in Poland — presumably Adam

7

Swiech — which Adam used in defending his Polish criminal case.[3]

First, that the management board of KBP contains no disinterested directors raises a red flag. In a situation where the directors of a corporation are accused of fraud, it is imperative that the corporation make an independent determination as to how to proceed. *Messing v. FDI, Inc.*, 439 F. Supp. 776, 782 (D.N.J. 1977). The KBP entities cite *Cannon*, 398 F. Supp. at 220, for the proposition that a corporation may choose its own independent counsel even if individual defendants serve on the board of directors. It is true that in *Cannon*, a derivative action involving the alleged misappropriation of corporate funds, the court declined to appoint counsel for the corporation even though the individual defendants served as the board of directors. *Id.* The court added, however: "Certainly new counsel will recognize their duty to represent solely the interests of the corporate entities. And should difficulties arise, the parties or counsel may apply to the court for additional relief." *Id.*

As the *Cannon* court recognized, the appointment of counsel for a corporation run solely by directors accused of wrongdoing poses

---

[3] Adam Swiech is facing criminal charges in Poland related to his conduct in running the KBP entities. Defendants (and notably the KBP entities) contend that these proceedings were instigated by Plaintiffs in an effort to take over the corporations, an allegation Plaintiffs deny.

the risk that the directors may seek to impose their will upon the corporate counsel.  There is no evidence before me to indicate that the KBP directors took any steps to minimize the conflict inherent in hiring (and presumably supervising) corporate counsel under these circumstances.  It was their duty to do so.  *See Messing*, 439 F. Supp. at 783.  The fact that courts have typically declined to appoint counsel for corporations named in derivative lawsuits reflects only the principle that it is for a corporation's directors "in the first instance to devise a method to accommodate the need to continue the corporate enterprise while refraining from participating in any corporate decision in which they might have a personal interest."  *Id*.  Here, there is evidence that the direct defendants have influenced the KBP entities' handling of this matter.

For example, Locke Lord acknowledges that as part of its investigation into whether to pursue a claim against Plaintiffs, it obtained a LexisNexis report regarding Domanus' assets.  That report subsequently was used by Adam Swiech's criminal lawyer in Poland.  Locke Lord's only explanation is that it shared this report with its client's representative in Poland (presumably Adam Swiech, although counsel does not say), and that the first time Locke Lord learned the report had been used by Adam Swiech in his criminal case was when Plaintiffs' counsel raised the issue.  Given that Adam Swiech is charged with defrauding the very clients that

9

Locke Lord represents, however, Locke Lord should have taken steps to prevent its work product from being used by Adam Swiech in the criminal proceedings.

Locke Lord's document request to Kozlowski's law firm is similarly problematic. In the request, labeled "Litigation Hold and Request for Information and Documents," Mr. Schlessinger requests information related to the failed sale of KBP to ORCO, a Luxembourg-based real estate company. *See* Michaels Decl. Ex. H. Plaintiffs allege that the direct defendants scuttled the sale to prevent ORCO from discovering evidence of their wrongdoing, and that Plaintiffs suffered injury as a result.

In the document request, Mr. Schlessinger writes, "Given that the Transaction is central to the Plaintiffs' allegations, I wish to adduce evidence at the trial of this matter of the role that Mr. Kozlowski played in the negotiation of the Transaction." Mr. Schlessinger adds that he had reason to believe ORCO was a client of Kozlowski's law firm at or near the time of the transaction, and so Kozlowski had access to confidential information about the company. The ORCO transaction is the subject only of Plaintiffs' direct claims because it was a proposed stock sale between Orco and the KBP shareholders themselves. It is unclear why the KBP entities, who were not parties to the transaction, would want to adduce evidence of it at trial. In its response, the Locke Lord attorneys contend that their goal was merely to ensure that

10

important documents would be preserved.  This is a document request, however, and the stated reasons for the request improperly align the KBP entities with the direct defendants.

