## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JON DOMANUS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 08 C 4922 |
| v. | ) | |
| | ) | Magistrate Judge Nan R. Nolan |
| DEREK LEWICKI, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This action arises out of Plaintiffs' allegations of a complex, bicontinental rack-eteering and fraud scheme spanning over ten years. On February 21, 2012, Plaintiffs filed a Motion for Discovery Sanctions Against Defendants ("Motion") due to spoliation of evidence, alleging that Defendants Derek Lewicki and Richard Swiech intentionally destroyed a computer hard drive, which contained relevant information.[1] On March 13, 2012, Defendants filed their response, and Plaintiffs filed a reply on March 27, 2012. For the reasons stated below, the Motion is granted in part and denied in part.

---

[1] The Motion also requests that Defendants Adam Swiech and Derek Lewicki be found in civil contempt for violating Court orders regarding the production of certain bank account records. This request is addressed in a separate order, filed concurrently with this Opinion.

# I. BACKGROUND

## A. The Complaint

On August 28, 2008, Plaintiffs, who are shareholders in Krakow Business Park SP. Z O.O. ("KBP"), brought an action alleging a pattern of fraud and deceit, corporate looting and misappropriation of corporate funds, and money laundering by various individual and corporate defendants. Plaintiffs have named KBP and its wholly owned subsidiaries (the "KBP entities") as derivative defendants in this action, but seek no relief from these entities. Plaintiffs assert direct and derivative claims under 18 U.S.C. § 1962 ("RICO"), as well as liability under several common law theories including fraud, conversion, breach of fiduciary duty, tortious interference with prospective business advantage, civil conspiracy, violation of the Uniform Fraudulent Transfer Act, 740 ILCS §§ 160/1 *et seq.*, and for an accounting.

The gravamen of the Complaint[2] is that the direct Defendants, led by Derek Lewicki, Richard Swiech, and his brother, Adam Swiech, working with each other and with and through a host of foreign and domestic corporations that they control, engaged in a pattern of misconduct designed to rob the KBP entities of their assets, which the direct Defendants used to finance real estate developments in suburban Chicago. The Complaint describes four types of misconduct: (1) sham contracts and payments for inadequate consideration; (2) self-dealing leases; (3) land misappropriation; and (4) construction kickbacks. Defendants used proceeds generated by their misconduct as capital contributions by Adam Swiech, who then claimed to be

---

[2] References to the Complaint refer to the Third Amended Complaint.

the majority shareholder of KBP. These sham contributions diluted the shareholdings of Plaintiffs, who contend that they are the rightful majority shareholders of KBP, although they currently appear on the books as minority shareholders. In April 2012, the District Judge granted Plaintiffs' motion for a preliminary injunction preventing Defendant Adam Swiech from voting his shares to approve any issuance of shares that would dilute Plaintiffs' shareholdings below 25 percent. *See Domanus v. Lewicki*, 2012 WL 1247102 (N.D. Ill. April 13, 2012). In her ruling, the District Judge noted that Plaintiffs have identified "extensive evidence" supporting their claims of misconduct by the direct Defendants. *Id.* at *3–4.

## B. The Hard Drive

On May 20, 2011, Defendants' former counsel sent Plaintiffs' counsel 1,800 pages of documents, explaining that they "were recovered from a hard drive belonging to Richard Swiech [(the "Hard Drive")] and have been unavailable until now." (Michaels Decl. ¶¶ 2–3 & Ex. A.) After reviewing the production, Plaintiffs' counsel found it incomplete and requested that Defendants' counsel provide more information about the Hard Drive and agree to a forensic inspection. (*Id.* Ex. B.) Defendants' counsel responded that Plaintiffs' concerns were "unfounded and unreasonable" and refused to answer any questions about the Hard Drive or agree to a forensic inspection. (*Id.* Ex. C.) Defendants' counsel explained that the Hard Drive was not in her possession; instead, she was relying on Richard Swiech's representations as to the Hard Drive's contents:

> I assure you that I have explained to [Richard Swiech] the breadth of
> what you are searching for, and I am confident that he understands. I

> do not believe there are any responsive files, e-mails or otherwise, which are available from the hard drive which have not been produced.

(*Id.* Ex. C.) However, two weeks later, Defendants' counsel reported that there were more documents on the Hard Drive after all:

> I have had some additional conversations with my client to absolutely verify that there was nothing else [on the Hard Drive]. It looks like there was a misunderstanding regarding what was responsive and needed to be produced, so I'm learning there are some additional documents, mostly emails I believe, which may be responsive and were not produced.

(*Id.* Ex. E.)

The parties addressed the Hard Drive issue at a June 29, 2011 status hearing. (Michaels Decl. Ex. F ("June 29, 2011 Hr'g Tr.").) Defendants' counsel requested additional time to review the "21 CD-ROMs of data" that she had just received from Richard Swiech. (June 29, 2011 Hr'g Tr. 5.) Counsel reiterated that she was not in possession of the Hard Drive but that she believed it was in Illinois, rather than Poland, where some of Defendants reside. (*Id.* 6.) The Court granted Defendants 60 days to review the 21 discs of documents. (*Id.* 9, 12.) In response to Plaintiffs' counsel request for a statement that the Hard Drive "be preserved," the Court reminded the parties and their counsel of their obligation to preserve evidence. (*Id.* 12–13.)

