## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 4922 | **DATE** | August 13, 2012 |
| **CASE TITLE** | Domanus, et al. v. Lewicki, et al. | | |

**DOCKET ENTRY TEXT**

For the reasons provided in the Statement section of this Order, "Planitiffs' Objections to Magistrate Judge's Discovery Orders" (Dkt. No. 533) are granted, with the modifications to their request relief noted below.

■[ For further details see text below.]  Notices mailed by Judicial staff.

### STATEMENT

Plaintiffs have filed objections to two orders from Magistrate Judge Nolan, one addressing bank records Defendants failed to produce (Dkt. No. 527 ("Bank Records Order")), and one addressing Defendants' destruction of a hard drive (Dkt. No. 528 ("Hard Drive Order")). In those orders, Magistrate Judge Nolan granted in part and denied in part Plaintiffs' request for discovery sanctions. Familiarity with those orders, and all prior orders entered in this case, is presumed. For the reasons that follow, Plaintiffs' objections are granted, with the modifications to their requested relief noted below.

When a district court considers objections to a magistrate judge's rulings on non-dispositive matters, the magistrate's ruling will be set aside only if it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). Under this standard of review, "the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indust. Co., Ltd.,* 126 F.3d 926, 943 (7th Cir. 1997).

 **A.**   **Hard Drive Order**

In the Hard Drive Order, Magistrate Judge Nolan found that Defendants Richard Swiech and Derek Lewicki breached their duty to preserve evidence when they admittedly discarded a hard drive belonging to Richard Swiech despite the fact that they were only able to recover some of the documents on the drive. (Hard Drive Order, 12.) She concluded that the hard drive was destroyed in the midst of discovery, after Defendants produced some documents on it, and after Plaintiffs had requested that it be forensically inspected. (*Id.* at 15.)

Magistrate Judge Nolan acknowledged that Plaintiffs were prevented from determining the completeness of the Hard Drive production, but nonetheless found that Plaintiffs had not carried their burden to show that Defendants acted in bad faith. (*Id.* at 15–16.) This was clearly erroneous in light of Judge Nolan's finding, with which I concur, that "much of Defendants' explanation for discarding the Hard Drive is incredible." (*Id.* at 14.)

In response to Plaintiffs' motion for sanctions, Richard Swiech asserted that the hard drive crashed in

**STATEMENT**

May 2009 and was disassembled in early 2010. He then sent the hard drive to Lewicki in Poland. Before destroying it, Lewicki used a special program to recover some files, which were burned onto 21 discs. Defendants asserted that there was no reason they would have produced 21 discs of information from the hard drive if they were attempting to hide its existence and cover their tracks.

Defendants' story does not add up, however. The documents Defendants produced from the hard drive included many dated after May 2009, when the drive allegedly crashed. Richard Swiech contended that he took the drive to an Apple Store for repairs in May 2009, but the invoice he provided was dated Feb. 22, 2012. A handwritten note on the invoice stated that "Repair done 5/19/2009," but Defendants did not explain the origin of that note. Additionally, when the Defendants originally produced documents from the Hard Drive in May 2011, they asserted that the documents had just become available. But as Magistrate Judge Nolan observed, if the hard drive crashed in May 2009 and the documents were recovered in early 2010, they would have been available well before May 2011. (*Id.* at 15.) Also troublesome is the fact that the hard drive was discussed at several status conferences, and counsel for Defendants never indicated it had been destroyed two years prior. (*Id.*)

The inescapable conclusion is that Defendants destroyed evidence and lied about it. This supports Plaintiffs' contention that Defendants culled favorable documents from the hard drive, and then prevented Plaintiffs from having the opportunity to examine the drive for documents that would support their case. Manipulation of evidence in this manner constitutes bad faith. *See, e.g.*, *Rosenthal Collins Grp., LLC v. Trading Techs. Int'l, Inc.*, No. 05 C 4088, 2011 WL 722467, at *8 (N.D. Ill. Feb. 23, 2011) (finding bad faith where "the record reveal[ed] a pattern of blurring of facts, the presenting of misleading and false statements to the Court, failure to comply with discovery orders, failure to preserve evidence, and, finally, destruction of material evidence."); *Rhodes v. LaSalle Bank, N.A.*, No. 02 C 2059, 2005 WL 281221, at *3 (N.D. Ill. Feb. 1, 2005) (finding bad faith where plaintiff withheld, destroyed, or altered documents sought by defendant).

