IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JON DOMANUS, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 08 C 4922** |
| **v.** | ) | |
| | ) | **Magistrate Judge Mary M. Rowland** |
| DEREK LEWICKI, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs have filed a Petition for Fees for Bringing Motions for Discovery Sanctions. For the reasons stated below, the Petition is granted in part and denied in part.

## I. BACKGROUND

### A. The Complaint

This action arises out of Plaintiffs' allegations of a complex, bicontinental racketeering and fraud scheme spanning over ten years. On August 28, 2008, Plaintiffs, who are shareholders in Krakow Business Park SP. Z O.O. ("KBP"), brought an action alleging a pattern of fraud and deceit, corporate looting and misappropriation of corporate funds, and money laundering by various individual and corporate defendants. Plaintiffs have named KBP and its wholly owned subsidiaries (the "KBP entities") as derivative defendants in this action, but seek no relief from these entities. Plaintiffs assert direct and derivative claims under 18

U.S.C. § 1962 ("RICO"), as well as liability under several common law theories including fraud, conversion, breach of fiduciary duty, tortious interference with prospective business advantage, civil conspiracy, violation of the Uniform Fraudulent Transfer Act, 740 ILCS §§ 160/1 *et seq.*, and for an accounting.

The gravamen of the Third Amended Complaint is that the direct Defendants, led by Derek Lewicki, Richard Swiech, and his brother, Adam Swiech, working with each other and with and through a host of foreign and domestic corporations that they control, engaged in a pattern of misconduct designed to rob the KBP entities of their assets, in order to finance real estate developments in suburban Chicago. The Complaint describes four types of misconduct: (1) sham contracts and payments for inadequate consideration; (2) self-dealing leases; (3) land misappropriation; and (4) construction kickbacks. Defendants reported proceeds generated by their misconduct as capital contributions by Adam Swiech, who then claimed to be the majority shareholder of KBP. These sham contributions diluted the shareholdings of Plaintiffs, who contend that they are the rightful majority shareholders of KBP, although they currently appear on the books as minority shareholders.

## B. The Discovery Motions

On February 21, 2012, Plaintiffs filed a Motion for Discovery Sanctions Against Defendants asserting that Defendants (a) deliberately destroyed a hard drive that contained relevant evidence; and (b) failed to produce relevant bank account records, in violation of three Court orders. (Dkt. 459). On June 8, 2012, in two separate orders, one addressing the destruction of the hard drive ("Hard Drive

Order"), and one addressing the failure to produce bank records ("Bank Records Order"), the Magistrate Judge granted in part and denied in part Plaintiffs' requests for discovery sanctions. (Dkt. 527, 528.) In the Hard Drive Order, the Court found that Lewicki and Richard Swiech had a duty to preserve the hard drive and were grossly negligent in failing to do so. The Court also concluded that Defendants' actions caused Plaintiffs prejudice by depriving them of the opportunity to have the hard drive forensically examined and to possibly recover additional responsive documents. Accordingly, the Court concluded that a spoliation charge against Lewicki and Richard Swiech was warranted. (Dkt. 528 at 26–27.)

In the Bank Records Order, the Court found that Lewicki had complied with the Court's orders and that no sanctions were warranted. (Dkt. 527 at 5.) However, the Court found that Adam Swiech had willfully failed to comply with the Court's orders and that Plaintiffs were prejudiced by Defendants' failure to produce documents from the Adam Swiech Baer Account. Accordingly, the Court recommended that if Adam Swiech failed to produce the Adam Swiech Baer Account records by the close of discovery, the District Judge should instruct the jury that (1) Adam Swiech failed to produce the Adam Swiech Baer Account records despite being ordered to do so; and (2) the jury should presume that if produced, the Adam Swiech Baer Account records would have been adverse to Defendants. (*Id.* 6.)

Plaintiffs filed objections to both the Hard Drive Order and the Bank Records Order. In their objections, Plaintiffs argued that Lewicki should be held in contempt

for his failure to produce certain bank records. Plaintiffs also asserted that the sanctions imposed by the Magistrate Judge were inadequate.

