# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

JON DOMANUS, *et al.*,

Plaintiffs,

v.

DEREK LEWICKI, *et al.*,

Defendants.

No. 08 C 4922

Magistrate Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiffs have moved to compel the production of documents withheld pursuant to the attorney-client privilege by Defendants. For the reasons stated below, the Motion is granted in part and denied in part. Defendants shall produce all of the communications and documents described on the privilege log by December 21, 2012.

## I. BACKGROUND

This action arises out of Plaintiffs' allegations of a complex, bicontinental racketeering and fraud scheme spanning over ten years. On August 28, 2008, Plaintiffs, who are shareholders in Krakow Business Park Sp.z o.o. ("KBP"), brought an action alleging a pattern of fraud and deceit, corporate looting and misappropriation of corporate funds, and money laundering by various individual and corporate defendants. Plaintiffs have named KBP and its wholly owned subsidiaries (the "KBP Entities") as derivative defendants in this action, but seek no relief from these entities.

Plaintiffs assert direct and derivative claims under 18 U.S.C. § 1962 ("RICO"), as well as liability under several common law theories including fraud, conversion, breach of fiduciary duty, tortious interference with prospective business advantage and civil conspiracy.

The gravamen of the Third Amended Complaint is that the direct Defendants, led by Derek Lewicki, Richard Swiech, and his brother, Adam Swiech, working with each other and with and through a host of foreign and domestic corporations that they control, engaged in a pattern of misconduct designed to rob the KBP Entities of their assets, in order to finance real estate developments in suburban Chicago. The KBP Entities are controlled by Defendants Richard Swiech and Bozena Sanecka-Swiech, along with Defendant Adam Swiech's wife, Alicja Gostek-Swiech. The Complaint describes four types of misconduct: (1) sham contracts and payments for inadequate consideration; (2) self-dealing leases; (3) land misappropriation; and (4) construction kickbacks. Defendants reported proceeds generated by their misconduct as capital contributions by Adam Swiech, who then claimed to be the majority shareholder of KBP. These sham contributions diluted the shareholdings of Plaintiffs, who contend that they are the rightful majority shareholders of KBP, although they currently appear on the books as minority shareholders.

The direct Defendants are represented solely by Fuksa Khorshid, LLC. In October 2011, Locke Lord LLP appeared on behalf of the KBP Entities, the derivative defendants. In February 2012, Plaintiffs sought to disqualify Locke Lord, arguing that it was violating the Rule of Corporate Neutrality by siding with the direct De-

fendants in this litigation. On May 29, 2012, the District Court granted Plaintiff's motion, finding that Locke Lord and the KBP entities had violated the Neutrality Rule. (Dkt. 520 at 12–16). The Court stated that because the KBP Entities are the real party in interest, they may not participate in this action on the merits unless the lawsuit threatens rather than advances the KPB Entities' interest. (*Id.* 5). Judge Bucklo also found that the direct Defendants improperly influenced the KBP Entities' handling of this matter, and that the KBP Entities were violating their obligation to remain neutral. (*Id.* 9–12). Accordingly, she disqualified Locke Lord as the KBP Entities' counsel. (*Id.* 2, 16–17).

On July 23, 2012, Plaintiffs served Defendants with document requests seeking:

> 1) All communications (whether direct or indirect) between any Defendant and any person employed by or associated with the law firm Locke Lord LLP.
>
> 2) All documents that any Defendant (directly or indirectly) provided to or showed to any person employed by or associated with the law firm Locke Lord LLP.
>
> 3) All documents that any person employed by or associated with the law firm Locke Lord LLP, . . . provided to or showed to any Defendant (whether directly or indirectly).

(Dkt. 604-1, Ex. B). Defendants responded to each request with the same objections: "Defendants object to this request because it seeks documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object on the basis that the request seeks privileged information." (*Id.* Ex. C). Defendants did not produce any documents, and despite the claim of privilege, failed to provide a privilege log. (*Id.* ¶ 4).

On October 16, 2012, Plaintiffs filed a Motion to Compel, arguing that the requested discovery is both relevant and not subject to any claims of privilege. (Dkt. 602 at 6–8). Plaintiffs also request an award of fees and costs for bringing their motion. (*Id.* 8–9). On October 26, 2012, Defendants filed a response, and on October 29, 2012, Plaintiffs filed their reply.

At a hearing on October 30, 2012, the Court found the requested information relevant and ordered Defendants to produce a privilege log. On November 9, 2012, Defendants produced a privilege log and filed a supplemental response to the motion. On November 16, 2012, Plaintiffs filed a supplemental reply.

