```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION
```

| | |
|---|---|
| **JAN DOMANUS and ANDREW KOZLOWSKI,** both individually and derivatively on behalf of KRAKOW BUSINESS PARK SP.Z O.O.,KRAKOW BUSINESS PARK SP. Z O.O., KBP-1 SP. Z O. O., KBP-2 SP. Z O.O., KBP-3 SP. Z O. O., KBP-5 SP. Z O.O., KBP-6 SP. Z O.O., KBP-7 SP. Z O.O., KBP-8 SP. Z O.O., and KBP-11 SP. Z O. O.<br><br>    Plaintiffs,<br><br>  v.<br><br>**DEREK LEWICKI, KATARZYNA SZUBERT-LEWICKI, RICHARD SWIECH, BOZENA SANECKA-SWIECH, ADAM SWIECH, SPECTRUM COMPANY, LTD., ORCHARD MEADOWS HOMES, INC., ORCHARD MEADOWS HOMES, LLC, ORCHARD MEADOWS, LLC, LAKE RIDGE TOWNHOMES CORP., LAKE RIDGE, LLC, POLCON CONSTRUCTION CORP., PROTORIUS, LTD., SAXELBY ENTERPRISES, LTD., and ADR ENTERPRISES, INC.,**<br><br>    Defendants,<br><br>and<br><br>**KRAKOW BUSINESS PARK SP. Z O.O., KBP-1 SP. Z O. O., KBP-2 SP. Z O.O., KBP-3 SP. Z O. O., KBP-5 SP. Z O.O., KBP-6 SP. Z O.O., KBP-7 SP. Z O.O., KBP-8 SP. Z O.O., and KBP-11 SP. Z O. O.**<br>    Derivative Defendants. | No. 08 C 4922 |

**MEMORANDUM OPINION AND ORDER**

Years of struggle through the protracted and intensely litigated discovery in this case (one of the oldest still pending on my docket) have convinced plaintiffs that months after the close of discovery, defendants Adam Swiech, Richard Swiech, and Derek Lewicki have not produced--and are unlikely ever to produce--all of the evidence to which plaintiffs are entitled under the Federal Rules of Civil Procedure. In the motion now before me, plaintiffs argue that the only appropriate sanction at this juncture for the serious and ongoing discovery abuses committed by these defendants is a default judgment against them on each of the plaintiffs' claims. I agree that "enough is enough," *Pyramid Energy, Ltd. v. Heyl & Patterson, Inc.*, 869 F.2d 1058, 1062 (7th Cir. 1989), and for the reasons that follow (and others that merely reinforce the appropriateness of the relief plaintiffs seek and need not be addressed individually), I grant plaintiffs' motion.

I.

Over the course of this litigation, the origins and twists of which have been chronicled in numerous opinions--some lengthy, others succinct--by me and by the two magistrate judges who have presided over discovery (familiarity with all of which I presume for present purposes), an unmistakable pattern has emerged. That pattern is one of ongoing discovery misconduct by defendants, plainly calculated to obstruct the orderly resolution of

plaintiffs' claims on the merits. Multiple orders compelling discovery have gone unheeded, including my August 13, 2012, sanctions order, which, in addition to ordering discovery, also held Adam Swiech and Derek Lewicki in contempt of court for their contumacious conduct and imposed sanctions of $200 per day on each of them for as long as the conduct persisted. None of these previous orders has evidently sufficed, alone or collectively, to secure compliance with rules designed to ensure the efficient and orderly resolution of civil claims in federal court.[1]

To review, plaintiffs allege "that the individual defendants, working with each other and with and through a host of foreign and domestic corporations that they control, engaged in a pattern of misconduct designed to rob KBP of its assets, which defendants then misappropriated for themselves, and used, among other things, to wrest control and ownership of KBP from plaintiffs." *Domanus v. Lewicki*, 779 F. Supp. 2d 739, 744 (N.D. Ill. 2011) ("*Domanus I*")(denying various motions to dismiss). The complaint alleges four distinct types of misconduct, describes specific transactions representative of each, explains how the alleged wrongdoing supports plaintiffs' RICO claims, and identifies the separate

---

[1] Defendants acknowledge that they have not produced the discovery required by my sanctions order, and they do not dispute that neither the monetary sanctions I imposed, nor the attorneys' fees Magistrate Judge Rowland later awarded plaintiffs in connection with the sanctions motion, has been paid. *See* DN 634. These failures amount to separate and additional violations of court orders.


counts of their claim for relief. The complaint, I concluded, presented a story that was "cogent and plausible." *Id*. at 745.