Locke Lord attorney Mr. Jaszczuk's objection to Plaintiffs' request that Lewicki be ordered to produce certain bank records is similarly troublesome.  *See* Michaels Decl., Ex. G.  While the KBP entities couch Mr. Jaszczuk's objection as arising from a general concern that the scope of discovery would be unduly broadened, Mr. Jaszczuk specifically argued that the requested bank records were irrelevant because the account was not opened until 2010, after the date of the allegations in the complaint.  This was Defendants' position as well.  But as Judge Nolan subsequently found in ruling on Plaintiffs' motion to enforce the discovery order, these records are relevant to the alleged on-going scheme to defraud Plaintiffs and the KBP Entities.  *See* Order on Mot. to Enforce, at 9–10. (Dkt. No. 449). That counsel for the KBP entities would argue otherwise, particularly in light of counsel's other actions in regard to this case, gives the appearance that the derivative defendants are taking direction from the direct defendants.

Finally, Locke Lord does not deny that it has refused to produce, in response to Plaintiffs' discovery requests, documents or information concerning its communications with the direct defendants or their counsel, objecting that such communications are "privileged."  Advised of plaintiffs' position that "[b]y invoking

11

the [attorney-client] privilege, Locke Lord is, in essence, claiming that it has an attorney-client relationship with" the actual defendants, *see* Michaels Decl. Ex. B at 3 (Dkt. No. 457-1), Mr. Schlessinger stated that Locke Lord's objection asserted not the "attorney client privilege," but "the common interest privilege." Michaels Decl. Ex. C at 2.

But this putative distinction is contrary to the law, since, as the Seventh Circuit has explained, "common interest" is not "a privilege itself," but rather "an exception to the rule that no privilege attaches to communications between a client and an attorney in the presence of a third person." *U.S. v. BDO Seidman, LLP*, 492 F.3d 806, 815-16 (7th Cir. 2007) ("In effect, the common interest doctrine extends the attorney-client privilege to otherwise non-confidential communications in limited circumstances. For that reason, the common interest doctrine only will apply where the parties undertake a joint effort with respect to a common legal interest, and the doctrine is limited strictly to those communications made to further an ongoing enterprise."). In this case, according to the KBP entities, the common legal goal between the direct defendants and the KBP entities is "holding Plaintiffs accountable for their actions" through the proposed cross-claim. Resp. to Mot. to Disqualify, at 8. The KBP entities argue that there is a crucial distinction between working with the direct

12

defendants in order to establish the facts of the cross-claim, and joining with direct defendants generally.

Plaintiffs' discovery requests, among other things, sought "documents that relate to any claim(s) or defense(s) asserted by any party in [this] lawsuit" and shared between Locke Lord and the direct defendants and their lawyers. *See* Michaels Decl., Ex. E, ¶ 6. I note, first, that at the time Locke Lord responded to this request, in December 2011, it had not yet sought leave to file its proposed cross-claim. Therefore, Plaintiffs' request went only to the claims and defenses actually asserted in this lawsuit. Although Locke Lord might have been investigating a claim against Plaintiffs, it made no attempt to limit its blanket assertion of privilege to those claims or defenses in which the KBP entities had a common interest with the direct defendants.

Further, even if the KBP entities' argument that its assertion of privilege went only to its intended cross-claim was well-taken, it is important to note that the proposed cross-claim, at least in part, reads very much like a defense of the direct defendants on the merits. *See CrossClaim By the KBP Entities Against Kozlowski and Domanus* (Dkt. No. 465-1, Ex. A.). The introduction section portrays Plaintiffs as wrongdoers who are trying to take over the KBP entities from their rightful owners through the use of both Polish criminal and civil courts and this very lawsuit. *Id.* at ¶¶ 6-12. These actions are the basis for the KBP entities' proposed

13

claim in Count VI of tortious interference with prospective economic advantage and in Count VII and VIII of breach of the duty of loyalty.