Defendants failed to produce any additional Hard Drive documents by the 60-day deadline, and Defendants' counsel moved to withdraw. (Docs. 426, 431.) The Court granted new counsel until December 27, 2011, to produce all responsive Hard Drive documents from the 21 discs. (Docs. 440, 446.) On December 9, 2011, new counsel acknowledged that he, like previous counsel, had never taken possession of

the Hard Drive. (Michaels Decl. Ex. G ("Dec. 9, 2011 Hr'g Tr.") 10.) The Court again reminded Defendants' counsel of Defendants' duty to preserve the Hard Drive, stating "You have told your clients that that Hard Drive has got to be preserved. And if you didn't, you should." (*Id.* 11.) Defendants eventually produced the Hard Drive documents from the 21 discs, totaling 22,942 pages. (Mot. 3; Michaels Decl. ¶ 10.) The documents, much of which were duplicates, included emails from nine email accounts belonging to Richard Swiech dated from September 2004 through November 2008, along with a number of documents from 2010 and 2011. (Michaels Decl. ¶¶ 10–11; Reply Ex. A; *see* Mot. 11 n.8.)

Plaintiffs were concerned that the production was still incomplete or altered and renewed their request for a forensic inspection of the Hard Drive. (Michaels Decl. ¶¶ 10–13 & Ex. M.) However, on January 24, 2012, Defendants' counsel informed Plaintiffs that Defendants could not consent to a forensics examination because the Hard Drive had been disassembled and was no longer available. (*Id.* ¶ 13 & Ex. H.)

In responding to the instant Motion, Defendants assert for the first time that the Hard Drive "crashed" in May 2009. (Richard Swiech Decl. ¶ 2.) Richard Swiech attests that he took the Hard Drive to an Apple store to be repaired but learned that it should be replaced, which is what he had done on May 19, 2009.[3] (*Id.* ¶¶ 2–3 & Ex. A.) Upon learning from "someone else" that the Hard Drive would cost about $2,700 to repair, Richard Swiech spoke with Defendant Lewicki, who thought he

---

[3] Without explanation, the Apple invoice is dated February 22, 2012, but includes a handwritten note that "Repair done 5/19/2009." (Richard Swiech Decl. Ex. A.)

might be able to repair it. (*Id.* ¶ 4.) In December 2009 or January 2010, Richard Swiech sent the Hard Drive to Lewicki, who was in Poland at the time. (*Id.* ¶ 5; *see* Lewicki 3/12/12 Decl. ¶ 2.) Using a "special software program," Lewicki was "able to recover *some files* from the Hard Drive." (Lewicki 3/12/12 Decl. ¶ 3) (emphasis added). Richard Swiech "received those files and prepared them in PDF format for purposes of discovery in this case." (Richard Swiech Decl. ¶ 7.) Thereafter, in February 2010, "because the hard drive was inoperable and useless, other than for the fact that it contained shiny, interesting parts, [Lewicki] gave it to [his] friend's children to play with." (Lewicki 3/12/12 Decl. ¶ 4.)

## II. DISCUSSION

Plaintiffs request that the Court sanction Defendants for their spoliation of evidence. "Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010); *see The Sedona Conference Glossary: E-Discovery & Digital Information Management* 48 (3d ed. Sept. 2010), *available at* www.thesedonaconference.org ("Spoliation is the destruction of records or properties, such as metadata, that may be relevant to ongoing or anticipated litigation, government investigation, or audit."). Motions seeking spoliation sanctions result from an alleged failure to preserve relevant evidence. "A party has a duty to preserve evidence, including any relevant evidence over which the party has control and reasonably knew or could reasonably foresee was material to a po-

tential legal action." *Krumwiede v. Brighton Assocs., L.L.C.*, 05 C 3003, 2006 WL 1308629, at *8 (N.D. Ill. May 8, 2006); *see Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 525 (D. Md. 2010) ("Breach of the preservation duty, also, is premised on reasonableness: A party breaches its duty to preserve relevant evidence if it fails to act reasonably by taking positive action to preserve material evidence.") (citation omitted); *accord Jones v. Bremen High Sch. Dist. 228*, No. 08 C 3548, 2010 WL 2106640, at *6 (N.D. Ill. May 25, 2010).

Plaintiffs contend that Defendants deliberately destroyed the Hard Drive, which contained relevant information. (Reply 2.) Moreover, Plaintiffs assert that "Richard Swiech and Lewicki acted in bad faith by destroying the Hard Drive in the midst of this litigation, after Defendants produced some but not all documents from it and after Plaintiffs requested that it be forensically inspected." (*Id.*). As sanctions, Plaintiffs request that Richard Swiech and Lewicki be required to obtain and produce all relevant emails from their email providers and be barred from using any documents produced from the Hard Drive. (Mot. 9–11.)

Defendants do not dispute that the Hard Drive was destroyed. (Resp. 3; Lewicki Decl. ¶¶ 2–4.) Instead, they contend that (1) the production of the Hard Drive documents was complete prior to it being destroyed; (2) no preservation order was in place in February 2010 when the dissembled Hard Drive was given by Lewicki to a friend's children to play with; and (3) the Hard Drive was not destroyed in bad faith. (Resp. 2–7.)