Magistrate Judge Nolan's erroneous conclusion that Plaintiffs had not established bad faith led to her finding that Plaintiffs had failed to demonstrate substantive prejudice from the destruction of the hard drive. When evidence is destroyed in bad faith, however, prejudice is presumed. *See Crabtree v. Nat'l Steel Corp.*, 261 F.3d 715, 721 (7th Cir. 2001) ("The prevailing rule [in this circuit] is that bad faith destruction of a document relevant to proof of an issue at trial gives rise to a strong inference that production of the document would have been unfavorable to the party responsible for its destruction.") (internal citations omitted). The prejudice lies in Plaintiffs' lost opportunity to test the evidence produced from the hard drive. *See Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 223–24 (7th Cir. 1992). Given this, Magistrate Judge Nolan's selected sanction — a spoliation charge that would permit but not require the jury to draw a negative inference from the destruction of the hard drive — is insufficient.

Defendants argue that Plaintiffs' requested sanctions are not rationally related to their misconduct. I disagree. Requiring Defendants to obtain relevant emails from their service providers and produce them is a reasonable sanction in light of Defendants' attempt to manipulate the evidence in this case by selectively producing certain documents on the hard drive. Similarly, Defendants cannot introduce as evidence documents they obtained from the hard drive prior to its destruction. To allow Defendants to use these documents would in effect reward them for their spoliation of evidence. *See MacNeil Auto. Prods., Ltd. v. Cannon Auto. Ltd.*, No. 08 C 139, 2011 WL 812140, at *4 (N.D. Ill. March 1, 2011) (prohibiting party that destroyed evidence regarding its manufacturing process from introducing evidence about its rate of defects).

In sum, then, I sustain Plaintiffs' objections to the Hard Drive order and: (1) order Richard Swiech and Derek Lewicki to obtain all relevant emails from their email service providers and produce them within 45 days; and (2) preclude Defendants from using as evidence all documents culled from the hard drive before they destroyed it (HC–AEI 6413–8283 and DF 1–22942.)

**B.   Bank Records Order**

In the Bank Records Order, Magistrate Judge Nolan addressed Plaintiffs' motion for discovery sanctions against Adam Swiech and Derek Lewicki for the violation of court orders requiring the production

**STATEMENT**

of certain bank records. At issue are two accounts: one controlled by Adam Swiech at Bank Julius Baer in Switzerland, and one controlled by Lewicki at HSBC Bank Polska.

*1.    Adam Swiech Baer Account*

In regard to the Adam Swiech Baer Account, Magistrate Judge Nolan found that Defendants materially violated her orders when they failed to produce any documents related to the account. (Bank Records Order, 4.) In particular, Adam Swiech failed to provide a satisfactory explanation as to his good faith efforts to produce documents related to the account. (*Id.*) Despite Judge Nolan's having explained to Adam Swiech what form a proper request to the bank should take, Swiech's subsequent request failed to identify any account numbers, his former address, or any other identifying information. (*Id.*) Defendants' contention that the account is actually controlled by Adam Swiech's son was rejected by Magistrate Judge Nolan, and as she found, provided no basis for the violation of her orders. (*Id.*)

Magistrate Judge Nolan found that Adam Swiech willfully violated three orders related to the bank records, and that Plaintiffs were prejudiced by their inability to fully track the funds they allege were looted from the KBP entities. (*Id.*) Nonetheless, rather than impose Plaintiffs' requested sanction of a daily fine until Adam Swiech produces the records, Magistrate Judge Nolan ordered that if Adam Swiech fails to produce the records by the close of discovery, an adverse jury instruction should be given explaining to the jury that it should presume the records would have been unfavorable to Defendants. (*Id.* at 5.)