On August 13, 2012, the District Judge granted Plaintiffs' objections. In regards to the Hard Drive Order, the District Judge concluded that "Defendants destroyed evidence and lied about it." (Dkt. 552 at 2.) Accordingly, the District Judge (1) ordered Richard Swiech and Lewicki to obtain all relevant emails from their email service providers and produce them within 45 days; and (2) precluded Defendants from using as evidence all documents culled from the hard drive before they destroyed it. (*Id.*) In regards to the Bank Records Order, the District Judge found Adam Swiech and Lewicki to be in contempt of court and gave them 10 days to produce the bank records or face a fine of $250 a day until they produce them. (*Id.* 3.) Additionally, if either Adam Swiech or Lewicki fails to produce the records and is fined, Defendants were ordered to document that the KBP entities were not funding any fine payments. (*Id.*) Finally, the District Judge ordered: "In light of my finding that Defendants violated court orders requiring disclosure of certain information, I grant Plaintiffs' request for reasonable expenses, including attorney's fees and costs, in bringing their motion for discovery sanctions. *See* Fed. R. Civ. P. 37(b)(2)(C)." (*Id.* 4.)

## II. DISCUSSION

In their Petition, Plaintiffs seek $46,317.50 in fees they incurred in bringing their motions for sanctions, including filing two briefs before this Court and another two briefs before the District Judge. (Pet. 2.) In their objections, Defendants contend

that Plaintiffs are not entitled to fees incurred in filing their Rule 72 objections before the District Judge, and that Plaintiffs' supporting documentation provides an insufficient record of work for which they are seeking compensation. (Resp. 4–8.)

## A. Applicable Law

In seeking attorneys' fees, Plaintiffs rely on Rule 37(b)(2)(C), which provides that

> the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

"Thus, under Rule 37(c), a court has authority to sanction a party who fails to disclose information or makes misleading disclosures by awarding attorney's fees incurred by the opposing party as a result of the failure to make required disclosures." Lucy v. Jones, No. 03 C 8688, 2004 WL 2367778, at *4 (N.D. Ill. Oct. 20, 2004).

In determining the appropriate amount of attorney's fees to award, district courts enjoy wide discretion. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999). In *Hensley v. Eckerhart*, 461 U.S. 424 (1982), the Supreme Court observed that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." 461 U.S. at 433; *accord Spegon*, 175 F.3d at 550. This calculation is commonly referred to as the "lodestar." *Spegon*, 175 F.3d at 550.

The party seeking the fee award bears the burden to prove the reasonableness of the number of hours and the hourly rates claimed. *See Hensley*, 461 U.S. at 433. In

determining the award, the Court must "exclude from this initial fee calculation hours that were not 'reasonably expended'" on the litigation. *Id.* at 434. The Court may then increase or reduce the modified lodestar amount by considering a variety of factors, *see id.* at 434–35, the most important of which is the "degree of success obtained," *id.* at 436; *accord Spegon*, 175 F.3d at 550. With these principles in mind, the Court turns to Plaintiffs' request for fees.

## B. Fees for Filing Rule 72(a) Objections

Plaintiffs have requested fees for their expenses in filing their motion for sanctions and their objections to the Hard Drive Order and the Bank Records Order. (Pet. 2, 4.) Defendants contend that Plaintiffs are entitled only to the fees associated with bringing their motion for sanctions because, (1) Defendants' purported discovery abuses did not cause Plaintiffs to file their objections; (2) the District Judge's order refers only to the costs of bringing Plaintiffs' motion for sanctions, not for bringing their objections to this Court's orders; and (3) Rule 72 does not provide for an award of attorney's fees. (Resp. 4–7.) The Court is not persuaded by Defendants' arguments.

Defendants' attempt to divert attention away from their repeated discovery abuses are unavailing. It was Defendants' conduct—not the Magistrate Judge's "clearly erroneous" orders—that led the District Court to the "inescapable conclusion" that "Defendants destroyed evidence and lied about it." (Dkt. 552 at 2). If Defendants had not destroyed the hard drive and then lied about it and had complied with Judge Nolan's three previous orders requiring production of the bank

records (Dkt. 297, 448, 450), neither the motion for sanctions nor the Rule 72 objections would have been necessary. In further aggravation, in the period after the Magistrate Judge issued the Bank Records Order but before Plaintiffs filed their Rule 72 objections, Defendants again failed to produce the Adam Swiech Baer Account documents. If Defendants had complied promptly with the Bank Records Order, they would have obviated, at least in part, Plaintiffs' need to file their Rule 72 objections.