## II. DISCUSSION

### A. Applicable Law

The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice. Without that frankness, sound legal advice is impossible, and without informed advice, the ultimate goal of the attorney-client privilege is unattainable." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *see Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 144 Ill. 2d 178, 190, 579 N.E.2d 322, 326–27 (1991) ("The purpose of the attorney-client privilege is to encourage and promote full and frank consultation between a client and legal advisor by removing the fear of compelled disclosure of information.") (citation omitted). "However, since the privilege has the effect of withholding relevant information from the fact-finder, it applies only where necessary to

achieve its purpose. Accordingly it protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976). Thus, "because the privilege is in derogation of the search for the truth, it is construed narrowly." *Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir. 2007) (citation omitted); *see United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983) (scope of privilege should be "strictly confined within the narrowest possible limits"); *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 272 (N.D. Ill. 2004) ("The Illinois Supreme Court has . . . stated that it is the attorney-client privilege, not the duty to disclose, that is the exception and, therefore, the privilege ought to be strictly confined within its narrowest possible limits.") (citation omitted).

It is well-settled that, under some circumstances, the attorney-client privilege may be waived. For example, the privilege is waived when information is shared with third parties. "Thus, ordinarily, statements made by a client to his attorney in the presence of a third person do not fall within the privilege . . . because the presence of the third person is normally unnecessary for the communication between the client and his attorney." *Jenkins*, 487 F.3d at 490; *see Dexia*, 231 F.R.D. at 272 (under Illinois law, "the attorney-client privilege is generally waived when documents are disclosed to third parties"). "This is so despite the client's subjective intention not to waive the privilege." *Pampered Chef v. Alexanian*, 737 F. Supp. 2d 958, 964 (N.D. Ill. 2010); *see Jenkins*, 487 F.3d at 490 (the presence of a third party

defeats the privilege "even when the client wishes the communication to remain confidential").

There is an exception to the waiver of the privilege "[w]here a client communicates with his attorney in the presence of a third person who shares either [*sic*] a common legal interest, the attorney-client privilege is not waived as to the information that is exchanged." *Pampered Chef*, 737 F. Supp. 2d at 964; *see Dexia*, 231 F.R.D. at 273 ("The legal principles governing application of the common interest doctrine appear to be the same under Illinois and federal law."). "The 'common interest' or 'joint defense' doctrine generally allows a defendant to assert the attorney-client privilege to protect his statements made in confidence not to his own lawyer, but to an attorney for a co-defendant for a common purpose related to the defense of both." *United States v. Evans*, 113 F.3d 1457, 1467 (7th Cir. 1997) (citation omitted). However, the common interest doctrine is limited to those circumstances where the parties have an identical—not merely similar—legal interest and the communication is made to further the ongoing, common interest. *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815–16 (7th Cir. 2007); *accord Pampered Chef*, 737 F. Supp. 2d at 964; *see United States v. Schwimmer*, 892 F.2d 237, 243–44 (2d Cir. 1989) (The rule protects "the free flow of information from client to attorney . . . whenever multiple clients share a common interest about a legal matter."). Although the common interest doctrine originally developed in criminal cases, today the doctrine applies broadly in civil cases, encompassing "communications made in the presence of third parties where the parties are coordinating a defense strategy

or pooling information for a common legal purpose." *Pampered Chef*, 737 F. Supp. 2d at 965; *see BDO Seidman*, 492 F.3d at 816; *Schwimmer*, 892 F.2d at 243–44; *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990) (collecting cases).

**B. Analysis**

Defendants contend that their communications with Locke Lord are protected from disclosure by the attorney-client privilege and the common interest doctrine. (Dkt. 636 at 2–5). They argue that Defendants' subjective belief was that their communications with Locke Lord were privileged based on the topics of the communications and the representations made by Locke Lord. (*Id.* 3–4). They also assert that their communications with Locke Lord were in furtherance of a common interest with the KBP Entities. (*Id.* 4–5).

### *1. Business Records and Photograph Are Not Privileged*

The final five entries on the privilege log—a photograph of the shareholders of the corporation and board meeting minutes—are simply not privileged. These documents should have been produced to Plaintiffs long ago. *See Allendale Mut. Ins. Co v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 137 (N.D. Ill. 1993) ("[W]here documents or conversations are created pursuant to business matters, they must be disclosed."). As the Court reminded counsel at the October 30 hearing, merely sharing information with a lawyer does not make it privileged. *See id.* at 138 ("information does not become privileged simply because it came from counsel"). The inclusion of these documents on the privilege log borders on sanctionable conduct.

### *2. The Attorney-Client Privilege Has Been Waived*

According to the Defendants' privilege log, all but one communication with Locke Lord and all of the documents were authored by or sent to either Derek Lewicki or Adam Swiech. (*See* Dkt. 638, Ex. A). Locke Lord represented only the KBP Entities; it never represented an individual Defendant. (Dkt. 432–34) (entering appearances). Defendant Derek Lewicki has no relationship with the KBP Entities, and Defendant Adam Swiech is merely a KBP shareholder. Thus, because each document and all but one of the communications were shared with third parties, the attorney-client privilege as to these items has been waived.