Since that time, I have observed that plaintiffs have marshaled "significant evidence," despite defendants' evasive discovery, to support their RICO and state claims, *Domanus v. Lewicki*, 857 F. Supp. 2d 719, 721 (N.D. Ill. 2012) ("*Domanus II*")(granting preliminary injunction), and indeed have concluded that the evidence was sufficient to warrant a preliminary injunction restraining Adam Swiech from executing certain transactions as a KBP shareholder that plaintiffs argued would have amounted to the "culmination" of defendants' alleged scheme. *Id*. Of course, to win their preliminary injunction, plaintiffs had to prove a likelihood of success on the merits of their case. *Id*. at 723. Although defendants objected to plaintiffs' request for a preliminary injunction on several grounds, they essentially conceded that plaintiffs had met their burden on this element of their claim, *id*. at 724 and n. 3 (noting that defendants did not dispute that "extensive evidence" plaintiffs offered easily surpassed the likelihood of success standard, and observing that defendants "offer no response whatsoever to plaintiffs' well-substantiated position" on this element of their claim), and they declined the opportunity for an evidentiary hearing. *Id.* at 721.

Indeed, defendants' insistence, now, that they are anxious to have this case decided on its merits--the trial of which, they are

adamant, will reveal "a side of this case that the Court has not yet seen"--is belied by their unbroken failure, until now, to present any evidence of such a story, much less any evidence to rebut the substance of plaintiffs' allegations, at any of the junctures at which such a proffer might have been expected. *Id.; See also Domanus v. Lewicki*, --- F. Supp. 2d ---, 2012 WL 1932840, at *6 and n. 4 (N.D. Ill. May 29, 2012) ("*Domanus III*") (denying derivative defendants' motion to file a cross-claim against plaintiffs, noting that the motion filed by derivative defendants' counsel--which I disqualified, in the same order, on the ground that counsel was pursuing the direct defendants' interest in violation of the neutrality rule--offered "no evidence that reasonably supports their allegations, which, in some instances, are belied by affirmative evidence in the record.")

Now, with their backs to the wall, and, as discussed below, no meaningful response to their undisputed, ongoing discovery violations, defendants submit a handful of documents they claim substantiate the long-heralded "other side" to plaintiffs' story. Defendants attach, for example, an excerpt from a document apparently drafted by plaintiff Kozlowski, which they assert, without any reasoned analysis, reveals plaintiffs' "scheme" to effect a hostile takeover of KBP. Even assuming, however, that this document reveals the existence of such a "scheme," (which scheme, I note, is not apparently unlawful *per se*, and defendants'

conclusory discussion of it does not identify any law it allegedly violates), defendants do not explain how the evidence constitutes a defense to the unlawful conduct plaintiffs assert. And finally, even if I assume that defendants' bare bones evidentiary proffer supports their argument that plaintiffs are themselves involved in an unlawful scheme to take over KBP, I would nevertheless be at a loss--as would an eventual jury--to evaluate fairly the parties' competing stories, since defendants' persistent discovery violations have left irreparable holes in the factual record. That is the problem at the heart of plaintiffs' motion, and the one to which I now turn.

## II.

"The judicial system is premised on the honest, good faith efforts of the parties involved. ... Where honesty is replaced with falsehood, a party's right to litigate comes into question." *Rosenthal Collins Grp., LLC v. Trading Techs. Int'l, Inc.*, No. 05 C 4088, 2011 WL 722467, at *6 (N.D.Ill. Feb.23, 2011)(Johnson, J.) (citations omitted). Indeed, "[l]awyers and litigants who decide they will play by the rules of their own invention will find that the game cannot be won." *Id.* (quoting *Nw. Nat'l Ins. Co. v. Baltes*, 15 F.3d 660, 663 (7th Cir. 1994). Litigants who abuse the judicial process, for example by flouting court orders and ignoring lesser sanctions, should not be surprised to find themselves facing a default judgment. *See Profile Gear Corp. v. Foundry Allied*

6

*Indus., Inc.*, 937 F. 2d 351, 352 (7th Cir. 1991)("For a long time courts were reluctant to enter default judgments, and appellate courts were reluctant to sustain those that were entered.... Those times are gone." (quoting *Metropolitan Life Insurance Co. v. Estate of Cammon*, 929 F.2d 1220, 1224 (7th Cir. 1991) (ellipses in original)).

Rule 37 of the Federal Rules of Civil Procedure specifically authorizes courts to issue a default judgment against a party who fails to obey a discovery order, Fed. R. Civ. P. 37(b)(2)(B)(vi), or fails to attend its own deposition. Fed. R. Civ. P. 37(d)(3). In addition, the inherent power of federal courts "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases" encompasses "the ability to fashion an appropriate sanction for conduct which abuses the judicial process," as well as the "power to punish for contempts." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991).[2] Although a default judgment is indeed considered "draconian," *Maynard v. Nygren*, 332 F.3d 462, 468 (7th Cir. 2003), it is warranted "when there is a clear record of delay or contumacious conduct, or when other, less drastic sanctions have proven unavailing." *Id*. Moreover, a default

---

[2]*Chambers* also acknowledged that courts may, in the exercise of their inherent powers, assess attorneys fees against a party that "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order."

7

judgment is an appropriate discovery sanction against a party who has shown "bad faith, willfulness, or fault." *Id*. at 467.

In considering a motion for default judgment, I must consider the egregiousness of the conduct established, *Barnhill v. U.S.*, 11 F.3d 1360, 1368 (7th Cir. 1993), and "weigh not only the straw that finally broke the camel's back, but all the straws that the recalcitrant party piled on over the course of the lawsuit." *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 643 (7th Cir. 2011).

Many of the discovery abuses on which plaintiffs rely were the subject of my August 13, 2012, sanctions order. In that order, I addressed defendants' continued failure to produce certain bank records that had been the subject of multiple judicial orders compelling production beginning in 2010.[3] I concluded that defendants had "willfully violated three orders" related to these records, and, because I found that neither Adam Swiech nor Derek Lewicki had made a good faith effort to obtain the records, I held each of them in contempt of court, and again ordered them to produce the records under penalty of daily monetary sanctions for non-compliance.

I also addressed defendants' destruction of a hard drive "in the midst of discovery," after producing selected items removed from it, and concluded that Richard Swiech and Lewicki had acted in

---

[3]These orders are found at DN 297 and DN 449 of this docket.

bad faith. Specifically, I found that they "destroyed evidence and lied about it." As a sanction for their manipulation of evidence, I ordered defendants to "obtain all relevant emails from their email service providers and produce them within 45 days."

Defendants acknowledge that they have not complied with any aspect of my August 13, 2012, sanctions order, insisting that it is "impossible" for them to do so. It is true, as defendants observe, that a party cannot be sanctioned for failing to produce material that it is not within that party's power to obtain. *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 210 (1958). It is also true, however, that "impossibility" is an exacting legal standard, which requires "extensive efforts at compliance" undertaken in good faith. *Id*. It is no surprise that defendants make no mention of this standard, since they plainly come nowhere close to meeting it.

As to the records from Adam Swiech's Julius Baer account (which account, it bears recalling, is one of numerous bank accounts whose existence defendants initially concealed), defendants admit that information about the account may be obtained by its holder pursuant to a written request. They then argue that Adam has "done everything in [his] individual power[]" to obtain these records, citing a single letter Adam claims to have sent to the bank (which letter was not, in fact, attached to the "certification" of Adam's counsel, Lucas Fuksa, despite the

9

representation that it was "attached hereto as Exhibit C"),[4] along with one email and three phone calls by Mr. Fuksa, only one of which resulted in a substantive conversation--the one in which Mr. Fuksa was told that account information could be obtained pursuant to a request in writing.[5] No reasonable person could deem these token efforts "extensive." I agree with plaintiffs that extensive, good faith efforts to comply with my order would have included, at a minimum, additional letters, faxes, or phone calls to the bank to ascertain how properly to utilize the admittedly available avenue for obtaining information by written request. As if to emphasize the weakness of their argument, defendants rely on two cases in which dismissal was *upheld* as a discovery sanction on facts similar to those presented here. *See Moore v. Doe*, 108 F.3d 1379 (Table) (7th Cir. 1997) (affirming dismissal as sanction for "willfully failing to comply with discovery orders and [] discovery

---

[4]It appears that Adam's letter to the bank appears elsewhere in the record as Exhibit D to the Declaration of Robert Michaels in support of plaintiffs' motion. See DN 614-1 at 26. Having reviewed the letter, I find that it supports plaintiffs', rather than defendants' position. Among other reasons, the letter, which is addressed generically to the bank, is dated August 21, 2012--eight days after my sanctions order was entered and just two days before it required full compliance. Nothing about the letter suggests a meaningful attempt to comply with my order, much less "extensive efforts" to do so.

[5]Mr. Fuksa's email, and the "failure notice" he states he received in response, are similarly not attached to his certification, despite the representation that they were attached as Exhibits A and B. If these putative exhibits appear elsewhere on the docket, I have been unable to find them.

obligations"), and *National Hockey League v. Metropolitan Hockey Club*, Inc., 427 U.S. 639, 640 (1976)(affirming trial court's dismissal of action for plaintiffs' "flagrant bad faith when after being expressly directed to perform an act by a date certain...they failed to perform.")

Defendants' claim of impossibility as to Lewicki's HSBC bank account records rings similarly hollow. The meager evidence on which they rely--the same, generic announcement that HSBC was terminating certain banking operations in 2011 that I previously found insufficient, and one letter, addressed "to whom it may concern" at HSBC bank, requesting wire transfer confirmation receipts for a particular account--fails to convince me that the records I ordered defendants to produce are impossible to obtain. Moreover, because the records were unquestionably available at the time they were first compelled, defendants cannot now excuse their failure to comply with my order on this basis. *See Pesaplastic, C.A. v. Cincinnati Nilacron Co.*, 799 F.2d 1510, 1521-22 (11th Cir. 1986)(party who "failed to provide meaningful discovery by refusing to identify the responsive documents," then transferred responsive documents to a third party, could not later assert impossibility as excuse for failing to comply with court order).

Defendants' argument that it is impossible to comply with my order to obtain and produce emails from Richard Swiech's and Lewicki's email providers is perhaps the flimsiest of all.

11

Defendants do not claim to have made any efforts whatsoever to obtain emails from any but two of the multiple email service providers they have concededly used, or from providers that documents produced in discovery showed they have used for KBP business. For example, despite their production of KBP-related emails from, for example, Lewicki's and Richard Swiech's addresses at "comcast.net," defendants do not claim to have made any effort to obtain emails from Comcast in response to my August 13, 2012, sanctions order.

In short, defendants have not manifested any serious effort to comply with my August 13, 2012, sanctions order (or the multiple discovery orders preceding that order), much less the kind of "extensive efforts" they would have to show to substantiate their claim that compliance is impossible. Evidently, the monetary sanctions I imposed in that order were not effective to put an end to defendants' discovery abuses.

Moreover, defendants have logged additional violations in the intervening five months. To highlight just a few:

- Adam Swiech still has not sat for his deposition, despite agreeing, in a joint status report filed pursuant to an order by Magistrate Judge Nolan, that he would do so the week of October 15, 2012 (*see* DN 524, 529), nor has he provided the kind of evidence that could reasonably substantiate his claim that an unspecified "medical

12

condition affecting his eye" has prevented him from doing so. The only evidence defendants offer as evidence of Adam's alleged incapacity is: 1) Adam's statement, which describes a surgery in March of 2012, a hospital stay from July 23, 2012 to August 2, 2012, and a "sick leave" from September 24, 2012 to October 7, 2012; and 2) a photocopy of a document written in Polish, with no translation, which purports to substantiate the "sick leave." This evidence is, to say the least, a far cry from the evidence that prompted the Second Circuit to reverse the district court's entry of default in *Marfia v. T.C. Ziraat Bankasi, New York Branch*, 100 F.3d 243 (2nd Cir. 1996), in which the lower court had declined to address "undisputed medical reports" establishing that the deponent had undergone open-heart surgery, was suffering from postoperative complications, and had been advised to "remain at home with limited activities," but nevertheless appeared for and completed the first day of his deposition, only terminating it after "complaints of illness" on the second day. *Id*. at 246-48, 250. Even if Adam's credibility were not seriously called into question by his serial lack of candor in affidavits previously filed in this case, *see, e.g.*, *Domanus I*, 779 F. Supp. 2d at 750 n. 12, the evidence defendants offer

13

does not, even on its face, provide any excuse for Adam's failure to schedule his deposition for any time after October 7, 2012. Despite numerous, documented efforts by plaintiffs' counsel to schedule Adam's deposition, defendants still have not agreed to any date.

- Previously unproduced documents responsive to plaintiffs' discovery requests continue to come out of the woodwork, despite defendants' repeated assurances that their production is complete. As plaintiffs' supplemental memorandum in support of their default motion explains, defendants introduced several documents at the October 23, 2012, deposition of Jan Domanus that had not previously been produced, including what defendants acknowledge is "an unsigned, amended 2006 tax return, prepared by [defendants' accountant] Robert H. Freeman, CPA, ostensibly on behalf of John Domanus and his wife." Defendants do not dispute that plaintiff did not authorize or direct defendants' accountant to create this document, which contains the social security numbers of Domanus, his wife, and their son, nor do they dispute that the document was not produced to plaintiffs prior to Domanus's deposition. Even if I were to credit defendants' frankly improbable explanation that the document was created "merely for demonstration purposes"

and was never intended to be used as evidence in this case,[6] there remains the problem of defendants' admitted non-production, prior to Domanus's deposition, of a document they do not dispute was responsive to plaintiffs' discovery requests.

- Defendants have not complied with Magistrate Judge Rowland's order of November 5, 2012, directing them to pay plaintiffs' attorneys' fees incurred in conjunction with their sanctions motion. In response to documented follow-up inquiries by plaintiffs' counsel, defendants' counsel pointedly refused to confirm that his clients intend to comply with the order, or to offer any justification for his failure to do so. *See* Reply Declaration of Robert Michaels, Exh. C. (DN 650-3)

The foregoing is a representative list--not an exhaustive one--of defendants' recalcitrant conduct in this litigation. The arguments and materials they offer in response to plaintiffs' default motion only underscore the conclusion that defendants have no intention of playing by the rules required of civil litigants in federal court, and that no sanction short of a default judgment is

---

[6]Plaintiffs' position is that the document establishes that defendants fabricated evidence in an attempt to commit fraud on the court. In response, defendants concede that the document was prepared by Robert Freeman at the direction of Richard Swiech, without Domanus's knowledge, "for purposes of illustration," and claim that they never intended to misrepresent it as a document prepared on Domanus's behalf.

likely to induce compliance with judicial orders. Plaintiffs cannot reasonably be expected to try their case in the face of such intransigence.

III.

For the foregoing reasons, plaintiffs' motion for a default judgment on all claims asserted against defendants Adam Swiech, Richard Swiech, and Derek Lewicki is granted.

                                        **ENTER ORDER:**

                                        _____
                                        **Elaine E. Bucklo**
                                      United States District Judge

Dated: January 11, 2013