In their response to the motion to disqualify, the KBP entities dedicate several pages to a summary of the allegations of Plaintiffs' misconduct stated in the cross-claim they have sought leave to file, and argue that these show an "improper purpose" behind the motion to disqualify. Notably, however, even assuming that Plaintiffs' alleged misconduct is relevant to Plaintiffs' current motion, the KBP entities submit no evidence that reasonably supports their allegations, which, in some instances, are belied by affirmative evidence in the record.[4]

---

[4] Most of the allegations levied in response to the present motion are supported only with citations to the proposed cross-claim. In the few instances of substantive citations, the cited evidence does not support the allegation. For example, the KBP entities claim that Plaintiffs "tried to sell their shares" of KBP in violation of a shareholder resolution not to sell individual shares. While the KBP entities attach a copy of a shareholder resolution, they cite no evidence that plaintiffs violated or attempted to violate it. Similarly, the KBP entities affirmatively allege that a Polish court found, on the merits, that plaintiff Kozlowski's wife "was not entitled to additional shares" in KBP held in defendant Adam Swiech's name, attaching the Polish court's decision as support. On its face, however, the decision held, "in relation to Adam Swiech, [this Court] *rejects the request to determine* that the Plaintiff is entitled to [the shares in question]." (Emphasis added). Jaszcuk Decl., Ex. D (Dkt. No. 464-4). That the KBP entities construe the text of this decision as support for their allegation that the case was adjudicated on the merits is puzzling, particularly in light of affirmative evidence Plaintiffs previously submitted that the court in fact decided the case on the ground that the plaintiff had no remedy under the asserted article of the Civil Procedure Code, and did not hear any testimony or review any documents

Simply put, the evidence brought forth by Plaintiffs shows that the KBP entities are attempting to defend the suit on the merits, an action they may take only when the derivative suit threatens their corporate interests. *Sobba*, 462. F. Supp. 2d. at 947. While the KBP entities assert this is such a case, they fail to grapple with the legal standard for determining when a derivative suit threatens the corporation's interests. The test is whether the complaint seeks relief that is adverse to the corporation's interests. *Id.* at 950. Examples of such relief include a request to enjoin the performance of any contract by the derivative defendants, a request for a receiver, or attempts to interfere with a corporate reorganization or internal management absent allegations of bad faith. *Id.* at 949.

Here, of course, the complaint is rife with allegations of bad faith. And while the KBP entities have expressed concern that Plaintiffs would seek an injunction that would threaten their ability to conduct business, they have not done so.[5] In regard to their derivative claims, Plaintiffs seek compensatory damages on behalf of the corporation under the Racketeer Influenced and Corrupt Organizations Act, and punitive and compensatory damages

---

before issuing its ruling. *See* Decl. of Karol Rutkowski,¶ 11 (Dkt No. 309).

[5] As noted above, the preliminary injunction I entered limits Adam Swiech's ability to vote his shares, but leaves other options available should the KBP entities need to raise capital.

15

under state law, including the imposition of a constructive trust for the benefit of the KBP entities. None of these remedies will harm the KBP entities. Either Plaintiffs can prove their claims or they cannot, but the KBP entities lose nothing by their efforts. *See id.* Because the complaint does not seek relief adverse to the derivative defendants' interests, they cannot defend on the merits. Although couched as a cross-claim, that is exactly what the KBP entities seek to do in this case.

In some circumstances, a derivative defendant is allowed to defend a suit frivolously brought against its directors. *See Messing*, 439 F. Supp. at 782. I note, however, that in granting Plaintiffs' request for a preliminary injunction, I found that there was in fact substantial evidence showing that Plaintiffs were likely to prevail on their claims. *See Domanus*, 2012 WL 1247102, at *3-*4. I also note that while there may be circumstances in which a cross-claim by a derivative defendant against a plaintiff is appropriate, it is only appropriate where the corporation remains neutral on the plaintiff's claims against the actual defendants, and where it is clear the derivative defendant is acting independently and in its own best interests. Based on the record before me, this is not such a case.

## IV.

For the reasons stated herein, Plaintiffs' Motion to Disqualify Locke Lord LLP As Counsel for the Derivative Defendants

16

(Dkt. No. 455) is granted. In light of this ruling, the KBP Entities' Motion to File a CrossClaim Against Plaintiffs Instanter (Dkt. No. 465) is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: May 29, 2012