## A. Sanctions for Spoliation of Evidence

The Court's authority to sanction a party for spoliation of evidence is both inherent and statutory. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50–51 (1991); *Barnhill v. United States*, 11 F.3d 1360, 1368 (7th Cir. 1993). If spoliation of evidence violates a court order or affects the court's discovery schedule, sanctions may be imposed under Rule 37. *See* Fed. R. Civ. P. 37(b)(2); *Chambers*, 501 U.S. at 50–51; *Victor Stanley,* 269 F.R.D. at 517 (citations omitted). "In other words, the Court may sanction a party pursuant to Rule 37 for discovery violations; however, these sanctions are limited to circumstances in which a party violates a court order or discovery ruling." *Larson v. Bank One Corp.*, No. 00 C 2100, 2005 WL 4652509, at *8 (N.D. Ill. Aug. 18, 2005). "Courts have broadly interpreted what constitutes an 'order' for purposes of imposing sanctions." *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756 n.7 (7th Cir. 1994).

The court's inherent authority, on the other hand, is based on the court's power "to control the judicial process and litigation," *Victor Stanley*, 269 F.R.D. at 517 (citation omitted), a power which is necessary "to fashion an appropriate sanction for conduct which abuses the judicial process," *Chambers*, 501 U.S. at 44–45; *see Barnhill*, 11 F.3d at 1367. This authority "is based on the Court's power to manage and ensure the expeditious resolution of cases on their dockets and is not limited to discovery violations." *Larson*, 2005 WL 4652509, at *8. Thus, "[j]udges have inherent authority to impose sanctions for misconduct by litigants, their lawyers, witnesses, and others who participate in a lawsuit over which the judge is presiding." *S.E.C. v.*

*First Choice Mgmt. Servs., Inc.*, — F.3d —, No. 11-1702, 2012 WL 1506014, at *5 (7th Cir. May 1, 2012). "The policy underlying this inherent power of the courts is the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth." *Pension Comm.*, 685 F. Supp. 2d at 465 (citation omitted). Nevertheless, the Court need not determine whether it is exercising its statutory or inherent authority. "Under either Rule 37 or under the Court's inherent authority, the analysis for imposing sanctions is essentially the same." *Larson*, 2005 WL 4652509, at *8; *accord Danis v. USN Commc'ns, Inc.*, No. 98 C 7482, 2000 WL 1694325, at *30 (N.D. Ill. Oct. 23, 2000).

Sanctions are intended to serve one or more of the following purposes: (1) to ameliorate the prejudice caused to an innocent party by a discovery violation; (2) to punish the offending party; and (3) to deter future misconduct. *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (noting dual purpose of punishment and deterrence); *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1997) (discussing compensatory purpose of directed verdict as sanction for prejudice resulting from lost documents: "sanctions can be employed for a wide array of purposes, but they cannot replace lost evidence"); *Larson*, 2005 WL 4652509, at *8; *Danis*, 2000 WL 1694325, at *31. To further these policies, the court may impose further discovery, cost-shifting, fines, special jury instructions, preclusion, and the entry of default judgment or dismissal. Fed. R. Civ. P. 37(b)(2); *Pension Comm.*, 685 F. Supp. 2d at 469; *Larson*, 2005 WL 4652509, at *8. "[W]hen weighing sanctions in response to a party's misconduct, the Court has broad discretion to fashion

an appropriate sanction." *Larson*, 2005 WL 4652509, at *9. The court's discretion is guided by three principal factors: (1) a breach of the duty to preserve evidence; (2) the level of culpability for the breach; and (3) the prejudice that resulted from the breach. *Jones*, 2010 WL 2106640, at *5; *Danis*, 2000 WL 1694325, at *31.

## B. Duty to Preserve Evidence and Breach of that Duty

The duty to preserve evidence arises from many sources, including common law, statutes, regulations, or a court order in the case. Fed. R. Civ. P. 37(f) advisory committee's note; *see Pension Comm.*, 685 F. Supp. 2d at 466 ("The common law duty to preserve evidence relevant to litigation is well recognized."). Thus, a person or entity has an ongoing duty to preserve evidence over which it has control and reasonably knows or can foresee would be material—and thus relevant—to a potential legal action. *See Jones*, 2010 WL 2106640, at *5. "The scope of the duty to preserve is a broad one, commensurate with the breadth of discovery permissible under Fed. R. Civ. P. 26." *Danis*, 2000 WL 1694325, at *32. "A party fulfills its duty to preserve evidence if it acts reasonably." *Jones*, 2010 WL 2106640, at *6; *accord Victor Stanley*, 269 F.R.D. at 525. "More than good intentions [are] required; those intentions [must] be followed up with concrete actions reasonably calculated to ensure that relevant materials [are] preserved." *Danis*, 2000 WL 1694325, at *38; *accord Victor Stanley*, 269 F.R.D. at 525.

Defendants contend that when they destroyed the Hard Drive in February 2010, they were under no duty to preserve evidence. (Resp. 3.) They argue that their duty to preserve did not arise until June 2011 when the Court first addressed their pres-

ervation requirements at a status hearing. (*Id.*; *see* June 29, 2011 Hr'g Tr. 12–13.) On the contrary, the "existence of a duty to preserve evidence does not depend on a court order. Instead, it arises when a reasonable party would anticipate litigation." *Jones*, 2010 WL 2106640, at \*5 (citing *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008)); *see Pension Comm.*, 685 F. Supp. 2d at 466.

> Moreover, the case law establishes that a discovery request is not necessary to trigger this duty. A party clearly is on notice of the relevance of evidence once it receives a discovery request. However, the complaint itself may also alert a party that certain information is relevant and likely to be sought in discovery.

*Danis*, 2000 WL 1694325, at \*33 (citations omitted); *see Larson*, 2005 WL 4652509, at \*10 ("Notice of the specific documents' relevance most often stems from a discovery request or a party's complaint."). Finally, the duty to preserve information is not a passive obligation; it must be discharged actively. *Marrocco*, 966 F.2d at 224–25; *Larson*, 2005 WL 4652509, at \*11; *Danis*, 2000 WL 1694325, at \*32.

Here, Defendants had a duty to preserve information relevant to Plaintiffs' claims as early as September 2008 when they were served with the complaint in this action. (Doc. 17.) The complaint specifically alleged a pattern of fraud and misconduct by Defendants in their management of KBP. Thus, as of September 2008, Defendants were on notice and had a duty to preserve all information on the Hard Drive that was related in any way to Plaintiffs or Defendants and their management of KBP. Moreover, by producing thousands of documents from the Hard Drive (*see* Mot. 3), Defendants knew that it contained relevant information.

The Court finds that Defendants breached their duty to preserve evidence. Defendants admit discarding the Hard Drive. (Lewicki Decl. ¶ 4; *see also* Michaels Decl. ¶ 13 & Ex. H.) Nevertheless, Defendants contend that they had completed the Hard Drive production prior to its destruction. (Resp. 2, 7) ("Defendants in this case flatly deny that they have failed to produce any relevant emails, and Plaintiffs have not offered anything beyond vague indictments to contradict that notion."). But Defendants themselves acknowledge that they were able to recover only "some" of the documents on the Hard Drive. (Lewicki Decl. ¶ 3; *see* Richard Swiech Decl. ¶ 6.) And Defendants may not have sought to recover documents they believed were nonresponsive. But as nonlawyers, they were not qualified to make such a determination. *See Jones*, 2010 WL 2106640, at *8 ("As a non-lawyer and as an interested party, Jurgens is not qualified to judge whether documents are relevant to the suit."). Moreover, it is possible that a forensics expert could have recovered additional, relevant documents from the Hard Drive. Thus, Plaintiffs have been prevented from determining the legitimacy, authenticity and completeness of the Hard Drive production. Under these circumstances, it was unreasonable for Defendants to have destroyed the Hard Drive.[4] *See Jones*, 2010 WL 2106640, at *6 ("[P]arties must take positive action to preserve material evidence.").

---

[4] Defendants' citation to Fed. R. Civ. P. 37(e) is unavailing. (Resp. 4.) Rule 37(e) precludes a court from imposing sanctions "for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system." But Rule 37(e) applies only to "the routine alteration and deletion of information that attends ordinary use." Fed. R. Civ. P. 37 advisory committee's note. The destruction of the Hard Drive was neither "routine" nor "ordinary." And Rule 37(e) does not apply where a party is already under a duty to preserve information. *Id.*

## C. Culpability

To determine whether sanctions are appropriate and which level of sanctions should be applied, the Court must determine whether Defendants acted willfully, in bad faith, or if they were merely at fault. *Jones*, 2010 WL 2106640, at *8. "To find bad faith, a court must determine that the party intended to withhold unfavorable information." *Id.*; *see Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir.1998) (Bad faith generally means that the destruction occurred "for the purpose of hiding adverse information."). "Thus, the crucial element is not that evidence was destroyed but rather the reason for the destruction." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008) (citation omitted).

On the other hand, "[f]ault does not refer to the noncomplying party's subjective motivation, but rather describes the reasonableness of the conduct. Fault may be evidenced by negligent actions or a flagrant disregard of the duty to preserve poten-tially relevant evidence." *Krumwiede*, 2006 WL 1308629, at *9 (citing *Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir.1997)); *see Jones*, 2010 WL 2106640, at *8 ("Gross negligence of the duty to preserve material evidence is generally held to be fault."); *Marrocco*, 966 F.2d at 224 ("'Fault' . . . describes the reasonableness of the conduct—or lack thereof—which eventually culminated in the violation."). In *Marrocco*, the court held that the defendant's conduct, failing to preserve key evi-dence by packaging it poorly, fell under the "fault" category because it "reflected ex-traordinarily poor judgment" and "gross negligence." 966 F.2d at 224. Additionally, the *Marrocco* court gave particular weight to the offending party standing idly by

for months before it attempted to investigate the lost evidence, and waiting longer still before informing their opponents that key evidence was missing. *Id*.

Plaintiffs contend that Defendants "Richard Swiech and Lewicki acted in bad faith by destroying the Hard Drive in the midst of this litigation, after Defendants produced some but not all documents from it and after Plaintiffs requested that it be forensically inspected." (Reply 2; *see* Mot. 8–9.) In response, Defendants assert that they "have put forth a perfectly reasonable explanation for the Hard Drive's destruction—its contents had been copied onto discs and the drive itself was not worth repairing after its 2009 crash, for which the Defendants have provided tangible evidence." (Resp. 6.) In support, Defendants attest, for the first time, that the Hard Drive "crashed in May 2009 and was dissembled in early 2010." (*Id*. 4; *see* Richard Swiech Decl. ¶¶ 2–5; Lewicki Decl. ¶¶ 2–4.) Further, Defendants argue that "Plaintiffs do not offer any useful theory about why Defendants would willingly disclose the existence of the Hard Drive and produce and supplement discovery documents from that Hard Drive, the 21 discs, if they were attempting to hide its existence and cover the tracks of an alleged spoliation." (Resp. 7.)

The Court finds that much of Defendants' explanation for discarding the Hard Drive is incredible. First, the production from the Hard Drive included many documents from 2010 and 2011—after the Hard Drive was allegedly destroyed—including a facsimile dated August 18, 2010, an email dated January 3, 2011, an email dated April 28, 2011, and contracts revised on July 11, 2011, and November 11, 2011. (Reply Ex. A.) Second, Richard Swiech contends that in May 2009, he took

the computer which contained the Hard Drive to the Apple Store for repairs, and attaches an invoice for that visit. (Richard Swiech Decl. ¶¶ 2–3, Ex. A.) But the invoice is clearly dated February 22, 2012, and Richard Swiech provides no explanation for the handwritten note on the invoice which states, "Repair done 5/19/2009." (*Id.* Ex. A.) Third, Defendants' version of events conflicts with their prior representations. Defendants did not produce any documents from the Hard Drive until May 2011, when they stated that the documents have been "recovered from a hard drive belonging to Richard Swiech and have been unavailable until now." (Mot. Ex. A.) But if the Hard Drive crashed in *May 2009* and documents recovered in *early 2010*, the documents would not have been "unavailable" until *May 2011*. (*Compare* Richard Swiech Decl. ¶¶ 2, 7 *and* Lewicki Decl. ¶¶ 2–4 *with* Mot. Ex. A.) Furthermore, despite the subject of the Hard Drive and its contents being discussed at numerous status conferences—including several requests by Plaintiffs' counsel to have it forensically inspected—Defendants' counsel never indicated that the Hard Drive had been destroyed two years prior. On the contrary, on at least two occasions, Defendants' counsel stated that the Hard Drive was in Richard Swiech's possession in Illinois. (Mot. Ex. F at 5–6, Ex. G at 11.) Consequently, these facts lend credence to Plaintiffs' contention that the Hard Drive was destroyed during the midst of discovery in this litigation, after Defendants produced some documents from it, and only after Plaintiffs requested that it be forensically inspected.

Nevertheless, Plaintiffs have not carried their burden to establish that Defendants acted in bad faith. On the one hand, Defendants willingly disclosed the exis-

tence of the Hard Drive and produced 21 discs of information from it. On the other hand, Plaintiffs provided no evidence, circumstantial or otherwise, that the Hard Drive contained relevant information that was not produced. For example, Plaintiffs have emails that they sent to Richard Swiech from September 2004 through November 2008. (*See* Michaels Decl. Ex. B.)  Yet, Plaintiffs have not asserted that Richard Swiech failed to produce his copies of any of those emails. Nor have Plaintiffs demonstrated that the production of any remaining documents on the Hard Drive would have been unfavorable to Defendants. Instead, Plaintiffs contend—without further support—that "Defendants' destruction of the Hard Drive has unquestionably prejudiced Plaintiffs by preventing them from obtaining relevant evidence." (Mot. 9.) But mere proof that Defendants intentionally discarded the Hard Drive does not demonstrate that adverse information was destroyed. *See Mathis*, 136 F.3d at 1155 ("That the documents were destroyed intentionally no one can doubt, but 'bad faith' means destruction for the purpose of hiding adverse information."). And, without evidence that Defendants "intended to withhold unfavorable information," *Jones*, 2010 WL 2106640, at *8, the Court cannot conclude that Defendants acted in bad faith. *See Mathis*, 136 F.3d at 1155; *Faas*, 532 F.3d at 644; *cf. Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir.1985) ("[B]ad faith destruction of a document relevant to proof of an issue at trial gives rise to a strong inference that production of the document would have been unfavorable to the party responsible for its destruction.") (citation omitted).

In any event, Defendants are clearly at fault for discarding the Hard Drive while this action is still pending. Indeed, the destruction of the Hard Drive reflects "extraordinarily poor judgment" and evinces "gross negligence" of Defendants' duties to preserve potentially relevant evidence in the face of Plaintiffs' litigation. *See Marrocco*, 966 F.2d at 224; *see also Jones*, 2010 WL 2106640, at *8 (finding "no evidence that defendant willfully chose its document retention system as a way to minimize exposure of potentially relevant documents for future lawsuits . . . [but] defendant was grossly negligent in its attempts to secure relevant documents"); *Larson*, 2005 WL 4652509, at *13 ("Bank One's conduct evinces fault, but not willful destruction of documents or bad faith. The destruction or loss of several categories of documents reflects 'extraordinarily poor judgment' and the failure to create and disseminate an ample document retention policy evinces 'gross negligence' of Bank One's duties to preserve documents in the face of the Larson litigation.") (citation omitted); *Danis*, 2000 WL 1694325, at *39–40 (finding no evidence of willful or intentional destruction of documents but failure to implement document preservation program exhibited "extraordinarily poor judgment" and "gross negligence"); *Jain v. Memphis Shelby County Airport Auth.*, No. 08-2119, 2010 WL 711328, at *1, 3–4 (W.D. Tenn. Feb. 25, 2010) (finding that inadvertent failure to preserve video capturing Plaintiff's fall at the airport, "while something less than intentional, Defendants' conduct nevertheless [was more than mere negligence and] warrants sanctions for spoliation"); *Brown v. Chertoff*, 563 F. Supp. 2d 1372, 1381 (S.D. Ga. 2008) (while the Government's failure to preserve Plaintiff's case file did not amount to bad faith, the

Government was clearly culpable for violating its own policies and EEOC regula-
tions and for failing to take notice that litigation was likely). Further, Defendants
are at fault by waiting two years to inform Plaintiffs and this Court that the Hard
Drive had been destroyed in early 2010. *See Marrocco*, 966 F.2d at 224 (giving par-
ticular weight in finding fault to the offending party standing idly by for months be-
fore it attempted to investigate the lost evidence, and waited longer still before in-
forming their opponents that key evidence was missing).

## D. Prejudice

While not an element to imposing sanctions, the Seventh Circuit has implied
that prejudice to the nonoffending party should nevertheless be considered by the
court. *In re Kmart Corp.*, 371 B.R. 823, 842 (Bankr. N.D. Ill. 2007); *Larson*, 2005
WL 4652509, at *13; *Danis*, 2000 WL 1694325, at *34; *see Flury v. Daimler Chrysler
Corp.*, 427 F.3d 939, 946 (11th Cir. 2005) ("The court should weigh the degree of the
spoliator's culpability against the prejudice to the opposing party.").

"The prejudice suffered from the destruction of documents can take many forms,
the most severe of which occurs when the evidence destroyed is the only proof avail-
able on an issue or defense in the case." *Danis*, 2000 WL 1694325, at *35. "A party
suffers [substantive] prejudice due to spoliation of evidence when the lost evidence
prevents the aggrieved party from using evidence essential to its underlying claim."
*Krumwiede*, 2006 WL 1308629, at *10 (N.D. Ill. May 8, 2006) (citing *Langley*, 107
F.3d at 515); *see Larson*, 2005 WL 4652509, at *13 ("To suffer substantive prejudice
due to spoliation of evidence, the lost evidence must prevent the aggrieved party the

use of an essential or 'crucial' piece of evidence to their underlying claim.") (citation omitted).

"While prejudice is not an essential precondition to an award of sanctions, the choice of sanctions is a function of the prejudice suffered." *Am. Family Mut. Ins. Co. v. Roth*, No. 05 C 3839, 2009 WL 982788, at *14 (N.D. Ill. Feb. 20, 2009). "In cases where spoliation is the result of 'fault,' as opposed to willfulness or bad faith, courts often use prejudice as a 'balancing tool' to tip the scales in favor of or away from severe sanctions." *In re Kmart Corp.*, 371 B.R. at 842; *see Larson*, 2005 WL 4652509, at *13 ("In several cases involving spoliation of evidence as a result of fault, courts have used prejudice as a 'balancing tool' to tip the scales in favor of or away from severe sanctions.") (citation omitted); *Danis*, 2000 WL 1694325, at *34 ("[I]n cases where the noncompliance is the result of fault rather than a more culpable mental state, courts often have used prejudice as a balancing tool or fulcrum upon which the scales may tip in favor of default or against it."). For example, in *China Ocean Shipping (Group) Co. v. Simone Metals Inc.*, No. 97 C 2694, 1999 WL 966443 (N.D. Ill. Sept. 30, 1999), the court dismissed the plaintiff's case because it failed to preserve physical evidence crucial to the defendants' defenses. *Id.* at *4. In contrast, in *Danis*, the court declined to enter a default judgment because some underlying data had been destroyed in its "best" form, but a lot of documents had been produced and some of the evidence was ultimately available in other forms. 2000 WL 1694325, at *42–43.

In this case, Plaintiffs have not demonstrated substantive prejudice from the destruction of the Hard Drive. Plaintiffs have not asserted that the loss of the Hard Drive prevents them from "the use of an essential or 'crucial' piece of evidence to their underlying claim[s]." *See Larson*, 2005 WL 4652509, at *13. Indeed, as discussed above, Plaintiffs have not demonstrated that any adverse information was destroyed, or even identified any emails that Richard Swiech should have produced but did not.

Nevertheless, Plaintiffs have suffered some prejudice. It is possible that a forensics expert could have recovered additional, relevant documents from the Hard Drive. *See Jones*, 2010 WL 2106640, at *8 ("Even if this Court assumes no bad faith on the part of defendant or defendant employees, there remains the distinct possibility that emails relevant to plaintiff's case were destroyed by its employees."). "Because the duty to preserve documents exists to insure that relevant documents are available to be produced," *Danis*, 2000 WL 1694325, at *42, Plaintiffs were prejudiced by Defendants discarding the Hard Drive, *see Pension Comm.*, 685 F. Supp. 2d at 466 ("It is often impossible to know what lost documents would have contained. At best, their content can be inferred from existing documents or recalled during depositions.").

## E. Remedy

A court has broad discretion to fashion a sanction appropriate to the unique factual circumstances of each case. *Nat'l Hockey League*, 427 U.S. at 642–43; *Barnhill*, 11 F.3d at 1367; *Larson*, 2005 WL 4652509, at *9; *Danis*, 2000 WL 1694325, at *31.

Nevertheless, a court considering the imposition of sanctions "must be guided by a certain measure of restraint," *Barnhill*, 11 F.3d at 1368, and any sanction leveled must adhere to "the norm of proportionality," *Newman v. Metro. Pier & Exposition Auth.*, 962 F.2d 589, 591 (7th Cir. 1992); *see Larson*, 2005 WL 4652509, at *9 (observing that sanctions must be "proportionate with the circumstances surrounding the failure to comply with discovery orders"). Thus, "a court should always impose the least harsh sanction that can provide an adequate remedy." *Pension Comm.*, 685 F. Supp. 2d at 469.

"If the Court finds that sanctions are appropriate, it must determine whether the proposed sanction can ameliorate the prejudice that arose from the breach; if a lesser sanction can accomplish the same goal, the Court must award the lesser sanction." *Jones*, 2010 WL 2106640, at *5. "The choices include—from least harsh to most harsh—further discovery, cost-shifting, fines, special jury instructions, preclusion, and the entry of default judgment or dismissal (terminating sanctions). The selection of the appropriate remedy is a delicate matter requiring a great deal of time and attention by a court." *Pension Comm.*, 685 F. Supp. 2d at 469 (citations omitted).

Here, Plaintiffs ask the Court to sanction Defendants Lewicki and Richard Swiech by (i) compelling them to obtain and produce all relevant emails from their email service providers and (ii) barring Defendants from introducing into evidence any documents produced from the Hard Drive. (Mot. 9–11.) After carefully considering Plaintiffs' request, the Court rejects this approach. As an initial matter, neither

Plaintiffs nor the Court were able to identify any cases where these sanctions were used as *spoliation* remedies. Moreover, the Court finds that Plaintiffs' request is cumbersome and may prove futile. First, it is unlikely that email service providers are storing emails that are 15 years old. (*See* Compl. ¶ 34) (alleging that fraud began in 1997). Second, Plaintiffs' sanctions request could lead to further disputes over the "proper" use of the documents produced from the Hard Drive. Accordingly, the Court will exercise its discretion to fashion a remedy proportional to the unique circumstances of this case.

To determine the appropriate sanction, the Court must sift through multiple theories and versions as to what transpired with the Hard Disc. As discussed above, while Defendants willingly revealed the existence of the Hard Drive and produced 21 discs of information, much of their explanation about the Hard Drive appears incredible. Nevertheless, because Plaintiffs have failed to provide any evidence that Defendants acted with the intent to destroy adverse information, Plaintiffs have not demonstrated that Defendants acted in bad faith. Nor have Plaintiffs established that the destruction of the Hard Drive prevented them the use of an essential or crucial piece of evidence.

Thus, Defendants' credibility is crucial to determining how harsh a sanction to impose. But they have not yet been deposed. And neither party has requested an evidentiary hearing. Nor would a hearing at this time be practical even if ordered by the Court—the parties are in the midst of conducting and preparing for overseas depositions; Derek Lewicki resides in Poland; and the District Judge recently

granted Plaintiffs' motion to disqualify counsel for the derivative defendants. Thus, the Court is left trying to evaluate Derek Lewicki's and Richard Swiech's credibility based solely on their affidavits, which the Court is reluctant to do.

Under these circumstances, the Court finds it more appropriate to let a jury evaluate Defendants' credibility at the trial, determine what transpired with the Hard Disc and decide whether to draw a negative inference by its destruction. Both Derek Lewicki and Richard Swiech will likely testify at trial. Testimony from their depositions may be offered into evidence. And the jury will hear arguments by the parties. By the time of trial, Plaintiffs may have some evidence that suggests Defendants Lewicki and Richard Swiech destroyed relevant, adverse information. Defendants will counter that (1) no evidence was lost; (2) if evidence was lost, it was not relevant; and (3) if relevant evidence was lost, it would not have been favorable to Plaintiffs. After hearing this evidence, the jury will evaluate Defendants' credibility and make a determination as to whether it should draw an adverse inference from the destruction of the Hard Drive.

Accordingly, the Court finds that a "spoliation charge" to the jury is the most appropriate way to proceed. Unlike an adverse inference charge—where the jury is *directed* to presume that the missing evidence would have been adverse to the spoliating party—a spoliation charge (sometimes known as a "permissible inference instruction") "*permits* (but does not require) a jury to *presume* that the lost evidence is both relevant and favorable to the innocent party." *Pension Comm.*, 685 F. Supp. 2d at 470; *see id.* at 471; *see also Faas*, 532 F.3d at 644 (ruling that a mandatory ad-

verse inference instruction requires a showing of bad faith). Even if the jury makes this presumption, it must consider the spoliating party's rebuttal evidence before determining whether to draw an adverse inference. *Pension Comm.*, 685 F. Supp. 2d at 470. Nevertheless, "[t]his sanction still benefits the innocent party in that it allows the jury to consider both the misconduct of the spoliating party as well as proof of prejudice to the innocent party." *Id.* at 470–71.

The spoliation charge has been used by other courts under circumstances similar to this case. For example, in *Pension Committee*, a plaintiff admitted that it destroyed backup data after the duty to preserve backup tapes was well-established. 685 F. Supp. 2d at 477. The court concluded that this conduct, together with submitting a misleading and inaccurate declaration and producing responsive documents only after a four-year delay, amounted to gross negligence. *Id.* at 488. To remedy the prejudice to the defendants, the jury was given a spoliation charge. *Id.* at 497–97.

Similarly, in *Jain*, the defendant inadvertently destroyed a video capturing the plaintiff's slip and fall, despite a clear obligation to preserve the video. 2010 WL 711328, at *1, 3. The court found that while the defendant's conduct was something less than intentional, it still warranted sanctions for spoliation. *Id.* at *4. Accordingly, the court found that a permissible inference instruction was appropriate. *Id.* at *5 ("The proposed instruction carefully instructs the jury on the factors they may consider and does not require the jury to draw any inferences at all.").

Finally, in *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 640 (S.D. Tex. 2010), the plaintiff argued that the defendants intentionally deleted adverse emails after the duty to preserve arose. The defendants responded that the emails were destroyed before the duty to preserve arose and, in any event, "would be merely cumulative of evidence already produced." *Id.* at 641 (citation omitted). Because of this conflicting evidence, the court concluded that a permissible inference instruction was appropriate:

> [B]ased on the record in this case, this court makes the preliminary findings necessary to submit the spoliation evidence and an adverse inference instruction to the jury. But the record also presents conflicting evidence about the reasons the defendants deleted the emails and attachments; evidence that some of the deleted emails and attachments were favorable to the defendants; and an extensive amount of other evidence for the plaintiff to use. As a result, the jury will not be instructed that the defendants engaged in intentional misconduct. Instead, the instruction will ask the jury to decide whether the defendants intentionally deleted emails and attachments to prevent their use in litigation. If the jury finds such misconduct, the jury must then decide, considering all the evidence, whether to infer that the lost information would have been unfavorable to the defendants. Rather than instruct the jury on the rebuttable presumption steps, it is sufficient to present the ultimate issue: whether, if the jury has found bad-faith destruction, the jury will then decide to draw the inference that the lost information would have been unfavorable to the defendants.

*Id.* at 620; *see also Mosaid Techs. Inc. v. Samsung Elec. Co.*, 348 F. Supp. 2d 332, 333, 334 (D.N.J. 2004) (finding a spoliation inference instruction appropriate where the defendant negligently failed to place a "litigation hold" on its document retention policy); *Brown*, 563 F. Supp. 2d at 1381 (finding a spoliation inference instruction appropriate where Government negligently violated its own policies and EEOC regulations by destroying plaintiff's case file prematurely).

In sum, after carefully analyzing the facts on the current record and reviewing remedies used by other courts under similar circumstances, the Court finds that the appropriate sanction is a "spoliation charge." It allows the jury—after hearing testimony and receiving evidence—to evaluate the Defendants' credibility and determine whether the destruction of the Hard Drive warrants an adverse inference. A spoliation charge "*permits* (but does not require) a jury to *presume* that the lost evidence is both relevant and favorable to the innocent party." *Pension Comm.*, 685 F. Supp. 2d 470. A spoliation charge is proportional to the Defendants' level of fault and is the least harsh sanction to remedy the prejudice suffered by Plaintiffs.

### F.  Fees

Plaintiffs also request their attorneys' fees and costs in bringing this Motion. (Mot. 15.) However, under these circumstances, the Court sees no benefit to delaying the litigation any further in order to address this issue at this time. Accordingly, the Court denies Plaintiffs' requests for fees and costs without prejudice to the request being renewed at the conclusion of the case. At that time, the Court will be in a better position to evaluate the impact of Defendants' failure to preserve the Hard Drive. *See Larson*, 2005 WL 4652509, at *15.

### G. Summary

In sum, the Court concludes that Defendants Lewicki and Richard Swiech had a duty to preserve the Hard Drive and were grossly negligent in failing to do so. The Court also concludes that Defendants' actions caused Plaintiffs prejudice by depriving them of the opportunity to have the Hard Drive forensically examined and to

possibly recover additional responsive documents. Accordingly, a spoliation charge against Defendants Lewicki and Richard Swiech is warranted.[5] The "precise contours" of the spoliation charge are best left for the District Judge after completion of discovery and input from the parties. *See Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 523 n.17 (D. Md. 2009); *Chan v. Triple 8 Palace, Inc.*, 2005 WL 1925579, at *10 (S.D.N.Y. Aug. 11, 2005).

## III. CONCLUSION

As described above, and in the concurrently filed Order, Plaintiffs' Motion for Discovery Sanctions Against Defendants [Doc. 459] is **GRANTED in part and DENIED in part**. Plaintiffs' request for fees and costs is denied without prejudice.

E N T E R :

Dated: June 8, 2012

*Nan R. Nolan*
_____
NAN R. NOLAN
United States Magistrate Judge

---

[5] For examples of spoliation instructions, *see Pension Committee*, 685 F. Supp. 2d at 496–97; *Jain*, 2010 WL 711328, at *5; *see also Rimkus Consulting*, 688 F. Supp. 2d at 646–47.