I agree with Plaintiffs that this sanction is unreasonable in that it gives Adam Swiech the option of either producing the documents at the close of discovery — at which point Plaintiffs could not use them in their own discovery — or having an adverse instruction imposed. Plaintiffs allege a wide-ranging RICO scheme, and bank records are crucial to proving that scheme. Defendants should not have the option of whether and when to produce the records. Further, in light of the history of this case, and the repeated discovery violations by Defendants, escalating sanctions must remain on the table in order to ensure compliance with court orders. *See United States v. Golden Elevator, Inc.*, 27 F.3d 301, 303 (7th Cir. 1994) ("[S]anctions should be proportionate to the wrong."). For these reasons, I sustain Plaintiffs' objection to the sanction imposed against Adam Swiech in the Bank Records Order. I find Adam Swiech in contempt of court, and give him 10 days from the date of this Order to produce the Baer Account Records. If he fails to do so, he will be fined $200 a day thereafter until he produces the records. Additionally, if he fails to produce the records and is fined, I require Adam Swiech to document that the KBP entities are not funding his fine payments.

*2. HSBC Bank Records*

The second part of the Bank Records Order concerned Lewicki's obligation to produce documents related to his HSBC account. Lewicki was ordered to produce all records related to the account, including wire transfer records. Lewicki did not do so, and submitted a declaration attesting that he spoke with an HSBC representative who told him he could not obtain wire transfer confirmations, but only bank statements.

Magistrate Judge Nolan found that Lewicki complied with the court's orders, and that Plaintiffs had failed to show that the wire transfer records were available. (Bank Records Order, 5.) She based her finding largely on Lewicki's own declaration. (*Id.*)

This reliance was erroneous in light of the record as a whole. Wire transfer confirmations were produced by the other banks whose records Plaintiffs obtained in this case. Additionally, I note that while Magistrate Judge Nolan had ordered Defendants' attorney to contact HSBC himself, he instead submitted a declaration stating that he "truly and honestly believed" that the document production was complete, so he felt it unnecessary to contact HSBC anymore. (Dkt. No. 468–1, ¶ 6.) Given Defendants' history of discovery violations and dishonesty to the court in this matter, including in relation to the destruction of the hard drive, Lewicki's word is not sufficient to establish that the records do not exist.

I therefore find Lewicki to be in contempt of court, and order him to produce the HSBC records in their entirety within 10 days. I will impose a fine of $200 for non-compliance every day thereafter, with Lewicki required to show that any fine payments are not funded by the KBP entities.

**STATEMENT**

### A. Imposition of Attorney's Fees and Costs

In light of my finding that Defendants violated court orders requiring disclosure of certain information, I grant Plaintiffs' request for reasonable expenses, including attorney's fees and costs, in bringing their motion for discovery sanctions. *See* Fed. R. Civ. P. 37(b)(2)(C).

### B. Conclusion

For the foregoing reasons, I sustain Plaintiffs' objections to the Hard Drive Order, and (1) order Richard Swiech and Derek Lewicki to obtain all relevant emails from their email service providers and produce them within 45 days; and (2) preclude Defendants from using as evidence all documents culled from the hard drive before they destroyed it (HC–AEI 6413–8283 and DF 1–22942).

I also sustain Plaintiff's objections to the Bank Records Order. I impose the following sanctions: (1) I find Adam Swiech in contempt of court, and require him produce the Baer Account Records within 10 days of the date of this Order. If he fails to do so, I will impose a fine $200 a day thereafter until he produces the records. Additionally, I will require Adam Swiech to document that the KBP entities are not funding his fine payments; and (2) I find Lewicki in contempt of court, and order him to produce the HSBC records in their entirety within 10 days of the date of this Order. If he fails to do so, I will impose a fine of $200 a day thereafter until he produces the records, with Lewicki likewise required to show that any fine payments are not funded by the KBP entities. If the bank records as to both Defendants are not produced in 30 days, Plaintiffs may seek further sanctions as appropriate.