Next, Defendants argue that the plain language of the District Judge's order contemplates awarding fees only for the cost of bringing Plaintiffs' sanctions motion; it makes no mention of awarding fees related to Plaintiffs' objections. (Resp. 4.) The Court is not inclined to draw such a narrow interpretation of the District Judge's order. The District Court found bad faith and egregious misconduct by Defendants, so much so that it concluded that "escalating sanctions must remain on the table in order to ensure compliance with court orders." (Dkt. 552 at 3.) Denying fees on the Rule 72 motion is not consistent with the findings of the District Court. Moreover, the case law concerning the amount of fees to award mandates a court to consider a number of factors, the most important factor of which is the "degree of success obtained." *Hensley*, 461 U.S. at 438. While the Magistrate Judge found that sanctions were warranted, Plaintiffs were not satisfied with the remedy ordered. As is their right, Plaintiffs objected and sought the remedy they believed the facts warranted. The District Court agreed and granted Plaintiffs the full relief they

sought. (Dkt. 552 at 1, 4.) The litigation required for Plaintiffs to obtain the success they achieved is, logically, the starting point for calculating the lodestar.

Finally, Defendants contend that Rule 72 does not contemplate an award of attorney's fees for raising successful objections. (Resp. 5.) Unlike Rule 37, Rule 72(a) does not explicitly provide for an award of attorney's fees to a party. However, as this Court has found in a similar situation:

> If only the original motion to compel were compensable, the fee-shifting provision of Rule 37 would have little effect. A motion for reconsideration that attacks the original motion to compel could cost as much or more as the original motion itself; limiting the fees to the original motion, therefore, would not "deter a party from pressing to a court hearing frivolous requests for or objections to discovery."

Catapult Comm'ns Corp. v. Foster, No. 06 C 6112, 2009 WL 2707040, at *2 (N.D. Ill. Aug. 25, 2009) (quoting Fed. R. Civ. P. 37(a)(4), advisory committee's notes (1970)).

Further, through its inherent powers, "a court may assess attorneys' fees for the willful disobedience of a court order . . . when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258–59 (1975). This inherent power "must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *see Maynard v. Nygren*, 332 F.3d 462, 470 (7th Cir. 2003) ("the assessment of fees against counsel under the inherent powers of the court is permitted only when there is a finding of willful disobedience or bad faith.") (citing *Chambers*, 501 at 43; *Roadway Express v. Piper*, 447 U.S. 752, 755–56 (1980)); *Campbell v. Microsoft Corp.*, No. 04-2060, 2006 WL 463263, at *4 (D.D.C. Feb. 24, 2006) ("While a district court has some discretion to award costs, that discretion should be exercised only

when a party's inappropriate conduct meets the high threshold of bad faith."). Here, the District Judge explicitly found that Defendants acted in bad faith by destroying the hard drive and then lying about it. (Dkt. 552 at 2.) The District Judge also found Defendants in contempt of court for willfully violating court orders related to producing the bank records. (*Id.* 3.) These are precisely the circumstances where awarding Plaintiffs their attorney's fees for filing both their motion for sanctions and their Rule 72 objections is appropriate.

Defendants argue that "even where the *sanctioned* party objects to Rule 37 sanctions under Rule 72, each side is responsible for paying its own costs for arguing the objections." (Resp. 5.) Defendants' cases do not support their argument. None of them address whether fees are recoverable where a party files both a discovery motion and Rule 72 objections. For example, in *Maynard*, the Seventh Circuit ruled that Rule 37 does not apply to sanctions for filing a baseless complaint. 332 F.3d at 471. Similarly, in *Lucy*, this Court ruled that defendants were not entitled to "all of the attorney's fees expended in defending this case" as a Rule 37 sanction. 2004 WL 2367778, at *5. *Royal Maccabees Life Insurance Co. v. Malachinski*, No. 96 C 6135, 2001 WL 290308 (N.D. Ill. March 20, 2001), did not address fees for filing Rule 72 objections; instead, it merely ordered the parties to conduct a good faith meet and confer to agree on fees that should be awarded prior to plaintiff filing its fee petition. *Id.* at *23. Finally, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990), observed that the Federal Rule of Civil Procedure 11 does not apply in appellate proceedings. *Id.* at 406.

In sum, Plaintiffs are entitled to their reasonable expenses in filing both their briefs in support of their motion for sanctions and their briefs with the District Judge in support of their objections to the Hard Drive Order and the Bank Records Order.

## C. Lodestar

Defendants do not object to the hourly rate claimed by Plaintiffs' counsel. (Resp. 7.) Instead, Defendants contend that the hours expended are excessive, the supporting documents contain "only vague references to the activities being performed," and the paralegal hourly rates are unreasonable. (*Id.* 7–8.) The Court disagrees.

With regard to the number of hours expended, Defendants sole argument is that Plaintiffs' counsel spent 108.8 hours generating approximately 70 pages of pleadings, which results in an average of $661.67 per page. (Resp. 7.) Without citing to any precedent, Defendants conclude that this fee per page "can hardly be called a 'reasonable' figure under Rule 37." (*Id.*) The Court knows of no authority for conducting a price-per-page analysis and does not find the proposal helpful.

Counsel spent 29.4 hours drafting their motion for sanctions and 18 hours drafting the reply in support of sanctions. The Court finds these hours to be reasonable, even efficient, given the factual and legal complexity of the motions to compel. The sanctions motion contained a lengthy factual recitation of Defendants' conduct, citations to several court orders and transcripts, and a lengthy affidavit in

support with 14 attachments establishing the efforts by counsel to assure compliance with discovery.[1]

On the other hand, the Court finds that 41.7 hours spent drafting the Rule 72 objections, as compared to the 29.4 hours drafting the sanctions motion, is excessive. Given that the factual background for the objections should have been largely lifted from Plaintiffs' motion for sanctions and that parties are precluded from raising new arguments in Rule 72(a) objections, *see State Farm Mut. Auto. Ins. Co. v. CPT Medical Servs., P.C.*, 375 F. Supp. 2d 141, 158 (E.D.N.Y. 2005) (district court precluded from considering additional evidence that was not presented to the magistrate judge in regard to a nondispositive motion);*Jordan v. Tapper*, 143 F.R.D. 567, 570 (D. N.J. 1992) (parties should raise any and all arguments before the magistrate judge and not wait to raise new arguments before the district court), the Court finds that the Rule 72 objections brief should have taken no more than 25 hours of attorney time. The Court believes the 18 hours spent on the reply in support of the Rule 72 objections to be reasonable. In sum, the Court deducts 15.1 hours at an average attorney rate on the objections brief of $435 per hour, or $6,568.50, from Plaintiffs' fee request.

Next, Defendants challenge Plaintiffs' billing records as unreasonably vague. (Resp. 7.) But Defendants have not provided any *specific* objections other than commenting that Plaintiffs' "entries may be broken down into a handful of general

---

[1] Plaintiffs do not appear to be seeking fees for time presenting their motions to the court.

categories—descriptions like 'drafting,' 'research,' 'editing,' and 'revising.'" (*Id.*) "The standard for determining whether hours are adequately documented is whether the time records 'taken in context' enable the reviewing court to identify 'the substance of the work done.'" *Krislov v. Rednour*, 97 F. Supp. 2d 862, 870 (N.D. Ill. 2000) (Bucklo, J.) (quoting *Berberena v. Coler*, 753 F.2d 629, 634 (7th Cir. 1985)); *see Hensley*, 461 U.S. at 437 n.12 (Counsel "is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures."). Here, the Court finds that the billing records submitted by Plaintiffs clearly identify "the substance of the work done" in connection with filing the motion for sanctions briefs.

Finally, Defendants contend that "Plaintiffs have not explained what, exactly, qualifies their paralegals to charge rates in excess of $110 per hour." (Resp. 8.) The determination of a "reasonable hourly rate" is based on the "market rate" for the services rendered. *Spegon*, 175 F.3d at 554. The "actual billing rate for comparable work is presumptively appropriate to use as the market rate." *Id.* at 555 (citation omitted). Here, the paralegal hourly rates "are the rates customarily charged by the firm . . . in this and comparably complex cases." (Clayton Decl. ¶ 8.) Moreover, other courts in this market have found paralegal rates in excess of $110 reasonable in this market. *See, e.g.*, *United Cent. Bank v. Kanan Fashions, Inc.*, No. 10 CV 331, 2012 WL 1409245, at *2–3 (N.D. Ill. April 23, 2012) (paralegal rate of $125 per hour found reasonable); *Tate v. Ancell*, No. 08-0200, 2012 WL 2521614, at *2, *6 (S.D. Ill. June 28, 2012) (paralegal rate of $185.17 per hour found reasonable).

In sum, with the exception of the hours deducted with respect to filing the Rule 72 objections brief, all hours requested in connection with filing the motions that resulted in the relief Plaintiffs were seeking will be allowed.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Petition for Fees for Bringing Motions for Discovery Sanctions [Dkt. 571] is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs are awarded $39,749.00 in fees.

E N T E R:

Dated: November 5, 2012

_____
MARY M. ROWLAND
United States Magistrate Judge