### *3. The Common Interest Doctrine Does Not Apply*

The lone communication not shared with a third party is an email from Richard Swiech to Locke Lord dated September 8, 2011. (*See* Dkt. 638, Ex. A, No. 11). Because Richard Swiech is an officer of the KBP Entities and thus legally responsible for their operations, he arguably had an attorney-client relationship with Locke Lord, as the KBP Entities' counsel. The Defendants' supplemental reply relies heavily on the common interest doctrine. However, because the direct Defendants are accused of defrauding the KBP Entities, they do not share a common legal interest. Thus, it was not reasonable for Richard Swiech to believe that his communications with Locke Lord were for the purpose of seeking informed legal advice such that they would be protected from disclosure by the attorney-client privilege.

On May 29, 2012, the District Court explicitly found that any cooperation between the direct Defendants and the KBP Entities, which were being represented

by Locke Lord, violated the Neutrality Rule. (Dkt 520 at 12–16). The Neutrality Rule bars derivative defendant corporations, like the KBP Entities, from participating in a derivative action on the merits where the corporation's management or controlling shareholders, like the direct Defendants here, are accused of defrauding the corporation. (*Id.* 5.) Thus, the direct Defendants and the KBP Entities do not have an identical legal interest and could not have been engaged in "actual cooperation toward a common legal goal." *Dexia*, 231 F.R.D. at 274; *see also Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 219 F.R.D. 396, 402 (E.D. Tex. 2003) (refusing to extend the common interest doctrine to shareholder derivative lawsuits).

Despite this very clear ruling from the Court, Defendants argue that the common interest doctrine gave rise to a subjective belief that their communications with Locke Lord were privileged.[1] (Dkt. 636 at 2–4). Defendants cite *Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311 (7th Cir. 1978), for the proposition that "the privilege for attorney-client communications hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice." *Id.* at 1319 (citation omitted). But *Westinghouse* merely addresses the narrow circumstances under which an implied attorney-client relationship has been established. *Id.* at 1319–20. *Westinghouse* does not discuss under

---

[1] Even if the direct Defendants had a reasonable basis, at some point, to believe a common interest existed, they were on notice as early as October 13, 2011, when Plaintiffs filed their Response to Derivative Defendants' Motion for Leave to File Appearance of New Counsel, that the Neutrality Rule proscribes any cooperation between the direct Defendants and the KBP Entities. (Dkt. 428 at ¶¶ 3–4). Nevertheless, Defendants' privilege log contains many documents that postdate not only the Plaintiffs' warning but also the District Court's disqualification ruling on May 29, 2012. (*See* Dkt. 638, Ex. A).

what circumstances, if any, an "implied" common legal interest would create an attorney-client privilege. In any event, an implied attorney-client relationship exists only if the client's subjective beliefs are reasonable. *United States v. Keplinger*, 776 F.2d 678, 701 (7th Cir. 1985) ("[W]e think no individual attorney-client relationship can be inferred without some finding that the potential client's subjective belief is minimally reasonable.").

Here, it is simply not reasonable for the direct Defendants to believe they have a common legal interest with the very entities they are accused of defrauding. *See In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1188 (N.D. Cal. 1993) ("there is a substantial body of authority proscribing dual representation of corporate and individual defendants in a derivative action"); *Cannon v. U.S. Acoustics Corp.*, 398 F. Supp. 209, 216 (N.D. Ill. 1975), *rev'd on other grounds*, 532 F.2d 1118 (7th Cir. 1976) ("a conflict of interest is inherent in any (derivative) action wherever relief is sought on behalf of the corporation against the individual director-officer defendants") (citation omitted); *see also In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 922 (8th Cir. 1997) (finding that First Lady's conversations with her private attorney and attorneys from the Office of Counsel to the President were not protected by the common-interest doctrine; although Ms. Clinton may have had a reasonable belief that her conversations were privileged, the attorney-client privilege did not apply because the White House, as an institution, did not share a common interest with Ms. Clinton, an individual official being investigated for possible wrong-doing).

Furthermore, and unlike the *Westinghouse* parties, Defendants have not submitted any evidence supporting their assertion that, despite the clear requirements of the Neutrality Rule, they held a "subjective" belief that the common interest doctrine would apply. Instead, they rely on a boilerplate footer in Locke Lord emails that messages were "privileged, confidential and exempt from disclosure." (Dkt. 636 at 3). But these generic, boilerplate footers, which likely appear in every Locke Lord email, no matter its content, cannot confer privilege, especially where the rule of corporate neutrality clearly precludes it. *See Oracle Am., Inc. v. Google, Inc.*, No. 10-3561, 2011 WL 3794892, at *4 (N.D. Cal. Aug. 26, 2011) ("Boilerplate designations do not mechanically confer privilege.").

### III. CONCLUSION

For the reasons described above, Plaintiffs' Motion to Compel Defendants to Produce Documents [602] is GRANTED IN PART AND DENIED IN PART. Defendants shall produce all of the communications and documents described on the privilege log by December 21, 2012. Plaintiffs' request for fees and costs is denied.

E N T E R:

Dated: December 14, 2012

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge